UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JOHN BAUER, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF PLEASANTON, et al.,<br><br>    Defendants. | Case No. 3:19-cv-04593-LB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Re: ECF No. 15 |

## INTRODUCTION

In August 2019, police officers responded to a call about Jacob Bauer, who allegedly was causing a disturbance at a grocery store in Pleasanton, California.[1] The officers allegedly restrained Jacob, put a spit mask over his mouth, used a stun gun and a taser, and — after he was fully restrained — hit him with a baton and "stomped on his chest several times."[2] Jacob, who was unarmed and suffering from a mental illness, died on the scene after the police "did not provide or summon timely medical attention," even though Jacob was "unresponsive and turning blue."[3] Jacob's parents, and the plaintiffs in this lawsuit, are John and Rose Bauer, and they sued the City

---

[1] FAC – ECF No. 7 at 4 (¶ 14). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* 4–5 (¶¶ 15–16).

[3] *Id.* at 4–5 (¶ 16–20), 6 (¶¶ 22, 24).

ORDER – No. 3:19-CV-04593-LB

of Pleasanton and its police chief, Dave Spiller, for (1) excessive force in violation of 42 U.S.C. § 1983 and the Fourth Amendment to the U.S. Constitution, (2) deliberative indifference to the provision of emergency medical care, in violation of § 1983 and the Fourteenth Amendment, (3) a deprivation of their right to familial association, in violation of $ 1983 and the Fourteenth Amendment, (4) municipal liability (against the City of Pleasanton) under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978); and (5) similar claims under state law.[4]

The defendants moved to dismiss the *Monell* claim, a negligent hiring/supervision claim, and a claim for intentional infliction of emotional distress ("IIED").[5] The court can decide the motion without oral argument, *see* N.D. Cal. Civ. L. R. 7-1(b), and grants the motion.

**STATEMENT**

Before the events that resulted in their son's death, the plaintiffs "were desperate to get help for their son and contacted Pleasanton Police no less than four times to notify them of their son's condition and to try to get their son committed for mental health evaluation and treatment."[6] "Because Jacob was not a danger to himself or others, Pleasanton Police told Mr. and Mrs. Bauer that there was nothing they could do."[7]

On August 1, 2018 (based on the plaintiffs' knowledge and belief), Chief Spiller and other police officers "were dispatched" to a grocery store (a Raley's store) in Pleasanton, California, to respond to an alleged disturbance by Jacob Bauer."[8] The police officers "restrained Jacob's hands and legs, placed a spit mask over his mouth, and used a stun gun and taser on him several times."[9]

---

[4] *Id.* at 7–23 (¶¶ 26–118).

[5] Mot. – ECF No. 15 at 10–20. The defendants also moved to dismiss the plaintiffs' claims (to the extent that they are predicated on their survival claim) for failure to file the required affidavit under Cal. Civ. P. Code § 377.32. Mot. – ECF No. 15 at 9. The plaintiffs filed the required affidavit. Affidavit – ECF NO. 16. The defendants do not contend otherwise. Reply – ECF No. 21. The motion to dismiss on this basis is moot.

[6] FAC – ECF No. 7 at 2.

[7] *Id.*

[8] *Id.* at 4 (¶ 14).

[9] *Id.* (¶ 15).

After restraining Jacob, who was unarmed, the defendants "hit Jacob with a baton and stomped on his chest several times."[10] Jacob became unresponsive and turned blue, but the police officers did not provide medical care and prevented medical personnel on the scene from rendering care.[11] As a result, Jacob suffered injuries (including "contusions and severe emotional distress") and died.[12]

The plaintiffs plead the following to support their *Monell* claim:

> 21. Plaintiffs are informed and believe that the Pleasanton Police Department has a custom and/or policy of failing to use de-escalation tactics or other appropriate police intervention tactics and instead regularly employs unconstitutional excessive force against disabled individuals. Examples of this include, but are not limited to, the July 5, 2015 fatal shooting of 19 year old John Deming Jr who was experiencing a mental health crisis and the May 20, 2017 fatal shooting of Shannon Edward Estill who was experiencing a mental health crisis at the time of his interaction with Pleasanton Police. The death of Jacob Bauer makes three fatalities of mentally ill individuals in three years by officers of the Pleasanton Police Department.
>
> 22. Plaintiffs are informed and believe and thereon allege that the Pleasanton Police Department failed to investigate and remedy the shooting deaths of these mentally disabled individuals and failed to conduct adequate training following these events thereby ratifying the custom and policy of using excessive, unconstitutional force against people in mental crisis.
>
> 23. Plaintiffs are informed and believe and thereon allege that the City of Pleasanton does not have civilian oversight of the police department and this custom, policy and practice of the police overseeing themselves contributes to the unconstitutional use of force against the mentally ill and other disadvantaged groups.
>
> 24. Plaintiffs are informed and believe and thereon allege that the Pleasanton Police Department's response to Jacob Bauer and other fatalities involving mentally disabled people was so lacking that it amounted to a ratification and/or evidence of a custom and practice of disregarding the constitutional rights of the mentally disabled and use of excessive force against them and other disadvantaged groups. The lack of adequate training, disciplinary action or other corrective measures taken before and after the death of John Deming Jr. and again after the death of Shannon Estill directly contributed to the death of Jacob Bauer. Such failure to act amounts to a ratification of the unconstitutional use of excessive force. Plaintiffs are informed and believe and thereon allege that following the death of Jacob Bauer the Pleasanton Police Department continues to lack civilian oversight and has not taken any corrective training measures or taken disciplinary action against any officer involved.[13]

---

[10] *Id*. at 5–6 (¶ 16).

[11] *Id*. at 6 (¶¶ 19–20).

[12] *Id*. (¶ 17).

[13] *Id.* at 5–6 (¶¶ 21–24).

1    The plaintiffs' claims are as follows: (1) state-law battery for the wrongful death; (2) negligence for the wrongful death (from the use of force and failure to provide medical care); (3) excessive force in violation of § 1983 and the Fourth Amendment; (4) deliberative indifference to the provision of medical care, in violation of § 1983 and the Fourteenth Amendment; (5) deprivation of the parents' right to familial association, in violation of § 1983 and the Fourteenth Amendment; (6) a *Monell* claim; (7) a violation of California's Bane Act, Cal. Civ. Code § 52.1 (based on the excessive force and the failure to provide medical care); (8) negligent hiring and supervision of the police officers; and (9) IIED.[14]

The defendants moved to dismiss claims six (the *Monell* claim), claim eight (the negligent supervision claim), and claim nine (the IIED claim), and they also ask to dismiss Chief Spiller on the ground that the claims against him duplicate those against the City.[15]

All parties have consented to magistrate jurisdiction.[16]

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level[.]" *Id.* (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when

---

[14] *Id.* at 7–23 (¶¶ 26–118).

[15] Mot. – ECF No. 15 at 2, 6, 9–20.

[16] Joint Case-Management Statement – ECF No. 25 at 7; Order – ECF No. 28.

ORDER – No. 3:19-CV-04593-LB    4

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557).

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1183 (9th Cir. 2016) (citations and internal quotation marks omitted).

## ANALYSIS

### 1. The *Monell* Claim

The plaintiffs claim a *Monell* violation in the form of the City of Pleasanton's (1) policy of not using de-escalation techniques for persons who are mentally ill (shown by two prior incidents also involving deaths of mentally ill persons), and its resulting failure to train its officers in the use of de-escalation techniques, and (2) ratification of the use of force (also shown by the prior incidents).[17] The City moves to dismiss on the ground that the plaintiffs have not met the *Monell* standard.[18] The court grants the motion to dismiss because the allegations are too conclusory to establish *Monell* liability.

Local governments can be sued directly under § 1983 only if they maintain a policy or custom that results in a violation of the plaintiff's constitutional rights. *Monell*, 436 U.S. at 690–91. To impose *Monell* entity liability under § 1983 for a violation of constitutional rights, a plaintiff must show that (1) the plaintiff possessed a constitutional right and was deprived of that right, (2) the municipality had a policy, (3) the policy amounts to deliberate indifference to the plaintiff's

---

[17] FAC – ECF No. 7 at 5–6 (¶¶ 21–24); Opp'n – ECF No. 17 at 9–17 (characterizing the claim).
[18] Mot. – ECF No. 15 at 9–17.

ORDER – No. 3:19-CV-04593-LB 5

constitutional right, and (4) the policy was the moving force behind the constitutional violation. *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).

The Ninth Circuit has explained how a policy may be established:

> There are three ways to show a policy or custom of a municipality: (1) by showing "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (quoting *Ulrich v. City and Cty. of San Francisco*, 308 F.3d 968, 984–85 (9th Cir. 2002)); *accord, e.g., Parker v. City of Pittsburg*, No. 17-cv-01563-LB, 2017 WL 2986225, at *5 (N.D. Cal. July 13, 2017) (applying standard on a motion to dismiss). The practice or custom must consist of more than "random acts or isolated events" and instead, must be the result of a "permanent and well-settled practice." *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443–44 (9th Cir. 1988), *overruled on other grounds by Bull v. City and Cty. of San Francisco*, 595 F.3d 964 (9th Cir. 2010); *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Thus, "a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless" there is proof that the incident "was caused by an existing, unconstitutional municipal policy. . . ." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985).

A police chief "may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (internal quotation marks and citation omitted). "Supervisors can be held liable for: 1) their own culpable action or inaction in the training, supervision, or control of subordinates. . . ." *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000) (citation omitted).

The plaintiffs claim a *Monell* violation based on (1) a long-standing practice and custom, including a failure to train, and (2) ratification of the officers' actions.

**1.1     Practice and Custom**

To plead a *Monell* claim through a "longstanding practice or custom," the "practice or custom must consist of more than 'random acts or isolated events' and instead, must be the result of a 'permanent and well-settled practice.'" *Parker*, 2017 WL 2986225, at *5 (citing *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443–44 (9th Cir. 1998), *overruled on other grounds by Bull v. City and Cty. of San Francisco*, 595 F.3d 964 (9th Cir. 2010)). "[T]he custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy." *Leon v. Hayward Bldg. Dep't*, No. 17-cv-02720-LB, 2017 WL 3232486, at *3 (N.D. Cal. July 31, 2017) (some internal quotation marks omitted) (quoting *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011)). "'Isolated or sporadic incidents,' by contrast, will not support Monell liability against a municipality." Id. (quoting Hunter, 652 F.3d at 1233).

"'In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983.'" *Heyward v. BART Police Dep't*, No. 3:15-cv-04503-LB, 2016 WL 730282, at *6 (N.D. Cal. Feb. 24, 2016) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "'A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.'" *Id.* (quoting *Connick*, 563 U.S. at 61). "'To satisfy [§ 1983], a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact.'" *Id.* (internal brackets and some internal quotation marks omitted) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). "Only then 'can such a shortcoming be properly [thought] of as a city policy or custom that is actionable under § 1983.'" *Id.* (some internal quotation marks omitted) (quoting *City of Canton*, 489 U.S. at 389 (1989)).

"'Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (internal brackets and some internal quotation marks omitted) (quoting *Bd. of Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)). "'Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may

be deemed deliberately indifferent if the policymakers choose to retain that program.'" *Id.* (quoting *Connick*, 563 U.S. at 61). "'The city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution.'" *Id.* (some internal quotation marks omitted) (quoting *City of Canton*, 489 U.S. at 389 (1989)). "'A less stringent standard of fault for a failure-to-train claim would result in de facto respondeat superior liability on municipalities[.]'" *Id.* (some internal quotation marks omitted) (quoting *City of Canton*, 489 U.S. at 389). "Thus, 'a pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train.'" *Id.* (internal brackets and some internal quotation marks omitted) (quoting *Connick,* 563 U.S. at 62). "'Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action — the deliberate indifference — necessary to trigger municipal liability.'" *Id.* (some internal quotation marks omitted) (quoting *Connick,* 563 U.S. at 62). "'Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.'" *Id*.

The plaintiffs contend that there is a "custom and/or policy" of "unconstitutional excessive force" and "failing to use de-escalating tactics" based on Jacob's death and two fatal shootings of other persons suffering from mental-health crises in three years.[19] The defendants counter that plaintiff's allegations are conclusory and do not sufficiently show a persistent and widespread practice.[20]

The plaintiffs do not allege facts that plausibly plead a failure to train that amounts to deliberate indifference to the rights of persons such as Jacob. They contend that the following examples show an unconstitutional policy: "the July 5, 2015 fatal shooting of 19 year old John Deming Jr[.] who was experiencing a mental health crisis and the May 20, 2017 fatal shooting of

---

[19] FAC – ECF No. 7 at 5–6 (¶ 21).

[20] *See* Mot. – ECF No. 15 at 10–14; Reply – ECF No. 21 at 2–7.

ORDER – No. 3:19-CV-04593-LB          8

Shannon Edward Estill who was experiencing a mental health crisis at the time of his interaction with Pleasanton Police."[21] These conclusory allegations do not show that the incidents are factually similar or plausibly show a "persistent and widespread" custom (as opposed to "isolated or sporadic" incidents). *See, e.g.*, *Sweiha v. County of Alameda*, 19-cv-03098-LB, 2019 WL 4848227, at *4–5 (N.D. Cal. Oct. 1, 2019) (plaintiff's allegations of five other incidents do not show a custom or policy where the incidents "have markedly different facts"); *Estate of Mendez v. City of Ceres*, 390 F. Supp. 3d 1189, 1208 (E.D. Cal. 2019) ("If [the] alleged prior instances are sufficiently similar to [plaintiff's circumstances] . . . and the instances constitute a pattern of violations rather than isolated incidents to which policymakers failed to respond or inadequately responded," then the plaintiff sufficiently stated a *Monell* claim).

The court dismisses the claim with leave to amend.

### 1.2 Ratification

The plaintiffs claim that ratification is shown by the lack of any corrective or disciplinary action for any of the three shooting incidents involving mentally ill decedents.[22]

To plead a *Monell* claim through ratification, "a plaintiff must show that the 'authorized policymakers approve[d] a subordinate's decision and the basis for it.'" *Dasovich v. Contra Costa Cty. Sheriff's Dep't*, No. 14-cv-00258-MEJ, 2014 WL 4652118, at *6 (N.D. Cal. Sept. 17, 2014) (quoting *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004)). "The policymaker must have knowledge of the constitutional violation and actually approve of it." *Id.* (citing *Lytle*, 382 F.3d at 987). "A mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." *Id*. (citing *Lytle*, 382 F.3d at 987); *accord, e.g., Estate of Adomako v. City of Fremont*, No. 17-cv-06386-DMR, 2018 WL 2234179, at *3 (N.D. Cal. May 16, 2018) ("A police department's 'mere failure to discipline its officers does not amount to ratification of their allegedly unconstitutional actions.' ") (internal brackets omitted) (quoting *Sheehan v. City and*

---

[21] FAC – ECF No. 7 at 5–6 (¶ 21).

[22] Opp'n – ECF No. 17 at 14–17.

ORDER – No. 3:19-CV-04593-LB  9

*Cty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part, cert. dismissed in part*, 135 S. Ct. 1765 (2015)).

First, the plaintiffs do not identify a final policymaker. They allege only that "at all times relevant herein, Spiller and DOES 30 through 50 were supervisors and policy makers for PPD [Pleasanton Police Department.]"[23]

Second, their ratification theory relies on the other incidents, and so the claim fails for the reasons that the failure-to-train theory fails. *See Sweiha*, 2019 WL 484227 at *5 (plaintiffs did not state a ratification claim based on other dissimilar incidents).

Third, their other allegations are conclusory. They allege that "Defendants Spiller and DOES 30–50 ratified the conduct" by maintaining an unconstitutional policy of excessive force use and failing to train or discipline the officers accordingly.[24] This does not plausibly plead how any final policymaker ratified the conduct at issue here. *Cf. Slusher v. City of Napa*, 15-cv-02394-SBA, 2015 WL 8527411, at *8 (N.D. Cal. Dec. 11, 2015) (dismissing *Monell* ratification claim where "[t]here are no allegations specifying the particular actions at issue or how and by whom they were ratified"); *Dasovich*, 2014 WL 4652118 at *6 (plaintiff's complaint "contain[ed] no [] allegations of affirmative action by [the] Sheriff" to ratify the challenged conduct and thus did not state a ratification claim).

The court dismisses the claim with leave to amend.

### 1.3 Chief Spiller

The plaintiffs do not state a claim against Chief Spiller. They do not allege his personal involvement in the alleged constitutional deprivation or a causal connection (such as his own culpable action in training and supervising his subordinates). *Starr*, 652 F.3d at 1207; *Cunningham*, 229 F.3d at 1292 (9th Cir. 2000).

The court dismisses the claim with leave to amend.

---

[23] FAC – ECF No 7 at 3 (¶ 8); *see also id.* at 3 (¶ 6), 15 (¶ 78).
[24] *Id.* at 14–15 (¶ 77).

ORDER – No. 3:19-CV-04593-LB        10

**2. Negligent Hiring, Retention, Supervision or Training**

The plaintiffs' eighth claim is for negligent hiring, retention, supervision, and training.[25] The defendants move to dismiss the claim on the grounds that (1) there is no cause of action under state law for direct-liability claims for negligent hiring and supervision, and (2) there is no vicarious liability.[26] The court grants the motion to dismiss.

Under California law, "[a] public entity is not liable for an injury" unless "otherwise provided by statute." Cal. Gov. Code § 815(a). "One such statutory basis for liability is California Government Code section 815.2(a), which extends liability to a public entity 'for injury proximately caused by . . . an employee of the public entity within the scope of his employment if the act or omission would . . . have given rise to a cause of action against that employee." *Hardin v. Mendocino Coast Dist. Hosp.*, 17-cv-05554-JST, 2018 WL 2984834, at *9 (N.D. Cal. June 14, 2018).

To the extent that the plaintiffs are alleging a theory of direct liability for negligent hiring or supervision, they have not identified a statute providing for the defendants' direct liability. *See Ottolini v. City of Rohnert Park*, 19-cv-02851-LB, 2019 WL 3254231, at *9 (N.D. Cal. July 19, 20190 ("California courts of appeal have held that no statutory basis exists for a claim of direct liability based on a public entity's negligent hiring, policymaking, and supervision") (internal citations and quotations omitted); *see also Shoval v. Sobzak*, 09-cv-01348-H (JMA), 2009 WL 2780155, at *4 (S.D. Cal. August 31, 2009) ("California courts have repeatedly held that there is no statutory basis for direct claims against a public entity for negligent hiring and supervision practices") (citing California cases). In their opposition, the plaintiffs do not dispute that they cannot bring a direct claim for negligent hiring or supervision against the defendants.[27]

The plaintiffs contend that "[m]unicipal governments may be vicariously liable for negligent hiring and supervision pursuant to Government Code section 815.2."[28] Courts in the Ninth Circuit

---

[25] *Id*. at 19–21 (¶¶ 97–108).

[26] Mot. – ECF No. 15 at 15–17.

[27] *See* Opp'n – ECF No. 17 at 17–18.

[28] *Id*. at 17.

ORDER – No. 3:19-CV-04593-LB         11

have rejected similar arguments. *See, e.g., Herd v. County of San Bernardino*, 311 F. Supp. 3d 1157, 1171–72 (C.D. Cal. 2018) (rejecting, in an excessive-force case, the plaintiffs' argument that the municipal defendants can be vicariously liable under § 815.2 for negligently failing to train officers on the use of deadly force); *Hardin*, 2018 WL 2984834 at *9 ("Section 815.2(a) does not apply to a negligent supervision, hiring, and retention claim because 'liability for negligent supervision and/or retention of an employee is one of direct liability for negligence, not vicarious liability'") (citing *Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790, 815 (2006)); *cf. Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1113–14 (2004) (rejecting argument that city-defendant's alleged negligent hiring or supervision is based on vicarious liability because such argument "would render the distinction between direct and vicarious liability completely illusory"), *overruled in part on other grounds by Hayes v. Cty. Of San Diego*, 57 Cal. 4th 622 (2013)).

The plaintiffs cite to the California Supreme Court's decision in *C.A. v. William S. Hart Union High School District* to contend that a public entity can be vicariously liable for negligent hiring and supervision if there is a "special relationship" between the plaintiffs and the defendants.[29] 53 Cal. 4th 861, 877 (2012). The court in *William* found that a school district could be vicariously liable for negligently hiring, retaining, and supervising a guidance counselor who abused the plaintiff. *Id.* at 865. The court based its holding on finding that there is a "special relationship" between school districts and students. *Id.* at 877. "Absent such a special relationship, there can be no individual liability to third parties for negligent hiring, retention or supervision of a fellow employee, and hence no vicarious liability under section 815.2." *Id.*

The plaintiffs contend that they sufficiently alleged a special relationship because they "notified Defendants four times that Jacob was suffering a mental health crisis."[30] They cite no cases to support that theory. Their allegations do not plausibly plead a special relationship. The court gives leave to amend for the plaintiffs to allege more facts. *See Hardin*, 2018 WL 2984834

---

[29] *Id.* at 17–18.

[30] *Id.* at 17.

1  (dismissing negligent supervision claim against public entity with leave "[a]lthough it is not clear
2  that [the plaintiff] will be able to cure this claim by amendment"). The court doubts that the
3  deficiencies can be cured (but gives that opportunity to allow a full record). For many reasons, no
4  matter how detailed the reports to the police, a special relationship cannot be established in
5  circumstances such as these. There is an established framework for analyzing excessive-force
6  cases, both under federal or state law. The criteria for special relationships — which turn on
7  factors such as foreseeability of harm, the consequence to the community of imposing a duty, and
8  burden — do not fit cases involving a police response to a call for assistance. Put another way, a
9  school's relationship with its students (who are *in loco parentis*) is different than a police
10 department's relationship to the community. Both have a duty, but the nature of the relationship
11 imposes different responsibilities.

### 3. Intentional Infliction of Emotional Distress (IIED)

The plaintiffs claim IIED as a survival claim.[31] The defendants move to dismiss.[32] The court grants the motion.

In California, "[a] cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Kelley v. Conco Cos.*, 196 Cal. App. 4th 191, 215 (2011). "A defendant's conduct is outrageous when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (internal quotation marks omitted).

The plaintiffs do not allege any acts directed at them. *Burns v. City of Concord*, 14-cv-00535-LB, 2014 WL 5794629, at *17 (N.D. Cal. Nov. 6, 2014) (dismissing IIED claim because plaintiffs "do not allege that Defendants directed their conduct at either of [the plaintiffs]"); *see also Lopez*

---

[31] *Id.* at 19.

[32] Mot. – ECF No. 15 at 18–19.

*v. County of Los Angeles*, 15-cv-017450-MMM, 2015 WL 3913263, at *12 (C.D. Cal. June 25, 2015) (same). The plaintiffs also cannot allege a survival IIED claim on behalf of Jacob because "emotional distress damages do not survive the death of the person who suffered them." *Burns*, 2014 WL 5794629 at *17; *see also Copeland v. County of Alameda*, 12-cv-04286-JST, 2014 WL 1266198, at *3 (N.D. Cal. March 21, 2014) (citing *Berkley v. Dowds*, 152 Cal. App. 4th 518, 530 (2007)).[33]

The court dismisses the claim with prejudice as to any survival claim and without prejudice as to any claim that the parents can assert on their own behalf.

## CONCLUSION

The court grants the motion to dismiss with leave to amend (except the court dismisses the survival IIED claim with prejudice).

**IT IS SO ORDERED.**

Dated: March 26, 2020

_____
LAUREL BEELER
United States Magistrate Judge

---

[33] Damages in survival actions include pre-death pain and suffering. *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014).