J. GARY GWILLIAM (SBN. 33430)
JAYME L. WALKER (SBN. 273159)
GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER
1999 Harrison St., Suite 1600,
Oakland, CA 94612
Phone: (510) 832-5411
Fax: (510) 832-1918
Email: ggwilliam@giccb.com
          jwalker@giccb.com

MICHAEL E. CARDOZA (SBN 52264)
The Cardoza Law Offices
1407 Oakland Blvd. Ste 200
Walnut Creek, CA 94596
Telephone: (925) 274-2900
Facsimile: (925) 274-2910

Attorneys for Plaintiffs
JOHN AND ROSE BAUER

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### San Francisco Division

| | |
|---|---|
| JOHN BAUER, an individual and as Successor in Interest of Jacob Bauer, deceased; ROSE BAUER, an individual and as Successor in Interest of Jacob Bauer, deceased; | Case No. 3:19-cv-04593-LB |
| | [ASSIGNED FOR ALL PURPOSES TO THE HON. LAUREL BEELER] |
| Plaintiffs, | **SECOND AMENDED COMPLAINT FOR DAMAGES** |
| vs. | |
| CITY OF PLEASANTON; BRADLEE MIDDLETON; JONATHAN CHIN; RICHARD TROVAO; STEVEN BENNETT; ALEX KOUMISS; JASON KNIGHT; MARTY BILLDT; DAVID SPILLER; and DOES 1 to 50, inclusive; | 1. Wrongful Death (Battery) |
| | 2. Wrongful Death (Negligence) |
| Defendants. | 3. Wrongful Death (Excessive Force in Violation of Civil Rights ([42 U.S.C. §§ 1983, 1988]) |
| | 4. Violation of Fourth Amendment Civil Rights (Supervisory Liability [42 U.S.C. §§ 1983, 1988]) |
| | 5. Unreasonable Search and Seizure (Denial of Medical Care [42 U.S.C. § 1983]) |
| | 6. Substantive Due Process (42 U.S.C. § 1983) |

7. Violation of Civil Rights for Unconstitutional Custom or Policy (42 U.S.C. §§ 1983, 1988)
8. Violation of Civil Rights (Cal. Civil Code § 52.1)
9. Violation of Civil Rights (42 U.S.C. § 12101, *et seq.*)

**DEMAND FOR JURY TRIAL**

Date Removed: August 7, 2019
Complaint Filed: June 20, 2019

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

## **INTRODUCTORY STATEMENT**

John and Rose Bauer's son, Jacob Bauer, was in a period of crisis with rapidly deteriorating mental health.  Mr. and Mrs. Bauer were desperate to get help for their son and contacted Pleasanton Police four times to notify them of their son's condition and to try to get their son committed for mental health evaluation and treatment.  However, because Jacob was not a danger to himself or others, Pleasanton Police told Mr. and Mrs. Bauer there was nothing they could do.

Just three days after the Bauers' last contact with Pleasanton Police, officers responded to a complaint about Jacob causing a disturbance at a grocery store.  When officers arrived, Jacob was cooperative and responsive to them.  Although Jacob was clearly unarmed and officers were aware that he was mentally ill, Pleasanton Police officers violently restrained Jacob Bauer, tasered him at least six times, hit him with their batons and fists, stomped on him, and pinned him to the ground by compressing his neck and back and impairing his ability to breathe.  Standard police training indicates that officers should not deploy tasers to the level that Jacob was tased, as it carries a strong possibility of sudden death and impairs a person's ability to breathe.  Standard police training tells officers not to compress an individual's neck and back so they cannot breathe.  Nonetheless, Pleasanton police officers did all these things in response to a minor vandalism committed by a mentally ill person.  Pleasanton Police officers were totally unjustified in handcuffing Jacob Bauer and using force against him.  They escalated the situation rather than de-escalated it.

Jacob Bauer was placed in a WRAP restraint device that has led to asphyxia in several other cases.  Paramedics asked to be able to monitor Jacob's breathing, but Pleasanton Police denied paramedics access to monitor Jacob's breathing or to render medical care.

Ultimately, Jacob Bauer died as a result of the violent assault and excessive force used on him by police.

COMES NOW Plaintiffs JOHN BAUER and ROSE BAUER, and for causes of action against Defendants, and each of them, complain and allege as follows:

///

**PARTIES**

1.      Plaintiff John Bauer ("John") is an individual who resides in Alameda County California.  John was the father of Jacob Bauer ("Jacob"), deceased, and is entitled to the property of Jacob under the laws of intestate succession as Jacob has no surviving spouse, domestic partner, children, or issue of deceased children.  John sues in his individual capacity as the father of decedent Jacob Bauer and as a successor in interest to Jacob Bauer.  John seeks wrongful death damages and survival damages under federal and state law.

2.      Plaintiff Rose Bauer ("Rose") is an individual who resides in Alameda County California.  Rose was the mother of Jacob Bauer ("Jacob"), deceased, and is entitled to the property of Jacob under the laws of intestate succession as Jacob has no surviving spouse, domestic partner, children, or issue of deceased children.  Rose sues in her individual capacity as the mother of decedent Jacob Bauer and as a successor in interest to Jacob Bauer.  Rose seeks wrongful death damages and survival damages under federal and state law.

3.      John and Rose are from time to time referred to in this Complaint as "Plaintiffs."

4.      Defendants City of Pleasanton ("Pleasanton") and DOES 1 through 10, were public entities, duly organized and existing under and by virtue of the laws of the State of California.

5.      Defendant Jonathan Chin is being sued as an individual and in his official capacity as a police officer for the Pleasanton Police Department.

6.      Defendant Bradlee Middleton is being sued as an individual and in his official capacity as a police officer for the Pleasanton Police Department.

7.      Defendant Richard Trovao is being sued as an individual and in his official capacity as a police officer for the Pleasanton Police Department.

8.      Defendant Steven Bennett is being sued as an individual and in his official capacity as a police officer for the Pleasanton Police Department.

9.      Defendant Alex Koumiss is being sued as an individual and in his official capacity as a police officer for the Pleasanton Police Department.

///

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

10.     Defendant Marty Billdt is being sued as an individual and in his official capacity as a police officer for the Pleasanton Police Department.  Defendant Billdt was a Sergeant and acted (and failed to act) in a supervisorial capacity.

11.     Defendant Jason Knight is being sued as an individual and in his official capacity as a police officer for the Pleasanton Police Department.  Defendant Knight was a Sergeant and acted (or failed to act) in a supervisorial capacity.

12.     Defendant David Spiller ("Spiller"), an individual, was at all times mentioned herein the Chief of Police for Pleasanton Police Department ("PPD") and a final policymaker for the City of Pleasanton.

13.     Plaintiffs are informed and believe, and thereon allege, that at all times relevant herein Spiller, DOES 11 through 50, and each of them, were residents of the State of California, and were police officers, employees, agents, servants, policy makers, supervisors and representatives of Pleasanton and/or PPD.  Spiller, an individual, was at all relevant times Chief of Police of PPD.  Spiller had supervisory authority and control over DOES 11 through 50.  Each Defendant is sued in his or her individual capacity as well as official capacity.

14.     At all times relevant herein, Defendants DOES 11 through 50, and each of them, were acting under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, practices and usages of Pleasanton and PPD.  Said DOE defendants were acting within the course and scope of their employment with Pleasanton and PPD and the wrongful acts hereinafter described flow from the very exercise of their authority.  Each Defendant was also acting as an employee, agent and representative of each and every other Defendant herein, and in doing the acts herein alleged were acting with the permission, consent, ratification, and authority of their co-defendants.

15.     Plaintiffs are informed and believe, and thereon allege, that at all times relevant herein, Spiller and DOES 30 through 50 were supervisors and policy makers for PPD.

16.     Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 50, inclusive, and therefore sues these Defendants by such fictitious names.  Plaintiff is informed and believes and thereupon alleges, that each of the fictitiously named

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

1   Defendants is legally responsible, intentionally, negligently, or in some other actionable manner,

2   for the events and happenings hereinafter referred to, and thereby legally caused the injuries,

3   damages, and violations and/or deprivation of the rights hereinafter alleged.  Plaintiff will seek

4   leave of Court to amend this Complaint and state the true names and/or capacities of said

5   fictitiously named Defendants when the same have been ascertained.

6   **CONDITIONS PRECEDENT**

7   17.    Pursuant to Government Code section 910, Plaintiffs filed a Claim for Damages

8   with Pleasanton in proper form and within the applicable statutory period.  Pleasanton has denied

9   Plaintiffs' claims, and Plaintiffs now bring the within action.

10   **JURISDICAITON AND VENUE**

11   18.    This Court has jurisdiction of federal claims under Title 42 of the United States

12   Code, Section 1983.  *Martinez v. California*, 444 U.S. 277, 283 n.7 (1980); *Ochoa v. Superior*

13   *Court*, 39 Cal.3d 159, 173 n. 10 (1985); 42 U.S.C. §§ 1331, 1343.

14   19.    At all relevant times, Defendants' conduct complained of herein occurred in the

15   County of Alameda, California.

16   **DEMAND FOR JURY TRIAL**

17   20.    Plaintiffs hereby demand trial of this matter by jury.

18   **GENERAL ALLEGATIONS**

19   21.    Jacob Bauer was suffering from a mental health crisis.  His parents, Plaintiffs

20   John and Rose Bauer, repeatedly sought help from the Pleasanton Police Department seeking to

21   have Jacob committed for mental health evaluation and treatment.  Because Jacob was not a

22   danger to himself or others, and was simply delusional, PPD told Plaintiffs there was nothing

23   they could do.  Plaintiffs expressed concern to PPD that if Jacob were to have an encounter with

24   police officers that Jacob would be hurt or killed.  They pleaded with PPD officers to be aware

25   that Jacob was not dangerous, just mentally ill and needed help.  The last time Plaintiff's

26   contacted PPD officers about Jacob was July 29, 2018.

27   ///

28   ///

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

22.    Just three days later, on August 1, 2018, PPD officers were dispatched to Raley's located at 5420 Sunol Blvd., Pleasanton, CA 94566 in response to reports of a disturbance by Jacob Bauer.  In the call made to dispatch, the Raley's employee repeatedly indicated that Jacob was in all likelihood mentally ill and suffering a mental health crisis.

23.    **Defendants Chin and Middleton** responded to the scene and spoke with Raley's employees who told them Jacob Bauer was acting erratically and was either crazy or intoxicated.  They were told that there was not much damage in the store, but that employees were concerned about Jacob's behavior.  When **Defendants Chin and Middleton** approached Jacob Bauer, he was calm and cooperative.  Jacob told them his name and his date of birth. **Middleton** ran Bauer's name through PPD dispatch and the dispatch person informed **Middleton** that Bauer was clear and valid.  They were not informed of Plaintiffs' repeated attempts to alert Pleasanton Police about the condition of their son.  Nonetheless, the Raley's employees alerted **Chin and Middleton** that Jacob was in all likelihood mentally ill.

24.    When **Defendants Middleton and Chin** first approached Jacob Bauer, **Middleton** asked Jacob to discard a glass that Jacob had in his hand.  Jacob complied.  When asked about what had happened at Raley's, Jacob told **Chin and Middleton** that he had "found the glass" and he said that "they stole it."  Jacob told **Chin and Middleton** that "brought back some bad memories."  It was clear that Jacob was in all likelihood mentally ill and in a mental health crisis at that time.

25.    **Defendant Middleton** asked Jacob Bauer if he had anything illegal on him and Bauer stared straight ahead and did not respond. Jacob Bauer was unarmed, did not attempt to leave and posed no immediate threat of death or serious injury to officers or any other person, yet without warning **Defendants Chin and Middleton** immediately resorted to excessive force to handcuff him and take him to the ground.  **Chin and Middleton** did not have legal grounds upon which to physically detain and restrain Jacob Bauer at that time and did so in violation of their training that they can only apply handcuffs during an investigative detention if there is an articulable danger or if the person being detained attempts to leave.  Jacob Bauer's refusal to answer **Middleton's** question, did not justify physical force, restraint or arrest.

26. Once Jacob Bauer was on the ground, **Defendants Middleton and Chin** repeatedly tased Jacob. They tased him at least four times in a short period of time. Defendants violated standard police training protocols which indicate that only one officer should deploy their taser at a time and individuals should be tased no longer than fifteen seconds. Defendants either were not sufficiently trained in taser deployment or disregarded their training.

27. **Defendants Steven Bennett, Alex Koumiss, and Richard Trovao** arrived on scene and immediately escalated the level of force. They piled on top of Bauer and placed inappropriate pressure on his neck and back in violation of standard police training. Defendants knew or should have known that compressing Jacob's neck, chest and back in the manner they did would dangerously inhibit his ability to breathe.

28. **Defendant Trovao** excessively hit Jacob Bauer with his baton and stomped on Jacob. **Defendants Trovao and Middleton** tased Jacob again violating standard police training that only one officer should deploy a taser at a time and that a person should be tased no longer than fifteen seconds. In total, Jacob Bauer was tased at least six times, and for much longer than fifteen seconds.

29. **Defendants Knight and Billdt** arrived on scene at approximately the same time as **Defendant Trovao** and failed to do anything to stop the excessive force by their subordinates, including excessive taser use, excessive and dangerous chest compression, excessive baton jabs and stomping on Jacob.

30. Paramedics on scene told officers they needed access to Jacob to monitor his breathing, yet all the individual Defendants on scene denied access to paramedics and did not monitor Jacob's breathing

31. As a result of the conduct of **Defendants Chin, Middleton, Trovao, Koumiss, Bennett, Billdt, and Knight**, Jacob died.

32. Jacob Bauer never threatened anyone prior to being subjected to deadly force. He was not suspected of any serious crime, officers did not observe him commit any crime, and there was no information that Jacob had harmed anyone.

///

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

PLTFS.' SECOND AMENDED COMPLAINT          8          CASE NO. 3:19-CV-04593-LB

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

33.     Defendants subjected Jacob Bauer to deadly force even though he was not an immediate threat of death or serious bodily injury to the officers or anyone else and there were less lethal options available.  Defendants used lethal force on Jacob Bauer despite their actual or constructive notice that he was in a mental health crisis and they should deploy crisis intervention rather than lethal force.  In doing so, Defendants did not show a reverence for human life.

34.     Following the violent and excessive force by Defendants, Jacob Bauer was placed in a WRAP restraint device.  This device has led to mechanical asphyxia in several other cases, yet Defendants failed to monitor Jacob's breathing.  Jacob told **Defendant Bennett** at some point that he could not breathe.  **Defendant Bennett** did not summon or timely provide Jacob with medical treatment and shortly afterward Jacob Bauer was unresponsive and turning blue.  Defendants did not allow and prevented responding medical personnel on scene from timely rendering medical care to Jacob.  Defendants were more concerned with restraining an unconscious Jacob Bauer than they were with monitoring his breathing.

35.     When medical personnel were finally called, EMT Rachel Kitchens administered an already unconscious Jacob Bauer with a dose of Versed.  PPD officers were still placing Jacob in the WRAP restraint.  Ms. Kitchens informed PPD officers that she needed to monitor Jacob's airways to ensure that they were open, particularly because she had administered Versed.  Despite this, Ms. Kitchens was not given access to Jacob to monitor his breathing.

36.     Plaintiffs are informed and believe that the Pleasanton Police Department has a custom and/or policy of failing to use de-escalation tactics or other appropriate police intervention tactics and instead regularly employs unconstitutional excessive force against disabled individuals. Examples of this include, but are not limited to, the July 5, 2015 fatal shooting of nineteen-year-old John Deming Jr., who was experiencing a mental health crisis, and the May 20, 2017 fatal shooting of Shannon Edward Estill ,who was experiencing a mental health crisis at the time of his interaction with Pleasanton Police.  The death of Jacob Bauer makes three fatalities of mentally ill individuals in three years by officers of the Pleasanton Police Department.

37.     In the case of John Deming Jr., Defendant Middleton and Defendant Bennett were also involved in the escalation of force against a mentally ill individual.  Defendant Bennett deployed his taser when Deming was sitting at a height in violation of standard police training.  Officers on scene were aware that Deming was unarmed and suffering a mental breakdown.  The number of officers on scene significantly outnumbered Mr. Deming.  Deming told officers he meant them no harm.  Deming had committed a non-violent burglary in an auto dealership and was clearly mentally ill.  Officers on scene talked about him being a 5150.  Despite this knowledge, PPD officers escalated force rather than de-escalated the situation. They used a canine unit, inappropriately deployed tasers and less lethal shotguns, and ultimately one officer shot and killed John Deming Jr. and then attempted to cover up the fact that he had used excessive lethal force.  The Sergeant on scene, who was trained in Crisis Intervention Techniques ("CIT"), failed to deploy any such de-escalation or crisis intervention tactics and failed to lead his subordinate officers in deploying de-escalation techniques.  Following the wrongful death of John Deming Jr., Defendant Spiller failed to discipline any officer involved in the death of John Deming Jr., failed to admonish his CIT-trained Sergeant in failing to deploy crisis intervention techniques, and failed to engage in any training with the officers involved so that deaths of mentally ill individuals could be prevented in the future.

38.     Two years later, Pleasanton police were involved in another officer involved shooting of a person in mental health crisis.  In the case of Shannon Edward Estille, PPD officers were aware that Mr. Estille was suffering from alcoholism and was likely impaired.  They failed to deploy a CIT team and instead officers arrived at the scene with guns drawn and escalated the situation rather than de-escalating it.  Ultimately, Mr. Estille was shot and killed by responding officers after he came out of his garage with a BB gun.

39.     On or around September 10, 2019, Plaintiff John Bauer personally witnessed PPD officers improperly restrain a mentally ill juvenile.

40.     Plaintiffs are informed and believe and thereon allege that the Pleasanton Police Department failed to investigate and remedy the shooting deaths of these mentally disabled individuals and failed to conduct adequate training following these events thereby ratifying the

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

custom and policy of choosing excessive, unconstitutional force instead of crisis intervention or de-escalation techniques against people in mental crisis. Defendant Spiller was Chief of Police for all three of these officer-involved deaths, Deming, Estille, and Jacob Bauer as well as the unlawful restraint of the mentally ill juvenile. Spiller set forth a custom and policy within the PPD that officers would not be investigated, trained, admonished or held accountable when their actions resulted in deaths, improper restraint or excessive force upon mentally ill individuals.

41.    Plaintiffs are informed and believe and thereon allege that the City of Pleasanton does not have civilian oversight of the police department and this custom, policy and practice of the police overseeing themselves contributes to the unconstitutional use of force against the mentally ill and other disadvantaged groups.

42.    Plaintiffs are informed and believe and thereon allege that the Pleasanton Police Department's response to Jacob Bauer and other fatalities involving mentally disabled people was so lacking that it amounted to a ratification and/or evidence of a custom and practice of disregarding the constitutional rights of the mentally disabled and use of excessive force against them and other disadvantaged groups. The lack of adequate training, investigation, disciplinary action or other corrective measures taken before and after the death of John Deming Jr. and again after the death of Shannon Estill directly contributed to the death of Jacob Bauer. Such failure to act amounts to a ratification of the unconstitutional use of excessive force. Plaintiffs are informed and believe and thereon allege that following the death of Jacob Bauer the Pleasanton Police Department continues to lack civilian oversight and has not taken any corrective training measures or taken disciplinary action against any officer involved.

43.    Prior to his death, Plaintiffs were extremely close to Jacob. Jacob lived with Plaintiffs and Plaintiffs enjoyed his company, their conversations, and having him in their lives. Plaintiffs relied on Jacob for love, companionship, comfort, society, affection, solace and moral support. As a direct result of Jacob's death, Plaintiffs suffered and continue to suffer damages including, but not limited to, funeral expenses, compensation for the loss of their son's love, companionship, comfort, affection, society, solace and moral support.

///

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

**FIRST CAUSE OF ACTION**

**WRONGFUL DEATH OF JACOB CAUSED BY BATTERY**

**(Against Defendants Pleasanton, Chin, Middleton, Trovao, Bennett, and Koumiss)**

44.     Plaintiffs hereby reallege and incorporate each and every allegation above as though fully set forth herein.

45.     On or about August 1, 2018, **Defendants Chin, Middleton, Trovao, Bennett, and Koumiss** unlawfully restrained Jacob's hands and legs, placed a spit mask over his mouth, excessively used a baton and taser on him several times without legitimate reason, probable cause, or provocation.

46.     Pursuant to Government Code section 815.2, **Defendant Pleasanton** is vicariously liable for the conduct of **Defendants Chin, Middleton, Trovao, Bennett, and Koumiss** who were acting within the course and scope of their employment.

47.     As a proximate result of the aforementioned acts of Defendants, Jacob died.

48.     Prior to his death, Plaintiffs were extremely close to Jacob.  Jacob lived with Plaintiffs and Plaintiffs enjoyed his company, their conversations, and having him in their lives. Plaintiffs relied on Jacob for love, companionship, comfort, society, affection, solace and moral support.  As a direct result of Jacob's death, Plaintiffs suffered and continue to suffer damages including, but not limited to, funeral expenses, compensation for the loss of their son's love, companionship, comfort, affection, society, solace and moral support.

WHEREFORE, Plaintiffs pray for damages against Defendants as set forth below.

**SECOND CAUSE OF ACTION**

**WRONGFUL DEATH CAUSED BY NEGLIGENCE**

**(Against All Defendants)**

49.     Plaintiffs hereby reallege and incorporate each and every allegation above as though fully set forth herein.

///

///

///

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

50.    Due to the trust and authority given to police officers by virtue of their position, Defendants had a special relationship with Jacob and owed a duty of care to Jacob who detrimentally relied on said Defendants to provide timely medical care, protect him and to use reasonable force in the execution of their duties.

51.    **Defendant Spiller** breached his duty when he failed to train his subordinates regarding crisis intervention techniques, failed to admonish them for not using de-escalation techniques when they responded in situations involving the mentally ill, and failed to train them following the deaths of John Deming Jr. and Shannon Estille.

52.    **Defendants Chin, Middleton, Trovao, Bennett and Koumiss and/or DOES 11 through 50** breached their duty of care when on or about August 1, 2018, they restrained Jacob's hands and legs, placed a spit mask over his mouth, and used a baton, stun gun and taser on him several times and stomped on him without legitimate reason or provocation.

53.    **Defendants Billdt and Knight** breached their duty of care when they failed to intervene and stop their subordinates from using excessive force and failed to instruct their subordinates in de-escalation techniques and excited delirium and failed to intervene when their subordinates dangerously compressed Jacob's chest and back thereby causing him to suffer mechanical asphyxia.

54.    **Defendants Chin, Middleton, Trovao, Bennett, Koumiss, Billdt, and Knight** breached their duty of care when they did not monitor Jacob's condition when he was suffering from excited delirium and had been subjected to substantial dangerous compression to his neck and back impairing his ability to breathe, and had been repeatedly tasered.  They further breached their duty of care when they refused access to medical personnel to render medical care for Jacob.  This delay in treatment and refusal to allow medical professionals access to Jacob contributed to his death.

55.    Plaintiffs are informed and believe, and thereon allege, that at no time was Jacob a threat to himself, the police officers, and/or others, and the use of force against Jacob was unreasonable, unnecessary, excessive, malicious, and/or for the purpose of inflicting pain on Jacob.

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

56.     By the actions and/or inactions described herein Defendants negligently, carelessly, recklessly, intentionally, and/or in any other actionable manner, used excessive force on Jacob.

57.     Pursuant to Government Code sections 815.2, Pleasanton is vicariously liable for the conduct of Defendants who were acting within the course and scope of their employment.

58.     As a proximate result of the aforementioned acts of Defendants, Jacob died.

59.     Prior to his death, Plaintiffs were extremely close to Jacob.  Jacob lived with Plaintiffs and Plaintiffs enjoyed his company, their conversations, and having him in their lives. Plaintiffs relied on Jacob for love, companionship, comfort, society, affection, solace and moral support.  As a direct result of Jacob's death, Plaintiffs suffered and continue to suffer damages including, but not limited to, funeral expenses, compensation for the loss of their son's love, companionship, comfort, affection, society, solace and moral support.

WHEREFORE, Plaintiffs pray for damages as set forth below.

<u>**THIRD CAUSE OF ACTION**</u>

**WRONGFUL DEATH CAUSED BY EXCESSIVE FORCE IN VIOLATION OF CIVIL RIGHTS**

**42 U.S.C. §§ 1983, 1988**

**(Against Defendants Chin, Middleton, Trovao, Bennett, and Koumiss)**

60.     Plaintiffs hereby reallege and incorporate each and every allegation set forth above as though fully set forth herein.

61.     Under the Fourth Amendment to the United States Constitution, Jacob had a right to be free from unjustified, unauthorized and/or excessive force by law enforcement and to be free from unreasonable searches and seizures by law enforcement.  Under the Fourteenth Amendment to the United States Constitution, Jacob had a right not to be deprived of life or liberty without due process of law including, but not limited to, unreasonable seizures and searches.

///

///

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

62.     On August 1, 2018, Jacob was unlawfully seized when **Defendants Chin and Middleton** attempted to handcuff him simply for not answering their questions.  At that point, Jacob was not a threat to the officers nor had he attempted to flee.  There was no indication he was in possession of a weapon, and he had only committed a misdemeanor outside of the officers' presence.

63.     Thereafter, **Defendants Chin, Middleton, Trovao, Bennett, and Koumiss** used excessive and unreasonable force when they took Jacob to the ground, excessively used their batons, fists, tasers, and stomped on Jacob.

64.     Thereafter, **Defendants Chin, Middleton, Trovao, Bennett, Koumiss, Billdt, and Knight** failed to monitor Jacob's breathing even though they knew or should have known that their actions placed him at substantial risk of sudden death.  Moreover, they refused medical personnel access to Jacob and this contributed to his death.

65.     Plaintiff s are informed and believe, and thereon allege, at no time was Jacob a threat to himself, the police officers, and/or others, and the use of force against Jacob was unreasonable, unnecessary, excessive, malicious, and/or for the purpose of inflicting pain on Jacob.

66.     Plaintiffs are informed and believe, and thereon allege, that at no time did Jacob pose a danger to officers.

67.     The aforementioned conduct constitutes a violation of Jacob's Fourth and Fourteenth Amendment rights to be free from unjustified, unauthorized and/or excessive force by law enforcement, to be free from unreasonable searches and seizures by law enforcement, and his right not to be deprived of life or liberty without due process of law, in violation of 42 U.S.C. section 1983.  Said violations infringed on Jacob's personal liberty rights.

68.     By the actions and/or inactions described herein, Defendants negligently, carelessly, recklessly, intentionally, and/or in any other actionable manner, used excessive force on Jacob in violation of his constitutional rights.

69.     As a proximate result of the aforementioned acts of Defendants, Jacob died.

///

70.     Plaintiffs are informed and believe, and thereon allege, that the conduct of Defendants was intentional, malicious, oppressive, and/or done with a conscious or reckless disregard for the rights of Jacob.  As a result, Plaintiffs are entitled to recover all damages provided for the violation of these rights and for Jacob's personal injuries, including but not limited to, general and special damages according to proof, costs of suit, and attorney fees under 42 U.S.C. section 1983.  Plaintiffs are also entitled to recover punitive damages against the individual Defendants.

71.     Prior to his death, Plaintiffs were extremely close to Jacob.  Jacob lived with Plaintiffs and Plaintiffs enjoyed his company, their conversations, and having him in their lives. Plaintiffs relied on Jacob for love, companionship, comfort, society, affection, solace and moral support.  As a direct result of Jacob's death, Plaintiffs suffered and continue to suffer damages including, but not limited to, funeral expenses, compensation for the loss of their son's love, companionship, comfort, affection, society, solace and moral support.

WHEREFORE, Plaintiffs pray for damages as set forth below.

### FOURTH CAUSE OF ACTION

**VIOLATION OF FOURTH AMENDMENT CIVIL RIGHTS**

**Supervisory Liability**

**42 U.S.C. §§ 1983, 1988**

**(Against Defendants Billdt and Knight)**

72.     Plaintiffs hereby reallege and incorporate each and every allegation set forth above as though fully set forth herein.

73.     Under the Fourth Amendment to the United States Constitution, Jacob had a right to be free from unjustified, unauthorized and/or excessive force by law enforcement and to be free from unreasonable searches and seizures by law enforcement.  Under the Fourteenth Amendment to the United States Constitution, Jacob had a right not to be deprived of life or liberty without due process of law including, but not limited to, unreasonable seizures and searches.

///

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

74.    On August 1, 2018, **Defendants Billdt and Knight** were acting under color of state law and were the supervisors of **Defendants Chin, Middleton, Trovao, Koumiss, and Bennett**.

75.    **Defendants Billdt and Knight** are liable as supervisors because they were present at the scene and failed to intervene to stop their subordinates from violating Jacob's constitutional rights. **Defendants Billdt and Knight** knew or should have known that the actions of their subordinates were unreasonably excessive, violated Jacob's rights and had a high probability of leading to his death.

76.    Defendants conduct was so closely related to the constitutional deprivation as to be the moving force that ultimately caused the excessive force that led to Jacob's death and the violation of his rights.

77.    The aforementioned conduct constitutes a violation of Jacob's Fourth and Fourteenth Amendment rights to be free from unjustified, unauthorized and/or excessive force by law enforcement, to be free from unreasonable searches and seizures by law enforcement, and his right not to be deprived of life or liberty without due process of law, in violation of 42 U.S.C. section 1983. Said violations infringed on Jacob's personal liberty rights.

78.    Plaintiffs are informed and believe, and thereon allege, that the conduct of Defendants was intentional, malicious, oppressive, and/or done with a conscious or reckless disregard for the rights of Jacob. As a result, Plaintiffs are entitled to recover all damages provided for the violation of these rights and for Jacob's personal injuries, including but not limited to, general and special damages according to proof, costs of suit, and attorney fees under 42 U.S.C. section 1988. Plaintiffs are also entitled to recover punitive damages against the individual Defendants.

79.    Prior to his death, Plaintiffs were extremely close to Jacob. Jacob lived with Plaintiffs and Plaintiffs enjoyed his company, their conversations, and having him in their lives. Plaintiffs relied on Jacob for love, companionship, comfort, society, affection, solace and moral support. As a direct result of Jacob's death, Plaintiffs suffered and continue to suffer damages including, but not limited to, funeral expenses, compensation for the loss of their son's love,

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

companionship, comfort, affection, society, solace and moral support.

WHEREFORE, Plaintiffs pray for damages as set forth below.

## FIFTH CAUSE OF ACTION

### UNREASONABLE SEARCH AND SEIZURE

### Denial of Medical Care

### 42 U.S.C. § 1983

**(Against Defendants Chin, Middleton, Koumiss, Bennett, Trovao, Billdt, and Knight)**

80. Plaintiffs hereby reallege and incorporate each and every allegation above as though fully set forth herein.

81. The denial of medical care by **Defendants Chin, Middleton, Koumiss, Bennett, Trovao, Billdt, and Knight** deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Jacob under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

82. As a result, DECEDENT suffered extreme mental and physical pain and suffering and eventually suffered a loss of life and earning capacity.  Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs are also claiming funeral and burial expenses.

83. **Defendants Chin, Middleton, Koumiss, Bennett, Trovao, Billdt, and Knight** knew that failure to provide timely medical treatment to DECEDENT could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, causing DECEDENT great bodily harm and death.

84. After repeatedly tasing and severely beating DECEDENT, neither **Defendants Chin, Middleton, Koumiss, Bennett, or Trovao** nor their supervisors, **Defendants Billdt and Knight,** summoned timely medical attention for DECEDENT, who was unconscious and turning blue, and Defendants did not allow and prevented responding medical personnel on-scene to timely render medical aid/assistance to DECEDENT.

///

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

85.     The conduct of Defendants was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages.

86.     Plaintiffs bring this claim as successors-in-interest to DECEDENT and seek both survival and wrongful death damages for the violation of DECEDENT's rights.

87.     Plaintiffs also seek attorney's fees under this claim.

## SIXTH CAUSE OF ACTION

### SUBSTANTIVE DUE PROCESS

### 42 U.S.C. § 1983

**(Against Defendants Chin, Middleton, Koumiss, Bennett, and Trovao, Billdt and Knight)**

88.     Plaintiffs hereby reallege and incorporate each and every allegation above as though fully set forth herein.

89.     Plaintiffs had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in Plaintiff's familial relationship with their son, DECEDENT.

90.     As a result of the excessive force by **Defendants Chin, Middleton, Koumiss, Bennett, and Trovao** and the failure to intervene by **Billdt and Knight**, DECEDENT died. Plaintiffs were thereby deprived of their constitutional right of familial relationship with DECEDENT.

91.     **Defendants Chin, Middleton, Koumiss, Bennett, Trovao, Billdt, and Knight** acting under color of state law, thus violated the Fourteenth Amendment rights of Plaintiffs to be free from unwarranted interference with their familial relationship with DECEDENT.

92.     The aforementioned actions of **Defendants Chin, Middleton, Koumiss, Bennett, Trovao, Billdt, and Knight** along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of DECEDENT and Plaintiffs with purpose to harm unrelated to any legitimate law enforcement

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

1   objective.

2        93.    **Defendants Chin, Middleton, Koumiss, Bennett, Trovao, Billdt and Knight**

3   acting under color of state law, thus violated the Fourteenth Amendment rights of DECEDENT

4   and Plaintiffs.

5        94.    As a direct and proximate cause of the acts of **Defendants Chin, Middleton,**

6   **Koumiss, Bennett, Trovao, Billdt and Knight**, Plaintiffs suffered extreme and severe mental

7   anguish and pain and have been injured in mind and body. Plaintiffs have also been deprived of

8   the life-long love, companionship, comfort, support, society, care and sustenance of

9   DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

10  Plaintiffs are also claiming funeral and burial expenses.

11       95.    The conduct of **Defendants Chin, Middleton, Koumiss, Bennett, Trovao,**

12  **Billdt and Knight** was willful, wanton, malicious, and done with reckless disregard for the

13  rights and safety of DECEDENT and Plaintiffs and therefore warrants the imposition of

14  exemplary and punitive damages.

15       96.    Plaintiffs bring this claim individually and seek wrongful death and survival

16  damages for the violation of Plaintiffs' rights.

17       97.    Plaintiffs also seek attorney's fees under this claim.

18                              <u>**SEVENTH CAUSE OFA CTION**</u>

19  **VIOLATION OF CIVIL RIGHTS FOR UNCONSTITUTIONAL CUSTOM OR POLICY**

20                          **42 U.S.C. §§ 1983, 1988**

21  **(Against Defendants Pleasanton, Spiller, DOES 1 through 10, and DOES 30 through 50)**

22       98.    Plaintiffs hereby reallege and incorporate each and every allegation set forth

23  above as though fully set forth herein.

24       99.    Under the Fourth Amendment to the United States Constitution, Jacob had a

25  right to be free from unjustified, unauthorized and/or excessive force by law enforcement and to

26  be free from unreasonable searches and seizures by law enforcement.  Under the Fourteenth

27  Amendment to the United States Constitution, Jacob had a right not to be deprived of life or

28  liberty without due process of law including, but not limited to, unreasonable seizures and

searches.

100.    By the actions and/or inactions described herein, **Defendants Chin, Middleton, Koumiss, Bennett, Trovao, Billdt and Knight** negligently, carelessly, recklessly, intentionally, and/or in any other actionable manner, used excessive force on Jacob in violation of his constitutional rights.

101.    This was the third death of a mentally ill person in three years at the hands of Pleasanton Police officers.  **Defendants Middleton and Bennett** were involved in failing to use de-escalation tactics with another mentally ill person, John Deming Jr., that resulted in his death. Other Pleasanton police officers responded to a mentally ill individual and failed to use de-escalation tactics ultimately resulting in his death.  Thereafter, **Defendants Pleasanton and Spiller** did nothing to admonish, train or otherwise remedy to failure to use de-escalation tactics with the mentally ill.

102.    Plaintiffs further allege that **Defendants Pleasanton, Spiller, DOES 1 through 10 and DOES 30 through 50** and each of them, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, especially the mentally ill and of Jacob in particular, knowingly maintained, enforced, and applied a policy and practice of:

      a.    Employing and retaining police officers who said Defendants at all times herein knew, or reasonably should have known, had dangerous propensities for abusing and/or neglecting their authority and committing acts of excessive force;

      b.    Inadequately supervising, training, controlling, assigning, and disciplining police officers who said Defendants knew, or in the exercise of reasonable care should have known, had the afore-described propensities and character traits;

      c.    Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the conduct of the police officers particularly with respect to illegal acts and acts of

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

1    excessive force;

2    d.    Fostering and encouraging a policy, pattern, and practice of violence

3          through their official positions, which proximately resulted in the

4          excessive force on Jacob;

5    e.    By having and maintaining an unconstitutional policy, custom and

6          practice of using excessive force, including deadly force, which also is

7          demonstrated by inadequate training regarding these subjects.  The

8          policies, customs and practices of **Defendants Pleasanton, Spiller, and**

9          **DOES 1-10** were done with deliberate indifference to individuals' safety

10         and rights;

11   f.    By failing to provide appropriate training or corrective action following

12         fatalities perpetrated by Pleasanton police officers against mentally ill

13         individuals;

14   g.    By failing to have civilian oversight of police officers in deliberate

15         indifference to violations of constitutional rights by Pleasanton police

16         officers; and

17   h.    In taking the aforementioned actions, **Defendants Spiller and DOES 30-**

18         **50**, ratified the conduct of **Defendants Chin, Middleton, Koumiss,**

19         **Bennett, Trovao, Billdt and Knight**.

20   103.   At all times prior to August 1, 2018, **Defendants Spiller, DOES 1 through 10,**

21   **30 through 50** and each of them, were policy makers for Pleasanton and PPD and knew or

22   should have reasonably known **Defendants Chin, Middleton, Koumiss, Bennett, Trovao,**

23   **Billdt and Knight, and DOES 11 through 50** had a propensity to violate the civil rights of

24   persons and/or to fail to prevent the violations of civil rights by others, including but not limited

25   to, excessive, unreasonable and/or unjustified use of force, yet failed to adequately train, retrain,

26   monitor, supervise, and discipline said Defendants.

27   ///

28   ///

104.    The aforementioned conduct by Defendants constitutes a violation of Jacob's Fourth and Fourteenth Amendment rights to be free from unjustified, unauthorized and/or excessive force by law enforcement, to be free from unreasonable searches and seizures by law enforcement, and his right not to be deprived of life or liberty without due process of law, in violation of 42 U.S.C. section 1983.  Said violations infringed on Jacob's personal liberty rights.

105.    Plaintiffs bring this claim individually and seek wrongful death and survival damages for the violation of Plaintiffs' rights.

106.    Plaintiffs also seek attorney's fees under this claim.

WHEREFORE, Plaintiffs pray for damages against Pleasanton, Spiller and/or DOES 1 through 10, 30 through 50 and each of them, as set forth below.

## EIGHTH CAUSE OF ACTION

### VIOLATION OF CIVIL RIGHTS

### California Civil Code § 52.1

### (Against Defendants Pleasanton, Chin, Middleton, Koumiss, Bennett, Trovao, Billdt, and Knight)

107.    Plaintiffs hereby reallege and incorporate each and every allegation above as though fully set forth herein.

108.    California Civil Code section 52.1 ("the Bane Act") prohibits any person from interfering with another person's exercise or enjoyment of his constitutional rights by threats, intimidation, or coercion, or by the use of unconstitutionally excessive force.

109.    Under the Fourth Amendment to the United States Constitution, Jacob had a right to be free from unjustified, unauthorized and/or excessive force by law enforcement and to be free from unreasonable searches and seizures by law enforcement.  Under the Fourteenth Amendment to the United States Constitution, Jacob had a right not to be deprived of life and/or liberty without due process of law including, but not limited to, unreasonable seizures and searches.  Under Article I, section 13 of the California Constitution, Jacob had a right to be secure in his person, house, papers, and effects against unreasonable seizures and searches.

///

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

110.     By the actions and/or inactions described herein, **Defendants Chin, Middleton, Koumiss, Bennett, Trovao, Billdt, and Knight** negligently, carelessly, recklessly, intentionally, and/or in any other actionable manner, used excessive force on Jacob in violation of his constitutional rights.

111.     **Defendants Chin, Middleton, Koumiss, Bennett, Trovao, Billdt, and Knight,** while working as police officers for the Pleasanton Police Department, and acting within the course and scope of their duties, interfered with or attempted to interfere with the rights of DECEDENT to be free from unreasonable searches and seizures, to equal protection of the laws, to access to the courts, and to be free from state actions that shock the conscience, by threatening or committing acts involving violence, threats, coercion, or intimidation.  DECEDENT had a mental illness and was a victim of prejudice by Defendants against mentally ill individuals.

112.     As a proximate result of the conduct of Defendants, Jacob was required to and did employ physicians to examine, treat, and care for him, and did incur medical and incidental expenses.

113.     Plaintiffs are entitled to an award of statutory damages and attorneys' fees under California Civil Code sections 52 and 52.1.

114.     Pursuant to Government Code section 815.2, **Defendant Pleasanton** is vicariously liable for the conduct **Defendants Chin, Middleton, Koumiss, Bennett, Trovao, Billdt, and Knight** who were acting within the course and scope of their employment.

115.     The aforementioned acts of **Defendants Chin, Middleton, Koumiss, Bennett, Trovao, Billdt, and Knight** were done by them knowingly, intentionally, and maliciously, for the purpose of harassment, oppression, and inflicting injury upon Jacob, and in reckless, wanton, and callous disregard of Jacob's safety, security, and civil rights.  By reason thereof, Plaintiffs claim exemplary and punitive damages from said Defendants in an amount according to proof at trial.

WHEREFORE, Plaintiffs pray for damages as set forth below.

///

///

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

### NINTH CAUSE OF ACTION

**VIOLATION OF CIVIL RIGHTS**

**42 U.S.C. § 12101 *et seq.***

**(Against Defendants Chin, Middleton, Spiller and Pleasanton)**

116.    Plaintiffs hereby reallege and incorporate each and every allegation above as though fully set forth herein.

117.    The Americans with Disabilities Act prohibits discrimination against individuals with disabilities, including employment, transportation, public accommodations, communications and access to state and local government' programs and services.  Under the Americans with Disabilities Act, Jacob Bauer had a right to be free from such discrimination.

118.    At all times prior to August 1, 2018, **Defendants Pleasanton, Spiller, DOES 1 through 10, 30 through 50** and each of them, were policy makers for Pleasanton and PPD failed to train and supervise **Defendants Chin and Middleton** in: recognizing the symptoms of disability under title II of the Americans with Disabilities Act and offering appropriate accommodations to such individuals; or otherwise discriminating against such qualified individuals with symptoms of disability recognized under Title II of the Americans with Disabilities Act.  This failure resulted in excessive and unreasonable use of force against Jacob Bauer and the denial of adequate emergency care, which ultimately resulted in his death.

119.    By the actions and/or inactions described herein, at the time **Defendants Chin and Middleton** made contact with Jacob Bauer, they knew and/or had reason to know that he was in mental health crisis and were aware of his disability and onset the symptoms and manifestations of Jacob Bauer's disability.  Rather than making appropriate accommodations for Jacob Bauer's disability, **Defendants Chin and Middleton** unlawfully seized Jacob because he did not answer a question and then used excessive and unlawful force against him.

120.    The aforementioned conduct excluded Jacob from participation in or denied him the benefits of **Defendant Pleasanton's** programs and activities, failed to accommodate Jacob Bauer's mental illness disability and/or discriminated against Jacob Bauer because of his disability.

121.   **Defendants Chin and Middleton's** failure to accommodate Jacob Bauer's disability contributed to his wrongful death.

122.   Pursuant to Government Code section 815.2, **Defendant Pleasanton** is vicariously liable for the conduct **Defendants Chin and Middleton** who were acting within the course and scope of their employment.

WHEREFORE, Plaintiffs pray for damages as set forth below.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

## **PRAYER FOR RELIEF**

Wherefore Plaintiffs pray for damages as follows:

1. For special damages;

2. For general damages;

3. For punitive damages against **Defendants Chin, Middleton, Koumiss, Bennett, Trovao, Billdt, and Knight** according to proof;

4. For costs of suit and reasonable attorneys' fees pursuant to 42 U.S.C. sections 1988 and 12205, and other relevant statutes, including a contingency fee enhancement beyond the lodestar;

5. For prejudgment interest at the legal rate; and

6. For such other and further relief as the Court deems appropriate.

DATE:  April 21, 2020

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER

J. Gary Gwilliam
Jayme L. Walker
Attorneys for Plaintiffs
JOHN AND ROSE BAUER

**DEMAND FOR A JURY TRIAL**

DATE:  April 21, 2020

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER

J. Gary Gwilliam
Jayme L. Walker
Attorneys for Plaintiffs
JOHN AND ROSE BAUER

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612