1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOAH G. BLECHMAN (State Bar No. 197167)
noah.blechman@mcnamaralaw.com
McNAMARA, NEY, BEATTY, SLATTERY,
BORGES & AMBACHER LLP
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523
Telephone: (925) 939-5330
Facsimile:  (925) 939-0203

Attorneys for Defendants
CITY OF PLEASANTON; BRADLEE MIDDLETON;
JONATHAN CHIN; RICHARD TROVAO; JASON KNIGHT;
MARTY BILLDT; and DAVE SPILLER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN BAUER, an individual and as
Successor in Interest of Jacob Bauer,
deceased; ROSE BAUER, an individual
and as Successor in Interest of Jacob Bauer,
deceased,

    Plaintiffs,

  vs.

CITY OF PLEASANTON; CITY OF
PLEASANTON; BRADLEE
MIDDLETON; JONATHAN CHIN;
RICHARD TROVAO; STEVEN
BENNETT; ALEX KOUMISS; JASON
KNIGHT; MARTY BILLDT; and DAVE
SPILLER; and DOES 1 to 90 INCLUSIVE,

    Defendants.

Case No. C19-04593 LB

**DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/PARTIAL SUMMARY JUDGMENT**

Date:   April 8, 2021
Time:   9:30 a.m.
Dept:   Floor 15, Ctrm. B (S.F.)
Judge:   Hon. Laurel Beeler
Trial Date:  July 19, 2021

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. RELEVANT FACTS ..................................................................................................... 2

    A.    Reported Crimes At Raley's Store ........................................................................ 2

    B.    Officers Middleton and Chin Are Dispatched to Raley's Store ........................... 3

    C.    When Officers Attempted to Legally Handcuff JB, He Became
          Uncooperative and Resistive, Leading to a Prolonged Struggle ........................... 4

    D.    Additional Officers and Supervisors Arrive to Assist in Getting JB in
          Custody ................................................................................................................ 5

    E.    Staged Medical Personnel Are Immediately Called Into the Scene ..................... 6

    F.    Coroner Determines JB Died of Acute Methamphetamine Intoxication ................ 7

    G.    PPD Has Relevant Use of Force Policies and Appropriate Training for
          Officers ................................................................................................................ 8

III. LEGAL ARGUMENTS ................................................................................................ 8

    A.    Legal Standards .................................................................................................... 8

          1.    Summary Judgment Standards ................................................................. 8

          2.    Qualified Immunity Standards .................................................................. 9

    B.    Plaintiffs Cannot Demonstrate that Officers Violated JB' Fourth
          Amendment Rights During this Lawful Detention ............................................... 11

          1.    Officers Had Reasonable Suspicion to Detain and Grounds to
               Handcuff JB ............................................................................................ 11

          2.    The Officers are Entitled to Qualified Immunity ..................................... 12

    C.    Plaintiffs Cannot Demonstrate that Officers Violated the Fourth
          Amendment by Using Unreasonable Force Against JB To Counter His
          Violent Resistance ............................................................................................... 13

          1.    Plaintiffs Cannot Demonstrate Evidence that the Force Used by
               Officers was Objectively Unreasonable .................................................. 13

               a.    Officers Middleton and Chin's Limited Force Was
                   Appropriate ................................................................................. 15

               b.    Officer Trovao's Limited Force was Lawful and Justified ............ 16

D.   Plaintiffs Cannot Demonstrate a Viable Supervisory Liability Claim against Sergeants Billdt and Knight ............................................................... 17

E.   Plaintiffs Cannot Demonstrate a 14th Amendment Violation As There is No Evidence of Any Purpose to Harm JB Unrelated to  Getting Him Into Custody and Under Control ......................................................................... 18

F.   Plaintiffs Cannot Demonstrate Defendants Denied JB Medical Care ................. 19

G.   Plaintiffs Cannot Demonstrate a Viable *Monell* Claim Against the City of Pleasanton or Chief  Spiller ........................................................................... 20

1.   Plaintiffs Cannot Show a Custom or Policy Led to Any Arguable Constitutional Violation of JB ...................................................................... 21

2.   Plaintiffs Cannot Show a Failure to Train Led to Any Constitutional Violation ................................................................................................ 22

3.   Plaintiffs' Ratification Theory Also Fails .................................................. 22

H.   Plaintiffs' Related State Law Claims also Fail as a Matter of Law ....................... 23

IV. CONCLUSION ................................................................................................ 25

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF AUTHORITIES**

**Cases**

*A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 454 (9th Cir. 2013) .................................................. 18

*Addisu v. Fred Meyer Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).................................................... 9

*Aleghretti v. City & County of San Francisco*, U.S. Dist. LEXIS at 30-31 (N.D. Cal. 2014)....... 23

*Alexander v. Cty. of L.A.,* 64 F.3d 1315, 1322 (9th Cir. 1995) ............................................... 10, 12

*Allen v. City of Los Angeles*, 66 F.3d 1052, 1056-57 (9th Cir. 1995)........................................... 11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ........................................................... 8

*Arpin v. Santa Clara Valley Transp. Agency,* 261 F. 3d 912, 922 (9th Cir. 2001) ....................... 16

*Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ............................................................................... 9

*Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ................................................................................. 14

*Atwater v. City of Lago Vista,* 532 U.S. 318, 354 (2001) .............................................................. 13

*Bhan v. NME Hospitals, Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991)................................................ 9

*Blankenhorn v. City of Orange,* 485 F.3d 463, 484 (9th Cir. 2007) ............................................. 22

*Board of the County Comm'rs v. Brown*, 520 U.S. 397, 409 (1997) ............................................ 22

*Brosseau v. Haugen*, 543 U.S. 194, 197 (2004)...................................................................... 10, 13

*Brown v. Ransweiler,* 171 Cal. App. 4th 516, 537-538 (2009) ...................................................... 24

*Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013)............................................................... 23

*Carlo v. City of Chino*, 105 F.3d 493, 500 (9th Cir. 1997 ........................................................... 10

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ............................................................. 8, 9

*City of Canton v. Harris,* 489 U.S. 378, 388 (1989) ..................................................................... 22

*City of St. Louis v. Praprotnick,* 485 U.S. 112, 127 (1988) ......................................................... 23

*Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010) ............................... 21

*Edgerly v. City & Cty. of San Francisco*, 599 F.3d 946, 956 (9th Cir. 2010).............................. 13

*Florida v. Royer*, 460 U.S. 491, 498 (1983) ................................................................................. 11

*Franklin v. Fox*, 312 F.3d 423, 437 (9th Cir. 2002)...................................................................... 10

*Gallegos v. City of Los Angeles*, 308 F.3d 987, 990 (9th Cir. 2002) ........................................... 11

*Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992).................................................... 21, 23

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

*Gonzalez v City of Anaheim*, 747 F.3d 789, 793 (9th Cir. 2014) .................................................. 18

*Graham v. Connor*, 490 U.S. 386, 388 (1989) .................................................... 8, 10, 13, 14, 15, 16

*Green v. City and County of San Francisco*, 751 F.3d 1039, 1047 (9th Cir. 2014) ..................... 12

*Gregory v. Maui*, 523 F. 3d 1103, 1107 (9th Cir. 2008) ............................................................. 13

*Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) ................................................................ 17

*Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 629, 160 (2013) ................................................ 24

*Hopkins v. Bonvicino*, 573 F.3d 752, 769-70 (9th Cir. 2009) ........................................................ 14

*Hunter v. Bryant*, 502 U.S. 224, 228 (1991) ........................................................................... 13

*Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) ......................................................................... 11

*In Re Antonio B.*, 166 Cal. App. 4th 435, 441, 82 Cal. Rptr. 3d 693 (2008) .............................. 12

*Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 951 (9th Cir. 2017) .................................... 10

*Johnson v. Bay Area Rapid Transit Dist.,* 724 F.3d 1159, 1168-69 (9th Cir. 2013) .................... 18

*Lee v. City of Los Angeles,* 250 F.3rd 668, 685 (9th Cir. 2001) .................................................... 18

*Long v. City and County of Honolulu*, 511 F.3d 901, 907 (9th Cir. 2007) .................................... 20

*Lynn v. Sheet Metal Workers Int'l Ass'n*, 804 F.2d 1472, 1478 (9th Cir. 1986) ............................ 8

*M.H. v. Cty. of Alameda*, 62 F. Supp. 3d 1049, 1093-94 (N.D. Cal. 2014) .................................. 10

*Maddox v. City of Los Angeles*, 792 F.2d 1408, 1415 (9th Cir. 1986) .......................................... 19

*Malley v. Briggs*, 475 U.S. 335, 341 (1986) ........................................................................... 15

*Menuel v. City of Atlanta*, 25 F.3d 990, 995 (11th Cir. 1994) ..................................................... 19

*Messerschmidt v. Millender*, 132 S.Ct. 1235, 1244-1245 (2012) ................................................ 10

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ......................................................................... 10

*Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978) . 2, 20, 21, 22, 23

*Moore v. City of Berkeley*, U.S. Dist. LEXIS 142710 (N.D. Cal. 2016) ...................................... 16

*Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ...................................................................... 9, 16

*Nelson v. City of Davis*, 709 F. Supp. 2d 978, 992 (E.D. Cal. 2010) .......................................... 24

*Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ............................................................. 21

*Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) .................... 21

*Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) ............................................................. 18

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

*Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1044-45 (9th Cir. 2018) .................................. 23, 24

*Roy v. Inhabitants of City of Lewiston*, 42 F.3d 691, 695 (1st Cir. 1994) .................................. 15

*Santiago v. Fenton*, 891 F.2d 373, 382 (1st Cir. 1989).................................................................. 23

*Saucier v. Katz*, 533 U.S. 194, 206 (2001)..................................................................................... 10

*Scott v. Harris*, 550 U.S. 372, 386 (2007) ..................................................................................... 14

*Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994*)*...................................................................... 20

*Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) ...................................................................... 17

*Stevens v. Rose*, 298 F.3d 880, 883-84 (9th Cir. 2002)................................................................. 11

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) ..... 8, 9

*Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1099 (9th Cir. 2006) .................. 19, 20

*Tennessee v. Garner,* 471 U.S. 1 (1985) ......................................................................................... 10

*Terry v. Ohio*, 392 U.S. 1, 30 (1968) .............................................................................................. 11

*United States v. Bautista*, 684 F.2d 1286, 1289 (9th Cir. 1982) ................................................... 12

*United States v. Cortez*, 449 U.S. 411, 417 (1981) ........................................................................ 11

*United States v. Hensley*, 469 U.S. 221, 229 (1985)....................................................................... 11

*United States v. Miles*, 247 F.3d 1009, 1012 (9th Cir. 2001) .................................................. 11, 12

*United States v. Montez*, 2017 U.S. Dist. LEXIS at. 16.................................................................. 24

*United States v. Santana*, 427 U.S. 38, 43 (1976).......................................................................... 13

*United States v. Sokolow*, 490 U.S. 1, 7 (1989) ............................................................................. 11

*Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir. 2002)...................................... 9

*Washington v. Lambert*, 98 F.3d 1181, 1189 (9th Cir. 1996) ......................................................... 12

*Weishaar v. Cnty. of Napa*, 2016 U.S. Dist. LEXIS 173833, at *37 (N.D. Cal. 2016) ................. 23

*White v. Pauly*, 137 S. Ct. 548, 551 (2017)................................................................................ 9, 10

*Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) ................................................................ 18

*Zion v. County of Orange*, 874 F.3d 1072, 1077 (9th Cir. 2017)................................................... 18

**Statutes**

42 U.S.C. § 1983 ............................................................................................................. 2, 17, 22, 23

California Civil Code § 52.1 ..................................................................................................... 23, 24

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

<u>**NOTICE**</u>

TO PLAINTIFFS' COUNSEL, PLEASE TAKE NOTICE that on April 8, 2021, at 9:30 a.m., in Courtroom B, on the 15th Floor, of the United States District Court in San Francisco, or via Zoom or similar method, or as soon thereafter as this matter can be heard, Defendants will and do move for Summary Judgment and/or Partial Summary Judgment on <u>Plaintiffs' operative Second Amended Complaint</u> (ECF 36 or "SAC").  This Motion is made pursuant to FRCP 56 on the grounds that there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law as to each of Plaintiffs' claims.  This Motion is based on this Notice, Memorandum of Points and Authorities, the supporting Declaration of Noah G. Blechman and attached exhibits (all attached to Blechman Decl.) and such further evidence and oral argument as may be presented.  Note, <u>Officers Koumiss and Bennett have now been voluntarily dismissed with prejudice per order of the Court.  (ECF 72).</u>

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I. <u>INTRODUCTION</u>**

On the afternoon of August 1, 2018, Decedent Jacob Bauer ("JB"), while under the influence of methamphetamines, caused a disturbance and property damage in a grocery store and then became combative, agitated and aggressive when legally detained down the street, leading to a prolonged (several minute) struggle with uniformed officers of the Pleasanton Police Department ("PPD") until officers were finally able to get JB controlled and handcuffed.  The evidence is undisputed that the PPD officers were trying to get JB into handcuffs, as can be seen in the various body camera videos and matrixes, for officer safety purposes so they could continue their investigation. After he was handcuffed after the long struggle, JB was placed in a Wrap lower body restraint device while still breathing and yelling and, while being transported into the ambulance, JB suffered a medical emergency and later died at the hospital.  <u>The coroner's cause of death was "acute methamphetamine intoxication."</u>

The crux of this case relates to Plaintiffs' allegations that officers used excessive force leading to JB's death, among other related claims.  However, video and testimonial evidence in this case demonstrates that the involved officers acted in an objectively reasonable (and highly

<div style="writing-mode: vertical">McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP<br>ATTORNEYS AT LAW<br>3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523<br>TELEPHONE: (925) 939-5330</div>

restrained) manner and/or are entitled to qualified immunity for their actions in this rapidly dynamic struggle with the very large (274 pounds), combative and resistive JB.  Defendants should prevail on this Motion, either in full or in part, per below.   The Causes of Action ("COA") at issue per the operative SAC and involved parties are as follows:

| COA | Claim | Against Defendants |
|---|---|---|
| 1 | Battery | City, Chin, Middleton and Trovao |
| 2 | Negligence | City, Chin, Middleton, Trovao, Billdt, and Knight |
| 3 | § 1983 Excessive Force per Fourth Am. | Chin, Middleton, and Trovao |
| 4 | § 1983 Supervisor Liability | Billdt and Knight |
| 5 | § 1983 Denial of Medical Care per Fourth Am. | Chin, Middleton, Trovao, Billdt, and Knight |
| 6 | Substantive Due Process per Fourteenth Am. | Chin, Middleton, Trovao, Billdt, and Knight |
| 7 | § 1983 *Monell* Claims | City and Spiller |
| 8 | Bane Act | City, Chin, Middleton, Trovao, Billdt, and Knight |

## II. RELEVANT FACTS

### A.      Reported Crimes at Raley's Store

On August 1, 2018, at 2:42 p.m., Pleasanton Police Department ("PPD") dispatch received a call from the manager of Raley's supermarket located on 5420 Sunol Boulevard in Pleasanton, California, reporting that a male subject was inside the store causing a disturbance.  **Ex. A**, CAD (Dispatch) Report; **Ex. B**, Dispatch Audio and Transcript.  The manager explained that the man was acting "deranged" and was ranting to himself while picking up and slamming down a shopping cart.  **Ex. B**; **Ex. C[1]**; **Ex. C-1(b)**, 14:51:13.  The manager expressed an interest in prosecuting the man, later identified as JB, for his actions inside the store, as later confirmed when Ofc. Middleton contacted Raley's staff, as seen below.

---

[1] Exhibit C is video expert Robert McFarlane's Rule 26 summary report of all video and audio evidence he reviewed in this case.  Mr. McFarlane reviewed all Body Worn Camera (BWC) footage (all source evidence is attached to Ex. C) and created three video matrixes, syncing camera footage captured by officers. C-1 refers to Video Matrix 1 (six synced officer cameras of the main struggle), C-1(b) refers to Video Matrix 1 with Bystander video (Middleton and Chin's cameras synced with a cell phone video of a citizen), and C-2 refers to Video Matrix 2 (six synced officer cameras of the incident post-handcuffing).  The numbers following the citations here are the PST (Pacific Standard Time) timestamps reflecting the hour, minute, and seconds (HH:MM:SS) on the matrixes (note the timestamps on the body camera footage reflect time in UTC (Universal Time Code) which reflects PST minus seven hours).

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

**B.**   <u>**Officers Middleton and Chin Are Dispatched to Raley's Store**</u>

Ofc. Middleton arrived at Raley's and spoke with three employees, including the manager who called PPD dispatch.  **<u>Ex. D</u>**, Depo. of Middleton, 30:4-33:4.  The employees told Middleton that JB was acting "aggressively, breaking items" inside the store and was initially refusing to leave, though he eventually left.  *Id*.  One employee mentioned she was "scared of his actions, he is going to hurt somebody."  **<u>Ex. C-1(b)</u>**, 14:51:13.  Ofc. Chin arrived just as Middleton was finishing his conversation with the Raley's employees and heard an employee telling Middleton that JB may be on "really heavy drugs or he is crazy."  **<u>Ex. D</u>**, 31:5-7; **<u>Ex. E</u>**, Depo. of Chin, 33:11-35:16.   The Raley's employees wanted to press charges against JB.  **<u>Ex. D</u>**, 31:8-32:8.

Per the description provided by Raley's employees, Chin and Middleton located JB nearby and approached JB.  JB verbally identified himself as Jacob Bauer and provided his birthday, but did not have any form of identification to confirm his identity.  **<u>Ex. D</u>**, 47:10-14; **<u>Ex. E</u>**, 41:7-11.  JB as calm and cooperative at first and did not present any indications of any mental disorder or crisis, though he mentioned a stolen shot glass.  **<u>Ex. D</u>**, 32:9-34:14, 43:2-23; **<u>Ex. E</u>**, 26:1-25.

<u>Middleton then asked JB if he had anything illegal on him and JB did not respond, but instead just stared straight ahead.</u>  **<u>Ex. D</u>**, 46:23-47:24; **<u>Ex. E</u>**, 70:14-71:13.  <u>The question was repeated and again JB failed to respond and continued staring straight ahead, avoiding eye contact with Middleton.</u>  **<u>Ex. C-1(b)</u>**, 14:55:50.  JB's sudden refusal to answer the question about whether he had anything illegal on him, which could include weapons, alarmed the officers as based on their training and experience, a suspect suddenly refusing to answer such a question could mean they are armed and a suspect staring off into the distance could be formulating a plan to flee or fight.  **<u>Ex. D</u>**, 47:25-52:19; **<u>Ex. E</u>**, 70:14-71:13.  As such, Chin and Middleton became concerned about their safety and the safety of the community so Middleton made the decision to detain JB in handcuffs in order to confirm whether or not he had any weapons or other illegal items before proceeding with the investigation for this Raley's incident.  **<u>Ex. D</u>**, 67:8-17, 71:21-74:24, 76:4-24, 81:4-15, 107:11-14, 142:15-143:2.  Note, Plaintiffs have conceded in this case that officers had the lawful right to detain JB, but contend that they did not have the right to handcuff him.  As seen herein, the officers had the lawful right to handcuff JB.

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

C.   **When Officers Attempted to Legally Handcuff JB, He Became Uncooperative and Resistive, Leading to a Prolonged Struggle**

Middleton explained to JB that he was being detained for public intoxication and vandalism. **Ex. D**, 141:11-20; **Ex. E**, 81:11-84:25.  Chin and Middleton attempted to detain JB in handcuffs by each grabbing one of his hands, but JB, a very large and clearly very strong man, immediately began to tense up and pull away. **Ex. C-1(b)**, 14:56:09.  JB asked if he was free to go, but Middleton responded that he was not as he was being detained. *Id.*  As they struggled to place handcuffs on JB, the officers urged JB to "relax" and "stop resisting," but JB ignored these commands and instead became more agitated, defiant and resistive.  At this time, it was unknown if JB had any weapons on him as he had not yet been searched and did not answer the question about whether he had anything illegal on him.  **Ex. D**, 81:4-15. After about 30 plus seconds of a struggle on their feet, Chin performed a leg sweep, forcing JB to the ground so he could be controlled.  **Ex. C-1(b)**, 14:56:43.  Once on the ground, Chin was able to place one handcuff on JB's right wrist, but the officers could not overcome JB's resistance without additional support.  **Ex. C-1**, 14:57:08.  Chin then put out a "Code 3" call for emergency backup.  **Ex. C-1**, 14:56:53; **Ex. E**, 89:25-90:23.

As the struggle continued, Middleton attempted to retrieve his Taser, but was unable to due to his positioning as he held JB's uncuffed hand.  **Ex. C-1**, 14:57:55.  Eventually, JB rolled onto his side and Middleton took the opportunity to draw his Taser, yelling "Taser, Taser, Taser" while aiming towards JB's left hip area.  **Ex. C-1**, 14:58:10.  The Taser was deployed and both Taser probes (darts) contacted JB's left hip, but there was a very small spread between the probes, rendering it essentially ineffective as it did not lead to neuromuscular incapacitation, only potential pain compliance. *Id*.  Middleton attempted to use the Taser in the "drive stun" mode on JB's left shoulder (in an effort to complete the circuit), but this too was ineffective and did not get JB under control.  **Ex. C-1**, 14:58:19.  Middleton holstered his Taser and attempted to try and grab JB's left arm, which was now under JB's body, as JB had rolled onto his stomach with his left side pressed into the ground.  **Ex. C-1**, 14:58:38; **Ex. D**, 104:10-107:18.

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

### D.   Additional Officers and Supervisors Arrive to Assist in Getting JB in Custody

Ofc. Bennett arrived at the scene as Officers Chin and Middleton struggled to detain the large and aggressive JB.  **Ex. B**; **Ex. C-1**, 14:58:31; **Ex. F**, Depo. of Bennett, 27:1-29:4.  Bennett attempted to restrain JB's legs by placing them into a figure four lock to prevent him from continuing to kick and flail around.  **Ex. F**, 33:16-39:9.  Moments later, Ofc. Koumiss arrived on scene and also observed Middleton and Chin struggling on the ground with JB.  **Ex. B**; **Ex. C-1**, 14:58:46; **Ex. G**, Depo. of Koumiss, 19:20-22:18.   Koumiss saw that JB's right hand was handcuffed, but his left hand was being hidden by JB under JB's body.  **Ex. G**, 22:23-27:16. Koumiss heard numerous verbal commands being directed at JB to "stop resisting," but he failed to comply.  *Id*. at 23:17-19.  Koumiss knelt next to JB and used an un-expanded baton in an attempt to leverage JB's left arm out from under his body, but that was not successful.  **Ex. C-1**, 14:59:55, **Ex. G**, 25:11-15.

Ofc. Trovao arrived on scene about a minute after Bennett and Koumiss.  **Ex. B**; **Ex. C-1**, 14:58:54.  Trovao was told to help restrain JB's uncuffed left arm.  Trovao tried to grab JB's left hand, but he was unable to so he used his collapsible baton and jabbed JB twice, hoping JB would remove his arm from under his body, but JB remained non-compliant with his left arm remaining under his body.  **Ex. C-1**, 14:59:05, **Ex. H**, Depo. of Trovao, 72:5-73:14.  As JB continued to yell and actively resist the officers' commands, Trovao then attempted a "drive stun" with his Taser (not realizing that Middleton deployed his Taser before Trovao arrived).  **Ex. C-1**, 14:59:16; **Ex. H**, 53:2-55:2.  The drive stun appeared ineffective, leading Trovao to attempt another drive stun. **Ex. C-1**, 14:59:24; **Ex. H**, 70:11-13.  Trovao ceased the use of his Taser as soon as he realized another officer had previously deployed his Taser.

Shortly thereafter, Sergeants Billdt and Knight arrived on scene and observed the officers struggling with JB and trying to get JB's left arm out from under his body.  **Ex. B**; **Ex. C-1**, 14:59:07.  Billdt suggested the officers use their batons to "wedge" JB's arm out from under his body.  **Ex. I**, Depo. of Billdt, 82:23-83:15.  Knight observed JB's right hand in a position where he believed he could grab it and control it. **Ex. J**, Depo. of Knight, 60:4-15.  Knight grabbed JB's right

hand and put it into a momentary "rear wrist lock" in an effort to keep control of JB's hand. *Id.* Billdt and Knight then stepped back to supervise the scene. **Ex. I**, 70:19-71:2, 73:2-10, 74:5-17, 78:7-79:9, 86:8-88:7, 104:23-107:19, 138:14-141:1; **Ex. J**, 29:22-32:17, 45:5-46:18, 98:4-22.

JB then began scratching and biting Chin's hand and arm. **Ex. E**, 103:1-2.  After ordering JB to stop, Chin delivered two distraction blows to JB's lower back and shoulder area to stop the assault. **Ex. C-1**, 14:59:51; **Ex. E**, 102:19-103:25.  Koumiss and Trovao, using their batons as levers, attempted to "wedge" and remove JB's left arm from under his body. **Ex. C-1**, 21:59:55; **Ex. G**, 25:11-15, 26:1-2.  At one point, Trovao placed his foot on JB's back briefly to push him back onto his stomach when JB yelled and rolled onto his left side in his continued resistance, with his arm still under his body. **Ex. H**, 64:4-65:9.  Eventually officers were able to finally overpower JB, grab hold of JB's left arm and place him in numerous sets of handcuffs, approximately five minutes after officers initially attempted to place handcuffs on JB. **Ex. C-1**, 14:56:09-15:01:06.

After JB was finally placed in handcuffs, officers made the decision to place JB in a leg restraint (known as a Wrap device) due to his extreme resistance and aggression.  At that time, JB was clearly breathing and was yelling about "Mr. Trump" and making other bizarre statements as he continued resisting the officers' efforts to get him into the Wrap. **Ex. C-1**, 15:06:22-15:10:35. JB had limited blood around his mouth and had already bitten Chin so a "spit mask" was placed over JB's head by Travao to protect the nearby officers. **Ex. B**, **Ex. C-1**, 15:08:50.  During this time, JB was not in any apparent distress; he was breathing and continuing to yell strange comments over and over again while officers struggled to secure him in the Wrap. **Ex. C-1**, 15:10:35.  Due to JB's continued resistance and aggression, it took some time for officers to finally complete the Wrap restraint.  Even after the application of the Wrap, JB was clearly conscious and breathing as he was able to verbally respond to questions being asked by officers including his name and birthday as he started to calm down. **Ex. C-2**, 22:15:02.

### E.     Staged Medical Personnel Are Immediately Called Into the Scene

Livermore Pleasanton Fire Department ("LPFD") and Paramedics Plus personnel, staged nearby during the struggle to detain JB, were called on scene and given full access to evaluate and render aid to JB immediately after he was handcuffed and the scene was secured. **Ex. C-2**;

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

15:12:04- 22:12:54; **Ex. K,** Depo. of Smith, 17:19-25:21; **Ex. L**, Depo. of Diaz, 22:3-37:20; **Ex. M**, Depo. of Thomson, 15:9-20:14, 48:7-16. While JB was sitting up in the Wrap, a paramedic gave Decedent a sedative (via injection) of Versed due to his prior behavior/resistance. **Ex. C-2**, 15:19:06. At other times, fire and paramedic personnel can be seen looking at JB's eyes and checking his pulse, not finding any problems or concerns with JB's health in the Wrap. **Ex. C-2**, 15:18:59-15:19:47, 15:25:36-15:26:30; **Ex. M**, 24:13-25:6. Eventually, JB was lifted onto a gurney, his handcuffs were removed and soft restraints were applied. **Ex. C-2**, 15:20:54-15:22:30. At this time, it was confirmed by LPFD paramedics that JB was alive, breathing and did not appear to be in any medical distress. **Ex. C-2**, 15:25:36-15:26:30; **Ex. K**, 32:15-22, 38:2-44:24; **Ex. L**, 22:3-37:20; **Ex. M**, 27:2-28:9, 41:2-48:20

As LPFD and paramedics began loading JB into the ambulance, they removed the spit mask and discovered for the first time that JB was unresponsive and suffering from an apparent medical emergency. **Ex. K**, 45:2-46:1, 48:6-19; **Ex. L**, 43:10-44:15. Medical personnel requested that the top portion of the Wrap restraint be removed, so officers immediately complied as medical personnel administered CPR and other lifesaving efforts. **Ex. B**; **Ex. K**, 49:3-21. JB was transported to Stanford Valley Care hospital and despite all lifesaving efforts, JB died.

### F.   Coroner Determines JB Died of Acute Methamphetamine Intoxication

Dr. Ferenc conducted JB's autopsy on August 2, 2018 and prepared an autopsy report. **Ex. N**, Depo. of Ferenc, 13:17-20. JB was a large man as he was 5'9" tall and weighed 274 pounds. **Ex. N-1**, Autopsy Report. At autopsy, JB had some superficial injuries associated with the struggle and uses of force, including Taser barb related injuries. *Id.* However, he did not suffer any fractures, nor any significant face, head or neck injuries, nor any significant injuries to any of his organs. *Id;* **Ex. N**, 37:14-39:17. JB had other health problems noted such as an enlarged heart and an enlarged liver and spleen. **Ex. N-1**. Toxicology testing was performed, finding methamphetamine and amphetamine in JB's system (0.42 mg/L methamphetamine and 0.04 mg/L amphetamine) (but no alcohol or other drugs). **Ex. N**, 15:1-11, 93:2-96:25; **Ex. N-2**, Toxicology Report. Per the toxicology report, a methamphetamine level within 0.2-0.5 mg/L could be "potentially toxic." **Ex. N-2**. Ultimately, Dr. Ferenc found JB's cause of death to be "**Acute**

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

**Methamphetamine Toxicity.**" **Ex. N**, 14:1-19:2; **Ex. N-1**. Dr. Ferenc also found other conditions to be "co-factors" which included probable mechanical asphyxia while being placed in a restraint device by police, cardiac hypertrophy and morbid obesity, though they did not cause Decedent's death. **Ex. N**, 19:3-20:24, 39:18-41:25; **Ex. N-1**.

### G. PPD Has Relevant Use of Force Policies and Appropriate Training for Officers, Subsequent Investigation Uncovered No Violations

The PPD had various use of force related policies in effect at the time of JB's detainment that governed the types and extent of force allowed by their officers, a subsequent investigation by PPD found that all officers acted according to these policies. **Ex. O**, Depo. of Gora, 14:1-19:25, 49:12-50:21, 83:24-96:13, 101:12-102:21, 107:2-23, 115:9-117:20; **Ex. P**, Depo. of Spiller, 53:25-62:4, 73:15-78:24; **Ex. Q**, PPD Policies 300, 306, 308, and 309. Generally, these policies state that officers are permitted to use reasonable force that is necessary to effect an arrest, to protect others, or to protect themselves from bodily harm and the policies reiterate the *Graham* standards (see *Graham* standards below). *Id.* Further, all officers, including all Defendant officers, were up to date with all required trainings and all had extensive force related and related training. **Ex. R,** PPD Training Record Logs.

### III. LEGAL ARGUMENTS

#### A. Legal Standards

##### 1. Summary Judgment Standards

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. FRCP 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A "genuine" issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is "material" if it is relevant to an element of a claim or a defense, the existence of which may affect the outcome of the suit. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Disputes as to immaterial issues of fact do "not preclude summary judgment." *Lynn v. Sheet Metal Workers Int'l Ass'n,* 804 F.2d 1472, 1478

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

DEFENDANTS' MEMORANDUM OF POINTS
AND AUTHORITIES FOR MSJ - C19-04593 LB

(9th Cir. 1986).  Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact.  *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir. 2002).  The non-moving party must instead set forth "significant probative evidence tending to support the complaint."  *T.W. Elec.,* 809 F.2d at 630-631.

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325.  The moving party is not required to produce evidence showing the absence of a material fact on such issues, nor support its motion with evidence negating the non-moving party's claim.  *Id.; Bhan v. NME Hospitals, Inc.,* 929 F.2d 1404, 1409 (9th Cir. 1991).  If the moving party shows an absence of evidence to support its case, the burden shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."  *Bhan*, 929 F.2d at 1409.  More than the "mere existence of a scintilla of evidence in support of the plaintiff's position" is required; there must be "evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.

"The more implausible the claim or defense asserted by the non-moving party, the more persuasive its evidence must be to avoid summary judgment."  *Id*.  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact" precluding summary judgment.  *Addisu v. Fred Meyer Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  A complete failure of proof concerning an essential element of the non-moving party's case renders all other facts immaterial.  *Celotex*, 477 U.S. at 323.

### 2.    Qualified Immunity Standards

"Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (citing *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).  To be "clearly established" the law must be " 'sufficiently clear' that every 'reasonable official would understand that what he is doing' " is unlawful, beyond debate.  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *White v. Pauly*, 137 S. Ct. at 551.  An officer is entitled to qualified immunity

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

unless Plaintiffs can point to a "robust 'consensus of cases of persuasive authority,' " making it clear that the officer's use of force in the particular factual circumstances was improper. *al-Kidd*, 563 U.S. at 742. "If an official could reasonably have believed her actions were legal in light of clearly established law and the information she possessed at the time, she is protected by qualified immunity." *Franklin v. Fox*, 312 F.3d 423, 437 (9th Cir. 2002).

Qualified immunity is an extremely deferential standard that "gives ample room for mistaken judgments by protecting "all but the plainly incompetent or those who knowingly violate the law." *Mullenix*, 136 S. Ct. at 308 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In essence, qualified immunity gives government officials <u>breathing room</u> to make reasonable but mistaken judgments. *Messerschmidt v. Millender,* 132 S. Ct. 1235, 1244-1245 (2012). Qualified immunity encourages officials to exercise their discretion without the fear of liability when the state of the law is unclear or their actions are reasonable under the totality of the circumstances. *Carlo v. City of Chino*, 105 F.3d 493, 500 (9th Cir. 1997).

Qualified immunity also shields an officer from suit when he or she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he or she confronted. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). Qualified immunity is more than a mere defense to liability; it is "an entitlement not to stand trial or face other burdens of litigation," and "is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It should be noted that the "standards from *Garner* and *Graham* 'are cast at a high level of generality,' so they ordinarily do not clearly establish rights." *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 951 (9th Cir. 2017) (citing *Tennessee v. Garner,* 471 U.S. 1 (1985); *Graham v. Connor*, 490 U.S. 386 (1989)). Rather, it is the facts of particular cases that clearly establish what the law is. *Id.* (citing *White v. Pauly*, 137 S. Ct. at 552)*.* <u>Plaintiffs bear the burden of proving that the right allegedly violated was clearly established at the time of the alleged misconduct.</u> *M.H. v. Cty. of Alameda*, 62 F. Supp. 3d 1049, 1093-94 (N.D. Cal. 2014) (emphasis added). Overall, the officers are entitled to qualified immunity even if they acted arguably unconstitutionally, as long as a reasonable officer could have believed the conduct lawful. *Alexander v. Cty. of L.A.,* 64 F.3d 1315,

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

1322 (9th Cir. 1995).

**B.     Plaintiffs Cannot Demonstrate that Officers Violated JB' Fourth Amendment Rights During this Lawful Detention**

Plaintiffs allege that JB was unlawfully seized by the Defendant Officers.  The undisputed record shows that JB was acting bizarre, then refused to answer critical questions and stared blankly ahead.  It cannot be reasonably disputed that Ofc. Middleton and Ofc. Chin had the <u>lawful right to detain JB</u> for their investigation of events at Raley's and then the <u>lawful right to handcuff JB</u> for officer safety purposes before continuing their investigation. Thus, Defendants are entitled to summary judgment on this issue.

1.      Officers Had Reasonable Suspicion to Detain and Grounds to Handcuff JB

The police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity "may be afoot," even if the officer lacks probable cause.  *United States v. Sokolow*, 490 U.S. 1, 7 (1989), citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968).  Reasonable suspicion means the officer must be able to identify "specific facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."   *Terry*, 392 U.S. at 21; *see also United States v. Cortez*, 449 U.S. 411, 417 (1981) (holding that "the totality of the circumstances — the whole picture — must be taken into account" when determining if an officer had reasonable suspicion to perform an investigatory stop).  The reasonable suspicion standard "'is a less demanding standard than probable cause,' and merely requires 'a minimal level of objective justification.'"  *Gallegos v. City of Los Angeles*, 308 F.3d 987, 990 (9th Cir. 2002) (citing *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)).

During a *Terry* stop, police officers are entitled to conduct a limited investigation to determine if the person was involved in criminal activity and the officers may employ reasonable measures to protect themselves and others in potentially dangerous situations.  *See United States v. Hensley*, 469 U.S. 221, 229 (1985); *Florida v. Royer*, 460 U.S. 491, 498 (1983); *Terry*, 392 U.S. at 30; *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056-57 (9th Cir. 1995).  Handcuffing a suspect does not necessarily rise level of an unconstitutional arrest when it is in response to legitimate officer safety concerns.  *Stevens v. Rose*, 298 F.3d 880, 883-84 (9th Cir. 2002) (citing *United States*

1   *v. Miles*, 247 F.3d 1009, 1012 (9th Cir. 2001)).  "[H]andcuffing substantially aggravates the

2   intrusiveness of an otherwise routine investigatory detention is not part of a

3   typical *Terry* stop."  *United States v. Bautista*, 684 F.2d 1286, 1289 (9th Cir. 1982).  Nonetheless,

4   "police conducting on-the-scene investigations involving potentially dangerous suspects may take

5   precautionary measures if they are reasonably necessary."  *Id.*

6       The Ninth Circuit has held that "while there are no bright-line rules, . . . the use of especially

7   intrusive means of effecting a stop" is only allowed in "special circumstances, such as  . . . <u>where

8   the suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger

9   or flight</u>."  *Green v. City and County of San Francisco*, 751 F.3d 1039, 1047 (9th Cir.

10  2014) (citing *Washington v. Lambert*, 98 F.3d 1181, 1189 (9th Cir. 1996)) (emphasis added).

11  Further, in determining whether the use of handcuffs was reasonable, courts evaluate whether the

12  use of handcuffs was reasonable under all the totality of the circumstances and look to whether

13  officers reasonably believed an individual was likely to flee or presented a danger to the officers.

14  *Bautista*, 684 F.2d at 1289; *In re Antonio B.*, 166 Cal. App. 4th 435, 441, 82 Cal. Rptr. 3d 693

15  (2008).

16      Here, Chin and Middleton had reasonable suspicion to detain JB (and even arguably

17  probable cause for an arrest) due to JB's actions inside of Raley's and the fact that the store wanted

18  to press charges for the vandalism.  Further, JB's sudden refusal to answer questions pertaining to

19  whether or not he had anything illegal on him and then his bizarre staring behavior posed a credible

20  threat to officer safety and created a fear that JB may be armed or may attempt to flee or fight, thus

21  creating a need to place JB in handcuffs before safely continuing the investigation. Moreover, by

22  the time JB was finally in handcuffs, the involved officers had numerous grounds for probable

23  cause to seize JB. Thus, Plaintiffs cannot prevail on this claim and Defendants are entitled to

24  judgment as a matter of law as to this lawful seizure in handcuffs.

25          2.    The Officers are Entitled to Qualified Immunity

26      Even if mistaken as to the basis to detain JB and/or for the right to handcuff JB, individual

27  Defendants Middleton and Chin are entitled to qualified immunity as long as a reasonable officer

28  could have believed the conduct lawful.  *Alexander*, 64 F.3d at 1322.  It was clearly reasonable for

*McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP*
*ATTORNEYS AT LAW*
*3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523*
*TELEPHONE: (925) 939-5330*

the officers to believe they could detain JB based on the information provided by the Raley's employees about JB's vandalism and based on JB's sudden refusal to answer questions about whether or not he had anything "illegal" on him. Police officers who "reasonably but mistakenly conclude that probable cause is present" are entitled to immunity. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). There is no controlling case that would have alerted the officers that their conduct was unlawful. In fact, a reasonable officer could have understood binding Supreme Court and Ninth Circuit precedent to point in the other direction and actually authorized their conduct in attempting to detain JB and handcuff him to continue their investigation of what happened at the Raley's store. *Atwater v. City of Lago Vista,* 532 U.S. 318, 354 (2001); *United States v. Santana*, 427 U.S. 38, 43 (1976); *Edgerly v. City & Cty. of San Francisco*, 599 F.3d 946, 956 (9th Cir. 2010). Thus, these two Defendants are entitled to qualified immunity with respect to Plaintiffs' unlawful seizure claim as their actions were constitutional or protected by immunity.

### C.    Plaintiffs Cannot Demonstrate that Officers Violated the Fourth Amendment by Using Unreasonable Force Against JB To Counter His Violent Resistance

The evaluation of the Fourth Amendment claim of excessive force, the crux of this case, relates to whether the officers acted in an objectively reasonable manner in using force and/or whether the individual officers are entitled to qualified immunity for their uses of force to gain control and handcuff JB during the lawful detention. The excessive force and qualified immunity analysis is broken down chronologically by officers and their specific actions.

#### 1.    Plaintiffs Cannot Demonstrate Evidence that the Force Used by Officers was Objectively Unreasonable

The Fourth Amendment does not mandate that excessive force was used just because a confrontation came to a tragic end. *Gregory v. Maui*, 523 F. 3d 1103, 1107 (9th Cir. 2008). Instead, claims of excessive force are to be judged under the Fourth Amendment's "objective reasonableness" standard. *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004), citing *Graham v. Connor*, 490 U.S. 386, 388 (1989), the seminal Fourth Amendment use of force case. The authority to arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S at 396. Officers "are not required to use the least intrusive

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

degree of force possible," but must act within a reasonable range of conduct. *Id.* The key question is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Id.* at 397. "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' . . . violates the Fourth Amendment" as the "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-397.

In *Graham*, the Supreme Court adopted an objective reasonableness test that requires an analysis of "facts and circumstances of each particular case, including the (1) severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Id.* It should be highlighted that "the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (emphasis added). As aptly stated by the Eleventh Circuit, "from the viewpoint of an officer confronting a dangerous suspect, a potential arrestee who is neither physically subdued nor compliantly yielding remains capable of generating surprise, aggression, and death." *Menuel v. City of Atlanta*, 25 F.3d 990, 995 (11th Cir. 1994) (emphasis added). Further, where the undisputed evidence establishes that the force used was objectively reasonable, an officer is entitled to summary judgment. *Scott v. Harris*, 550 U.S. 372, 386 (2007).

Where numerous officers are involved at different times in the struggle, it should be emphasized that an officer is only liable for his own misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). The Ninth Circuit has rejected the "team effort" standard that allows a jury to consider defendants" conduct together; the proper measure is "to base each individual's liability on his own conduct." *Hopkins v. Bonvicino*, 573 F.3d 752, 769-70 (9th Cir. 2009). Here, each Defendant Officer dealt with JB's aggression and relentless physical resistance independently and at different times. Thus, on summary judgment and for qualified immunity, each officer should be judged individually based on their own personal involvement and their basis of knowledge as to when they were involved in the struggle and how they reacted to the dynamic situation.

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

a.  Officers Middleton and Chin's Limited Force Was Appropriate

The force used by Middleton and Chin in response to JB's escalating physical resistance was limited to intermediate force options. Middleton's force involved: (1) an ineffective Taser deployment (with a small probe spread); (2) attempting to grab and secure JB's wrists/arms; (3) assisting with placing handcuffs; and (4) assisting with securing JB in the Wrap restraint. Each use of force by Middleton was justified and in response to JB's escalating violence and continued resistance. The video evidence and matrixes (**Ex. C**) show that JB continued to resist, failed to heed commands to "stop resisting" and would not allow himself to be handcuffed. While this incident started as an investigation into JB's disruptive antics and vandalism inside Raley's, it escalated quickly to an aggressive resisting arrest, satisfying the first *Graham* factor. As to the second and most important factor, JB was clearly an immediate threat to officers due to fact that he was a very large and strong man, who had not been searched for weapons, continued to struggle, resist, and defy commands, satisfying the second *Graham* factor. Further, the third factor of *Graham* is also clearly met per the video evidence as JB obviously and aggressively resisted handcuffing and it took numerous officers great efforts to get him into custody.

Until JB could be handcuffed, he remained "capable of generating surprise, aggression, and death." *Menuel*, 25 F.3d at 995. The Supreme Court's definition of reasonableness is "comparatively generous to the police in cases where potential danger, emergency conditions or other exigent circumstances are present" and should "surround the police who make these on-the-spot choices in dangerous situations with a fairly wide zone of protection in close cases." *Roy v. Inhabitants of City of Lewiston*, 42 F.3d 691, 695 (1st Cir. 1994).

Similarly, the force used by Ofc. Chin was objectively reasonable as well. Chin's force included: (1) attempting to grab and secure JB's wrists/arms; (2) conducting a leg sweep; and (3) after being scratched and bit by JB, delivering compliance/distraction strikes to distract JB and respond to JB's assault of the officer. Like Middleton's force, Chin's force was used to end JB's resistance and get him handcuffed. In viewing this situation from the perspective of a reasonable officer, in the shoes of Officers Middleton and Chin, facing the potential threat posed by JB, the

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

use of force by the officers was objectively reasonable, very measured and used with restraint.

Furthermore, these officers are entitled to qualified immunity for their split-second decisions in the tense, dynamic and prolonged struggle initiated by JB. There is simply no case law that would have put any reasonable officer on notice that the use of these force options against a violently resistive and agitated suspect violated the Fourth Amendment. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). Thus, Officers Middleton and Chin are entitled to summary judgment and/or qualified immunity.

b.      <u>Officer Trovao's Limited Force was Lawful and Justified</u>

Ofc. Trovao used limited, reasonable force against JB, consisting of: (1) attempting to grab and secure JB's wrists and arms while JB vigorously resisted, (2) using his baton to jab JB twice to gain compliance and then to attempt to wedge JB's left arm from under his body; (3) an ineffective Taser deployment in the drive stun mode once or twice; (4) assisting with placing handcuffs; and (5) assisting with securing JB in the Wrap restraint. There was a clear legitimate law enforcement interest of gaining control of the resistive JB and to do so quickly. The record is undisputed that Trovao never stomped on, excessively hit, or applied inappropriate pressure on JB during the struggle. **Ex. H**. While he used his foot once on JB's back, it was only as a pushing leverage move to get JB back onto his stomach after he rolled over during the resistance. Using limited force to handcuff an arrestable subject cannot be excessive. *Graham*, 490 U.S. at 396; *Moore v. City of Berkeley*, U.S. Dist. LEXIS 142710 (N.D. Cal. 2016) (summary judgment granted to officers for force used in handcuffing a resisting suspect who was high on drugs); *Arpin v. Santa Clara Valley Transp. Agency,* 261 F. 3d 912, 922 (9th Cir. 2001) (holding that officers did not use excessive force in "using physical force to handcuff" an unarmed suspect who resisted by stiffening her arm).

Even if it can be argued that the limited force used during the struggle was not objectively reasonable, Trovao is entitled to qualified immunity as he made split-second decisions in the face of ongoing resistance during a prolonged struggle, a struggle that was active upon his arrival. Plaintiffs cannot point to any case law indicating qualified immunity is not appropriate for Trovao. Trovao was either objectively reasonable and/or he is entitled to qualified immunity.

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

**D.**     **Plaintiffs Cannot Demonstrate a Viable Supervisory Liability Claim against Sergeants Billdt and Knight**

"Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal*, 556 U.S. at 676.  Under 42 U.S.C. § 1983, a supervisor may be held liable "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011); *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).  The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury.  *Starr*, 652 F.3d at 1207-08.

Here, Plaintiffs allege that Sergeants Knight and Billdt arrived on scene and "failed to do anything to stop the excessive force of their subordinates."  ECF 36, ¶ 29.  First of all, the clear evidence shows that the Defendant Officers did not violate any of JB's constitutional rights, and as such, Sergeants Billdt and Knight cannot be held liable for conduct that is lawful and/or for conduct that is protected by qualified immunity.

If, however, Plaintiffs can demonstrate an arguable constitutional deprivation, the evidence does not establish that Sergeants Billdt and Knight were aware of any violations of JB's rights and intentionally refused to terminate such actions.  As the video evidence indicates, these supervisors were at the scene and monitoring the struggle, making sure their officers were safe, making sure JB was safely secured, and ensuring that medical personnel were timely called into the scene to evaluate JB.  Should there be any doubt about these supervisors' actions, they are entitled to qualified immunity as their actions did not violate clearly established law about the duties and actions of supervisors at the scene of a prolonged struggle involving a very large and resistive subject (on drugs) who was lawfully detained and subject to arrest.  Accordingly, these two Defendants are entitled to summary judgment as no violation can be shown and/or qualified immunity applies for their reasonable actions in this dynamic scene.

E.      **Plaintiffs Cannot Demonstrate a 14th Amendment Violation As There is No Evidence of Any Purpose to Harm JB Unrelated to Getting Him Into Custody and Under Control**

The Fourteenth Amendment guarantees a substantive due process right to familial relationships.  *Lee v. City of Los Angeles,* 250 F.3rd 668, 685 (9th Cir. 2001).  In order for Plaintiffs to prevail on their Fourteenth Amendment familial relationship claim, they must show the officers acted "with a purpose to harm" JB that was "unrelated to legitimate law enforcement objectives." *Johnson v. Bay Area Rapid Transit Dist.,* 724 F.3d 1159, 1168-69 (9th Cir. 2013) (citing *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008)).  Due to the prolonged physical struggle caused by JB's continued resistance, clearly the "purpose to harm" standard would control (as opposed to the deliberate indifference standard when there is time for deliberation).

Legitimate law enforcement objectives include, among others, arrest, self-protection and protection of the public.  *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 454 (9th Cir. 2013).  On the other hand, a police officer lacks such legitimate law enforcement objectives when the officer has ulterior motives for using force against the suspect such as to bully or get even with a suspect or uses force against a clearly harmless or subdued suspect. *Zion v. County of Orange*, 874 F.3d 1072, 1077 (9th Cir. 2017); *Gonzalez v City of Anaheim*, 747 F.3d 789, 793 (9th Cir. 2014); *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).

Here, as established above, officers had reasonable suspicion to detain and handcuff JB for their investigation.  Detaining a non-compliant, non-responsive suspect, who has not been searched for weapons, is clearly a legitimate law enforcement purpose.  At the time JB began violently resisting and struggling with Officers Middleton and Chin, he had not been searched, meaning it was clear if he was armed with any weapon.  At the time of the struggle, officers acted with the purpose to protect members of public (as aptly stated by the Raley's employee who expressed concern for the safety of anyone who came in contact with JB), and to protect themselves against JB's destructive behavior and unrelenting resistance.

Plaintiffs cannot demonstrate that any of the officers' or supervisors' actions lacked a legitimate law enforcement purpose as no officers or supervisors acted with personal animus towards JB, nor did any officers or supervisors use unnecessary force once JB was finally detained,

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

nor was JB "clearly harmless" or "subdued" throughout anytime in which force was being used. There is no evidence any of these officers or supervisors even knew JB prior to this contact. The clear and undisputed evidence demonstrates that officers used reasonable levels of force to achieve a legitimate law enforcement purpose, to get JB into lawful custody and thus, the Plaintiffs Fourteenth Amendment claim fails. Even if an arguable constitutional claim can be shown, which is unsupported, the officers and supervisors are still entitled to qualified immunity here as their actions did not violate any clearly established law.

### F.   Plaintiffs Cannot Demonstrate Defendants Denied JB Medical Care

The Fourth Amendment requires law enforcement officers to "provide objectively reasonable post-arrest care to an apprehended suspect." *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1099 (9th Cir. 2006). Although the Ninth Circuit has not expressly defined what constitutes objectively reasonable post-arrest care to a suspect, the Ninth Circuit has required that officers "seek necessary medical attention by promptly summoning help or taking the injured arrestee to the hospital." *Tatum*, 441 F.3d at 1099. In *Tatum*, the court held that "a police officer who promptly summons the necessary medical assistance has acted reasonably for purposes of the Fourth Amendment." *Tatum*, 441 F.3d at 1098-99 (citing *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1415 (9th Cir. 1986)). Here, officers requested medical personnel to arrive and stage near the scene <u>before JB was even placed in handcuffs</u>. Once JB was handcuffed, and officers were placing him in the Wrap device, and the scene was secured, officers promptly summoned medical personnel (including paramedics and fire personnel) to come on to the scene to evaluate JB. Those medical personnel arrived quickly and continued to evaluate JB.

The clear, undisputable evidence shows that even before officers were able to detain JB, LPFD and Paramedics Plus personnel were summoned to stage near the scene. **Ex. B**; **Ex. I**, 73:2-15. Once the scene was secured, it took LPFD personnel approximately ten seconds to leave their staging area, come on to the scene and visually evaluate JB. **Ex. K**, 20:1-5. Moments after that, Paramedics Plus arrived on the scene. **Ex. B**. It took Paramedics Plus only one minute to pull a gurney up next to JB, and less than two minutes to decide to give the breathing JB an injection of the sedative Versed to further calm him. **Ex. C-2**, 15:15:34-15:19:06. While this is not a complete

timeline of events, it highlights that just minutes elapsed between the time JB was detained to the time he received medical care.  Importantly, medical personnel were already staged near the incident scene during the arrest, and once called in, took under a minute to arrive and begin assessing JB's condition.  At that point, medical staff took over for the medical care of JB, including providing him an injection.

Further, the clear video evidence shows that once paramedics and LFPD arrived, they were in no way kept from observing and evaluating JB and then administering medical care to JB (sedative), meaning medical personnel were given every opportunity to perform their jobs.  **Ex. C-2**.  Clearly, officers acted in accordance with the holding of *Tatum* and thus reasonably under the Fourth and/or Fourteenth Amendments when they promptly summoned medical personnel to attend to JB.  Notably, police officers are not held to standards of medical personnel.  Should there be any doubt in the Court's mind as to whether or not a constitutional deprivation exists on this point, there is no clearly established law showing that these officers and supervisors failed to summon and/or provide the necessary medical care, entitling the defendant officers to qualified immunity for this case.  Thus, as a matter of law, Plaintiffs cannot prevail on this claim.

### G.   Plaintiffs Cannot Demonstrate a Viable *Monell* Claim Against the City of Pleasanton or Chief  Spiller

As a threshold matter, liability of a municipality is contingent on a violation of a constitutional right, meaning without an underlying constitutional violation, there can be no municipal liability.  *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994*); Long v. City and County of Honolulu*, 511 F.3d 901, 907 (9th Cir. 2007).  As discussed above, there is no basis upon which Plaintiffs can demonstrate a violation of the Fourth or Fourteenth Amendments by any officers or supervisory officers.  Thus, without an underlying violation, there can be no municipal liability.  *Scott*, 39 F.3d at 916.

Even if Plaintiffs manage to demonstrate an arguable constitutional claim, they do not have any evidence to support any *Monell* theory of liability.  To establish *Monell* liability, Plaintiffs must show (1) they possessed a constitutional right that they were deprived of; (2) "that the municipality had a policy"; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

right; and (4) that the policy is the moving force behind the constitutional violation. *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997); *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978). Here, Plaintiffs cannot prove these *Monell* claims against the City, nor Chief Spiller.

1.    Plaintiffs Cannot Show a Custom or Policy Led to Any Arguable
        Constitutional Violation of JB

In order for Plaintiffs to succeed on this *Monell* theory, they must demonstrate that the City of Pleasanton's customs or policies caused an alleged violation of JB's constitutional rights. *Monell*, 436 U.S. at 690-91. A custom is a widespread practice that, although not authorized by law or express city policy, it is so permanent and well-settled that it applies with the force of law. *Id.* A single incident of unconstitutional activity is not sufficient to impose liability under *Monell*. *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). A plaintiff "may attempt to prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992). To be sufficient to establish municipal liability under *Monell*, the challenged action must be the "standard operating procedure" of the municipality. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010).

Here, Plaintiffs only have conclusory allegations, but no evidence, that the City of Pleasanton has customs or policies that tolerate the use of excessive force, tolerate inadequate training and supervising, tolerate inadequate procedures for dealing with complaints of officer misconduct, and tolerate "employing and retaining police officers" with "dangerous propensities for abusing and/or neglecting their authority." ECF 36, ¶ 102. The City does not have a formal written policy supporting any of these allegations. Thus, Plaintiffs must show that the City has unconstitutional customs that led to any violation here. However, Plaintiffs also have no evidence to show the City maintained customs that led to any constitutional violation of JB's rights. *Tuttle*, 471 U.S. at 823-24. In fact, the evidence demonstrates that the City had lawful and adequate use of force policies that governed officers' force in the field. **Ex. Q**. Further, Ret. Chief Spiller and Sergeant Gora reiterated the investigation and review of this incident indicated that all officers and

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

supervisory officers acted within policy. **Ex. O**; **Ex. P**. While Plaintiffs may attempt to raise two prior shooting incidents to try to show a custom, such prior incidents are in no way similar at all to officers getting into a prolonged physical struggle with a 274 pound non-compliant individual during a lawful detention. No action or policy by the City can be shown to be the moving force behind any violation of JB's rights, so this claim fails.

2.    Plaintiffs Cannot Show a Failure to Train Led to Any Constitutional Violation

Plaintiffs also assert a *Monell* claim for alleged failure to train. ECF 36, ¶ 102 (b). Generally, inadequacy of police training may serve as the basis for § 1983 liability only where the "failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris,* 489 U.S. 378, 388 (1989). Assuming a plaintiff has shown that the training received by employees was inadequate, the question then becomes whether inadequate training can be justifiably called municipal policy. *Id.* at 389-90. Not only must Plaintiffs show the deprivation of a constitutional right and a training policy that amounted to deliberate indifference, but also that the constitutional injury would have been avoided had the City properly trained those officers. *Blankenhorn v. City of Orange,* 485 F.3d 463, 484 (9th Cir. 2007). "Evidence of the failure to train a single officer is insufficient to establish a municipality's deliberate policy" because it does not show that the municipality made a deliberate or conscious choice. *Id.* at 484-85. Thus, Plaintiffs must point to "a pattern of similar constitutional violations by untrained employees." *Board of the County Comm'rs v. Brown,* 520 U.S. 397, 409 (1997).

Here, PPD officers are trained on all of the appropriate legal standards needed to safely and effectively do their jobs within constitutional limits, as covered in the policies. **Ex. Q; Ex. R**. Plaintiffs cannot point to training deficiencies that would indicate a widespread pattern of a failure to train. The officers here were all experienced officers and their actions at the scene, as seen on the video evidence, complied with traditional law enforcement training. This claim fails.

3.    Plaintiffs' Ratification Theory Also Fails

Here, Plaintiffs assert a *Monell* claims on the theory that the City and Chief Spiller ratified the alleged unconstitutional detention and use of force of officers by endorsing their actions and

DEFENDANTS' MEMORANDUM OF POINTS
AND AUTHORITIES FOR MSJ - C19-04593 LB

failing to discipline them.  ECF 36, ¶ 102 (h).  Under a ratification theory, a plaintiff must show that "authorized policymakers approved a subordinate's decision and the basis for it."  *City of St. Louis v. Praprotnick,* 485 U.S. 112, 127 (1988).  Plaintiffs must show that the decision maker, here the Chief of Police, made "a deliberate choice from among various alternatives to follow a particular course of action." *Gillette v. Delmore,* 979 F.2d 1342, 1348 (9th Cir. 1992). A policymaker's knowledge of an unconstitutional act does not, by itself, constitute ratification. Instead, ratification requires the authorized policymaker to make a "conscious, affirmative choice." *Gillette*, 979 F.2d at 1347.  It should be noted that the failure of a police department to discipline in a specific instance is not an adequate basis for municipal liability. *Aleghretti v. City & County of San Francisco*, U.S. Dist. LEXIS at 30-31 (N.D. Cal. 2014); *Santiago v. Fenton*, 891 F.2d 373, 382 (1st Cir. 1989).  Accordingly, the fact that the City did not discipline the Officers for this incident does not establish that City policymakers "made a deliberate choice to endorse" an officer's actions.  *Gillette*, 979 F.2d at 1348.  "Finding that an officer acted within policy does not alone amount to *Monell* ratification."  *Weishaar v. Cnty. of Napa*, 2016 U.S. Dist. LEXIS 173833, at *37 (N.D. Cal. 2016).

Chief Spiller was not present during the struggle with JB and had no personal involvement in the incident.  Further, following the incident with JB, no policy violations were found by the involved officers.  Chief Spiller also did not know that officers were going to detain and struggle with JB prior to it occurring, nor was he involved in any way with the incident.  Simply because no officers were disciplined, nor any policy violations found, is insufficient for ratification.

## H.   Plaintiffs' Related State Law Claims also Fail as a Matter of Law

Here, Plaintiffs have not and cannot set forth evidence establishing that officers used unreasonable force while supervisory officers stood by and "did nothing" during the struggle with JB.  As such, Plaintiffs' state law claims for the Bane Act, negligence, and battery, fail.

When a plaintiff "asserts no California right different from the rights guaranteed under the Fourth Amendment, . . . the elements of the excessive force claim under § 52.1 are the same as under § 1983." *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013).  In addition, Bane Act claims (California Civil Code § 52.1) require an additional **intent** element.  *Reese v. Cty. of*

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

*Sacramento*, 888 F.3d 1030, 1044-45 (9th Cir. 2018) (Because the trial court's Bane Act instruction did not require inquiry into the officer's intent, it was error) (emphasis added).  In order to be liable for a Bane Act violation, the jury must find that the defendant(s) intended not only the force, but also the force's unreasonableness, meaning its character as more than necessary under the circumstances.  *Id*.  Here, Plaintiffs' Eighth Cause of Action for violation of California Civil Code § 52.1 "is premised entirely on the alleged violation of the Fourth Amendment." *Id;* ECF 36 ¶¶ 107-115.  Because Plaintiffs' Fourth Amendment claim fails, "so too does their § 52.1 claim." *Montez,* 2017 U.S. Dist. LEXIS at. 16.  Additionally, Plaintiffs have no evidence of any "intent" by any officer to use force in an intentionally unreasonable fashion.

In terms of Plaintiffs' battery claim "it is clear that a battery claim against a police officer requires that unreasonable force be established."  *Nelson v. City of Davis*, 709 F. Supp. 2d 978, 992 (E.D. Cal. 2010).  Because the undisputed facts in this case establish that the officers and supervisory officers acted reasonably, Plaintiffs cannot prove their state law battery claim.

Similarly, as for Plaintiffs' negligence claim**,** "[i]n order to prove facts sufficient to support a finding of negligence, a plaintiff must show that the defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 629, 160 (2013).  As "long as an officer's conduct falls within the range of conduct that is reasonable under the circumstances, there is no requirement that he or she choose the 'most reasonable' action or the conduct that is the least likely to cause harm and at the same time the most likely to result in the successful apprehension of a violent suspect, in order to avoid liability for negligence."  *Brown v. Ransweiler,* 171 Cal. App. 4th 516, 537-538 (2009).  As established above, the officers' conduct was reasonable "under the circumstances" the officers faced. Similarly, the supervisory officer, Sergeants Billdt and Knight, supervised their officers and the scene in a reasonable manner that in no way fell below the standard of care required by law. Thus, Plaintiffs cannot demonstrate any of their state law claims so Defendants, both officers and supervisory officers, are entitled to judgment as a matter of law as to that claim as well, along with the City of Pleasanton.

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

IV. <u>CONCLUSION</u>

Based on the foregoing, Defendants are entitled to judgment as a matter of law as to all claims in this action and/or partial summary judgment.

Dated:  March 4, 2021               McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP

By:   /s/ Blechman, Noah G.

Noah G. Blechman
Attorneys for Defendants
CITY OF PLEASANTON, et al.

DEFENDANTS' MEMORANDUM OF POINTS
AND AUTHORITIES FOR MSJ - C19-04593 LB

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330