EXHIBIT A

```
 1                  UNITED STATES DISTRICT COURT
 2                 NORTHERN DISTRICT OF CALIFORNIA
                            ---o0o---
 3   JOHN BAUER, an individual
 4   and as Successor-in-Interest of
 5   Jacob Bauer, deceased; ROSE BAUER,
 6   an individual and as
 7   Successor-in-Interest of
 8   Jacob Bauer, deceased;
 9        Plaintiffs,
10   vs.                                      No. C19-04593LB
11   CITY OF PLEASANTON; PLEASANTON
12   POLICE DEPARTMENT; DAVE SPILLER;
13   and DOES 1 to 90, inclusive;
14        Defendants.
     _____/
15
16
17          VIDEOTAPED DEPOSITION OF JOHN D. BAUER
18                       October 28, 2020
19
20
21       Taken before Catherine M. Meyer, RPR, CSR
22                      CSR No. 11596
23
24
25
                                                        Page 1
```

```
 1                        I N D E X
 2                                                        PAGE
 3   EXAMINATION BY MR. BLECHMAN                            5
 4
 5
 6
 7
 8
 9                       E X H I B I T S
10   DEFENDANTS'                                          PAGE
11
12   Exhibit 25    Plaintiffs' Responses to               157
13                 Defendant City of Pleasanton's
14                 Special Interrogatories, Set One
15   Exhibit 26    Alameda County Behavioral              189
16                 Health Care Services form,
17                 Bates stamp Nos. PLFS2-PLFS4
18   Exhibit 27    Alameda County Behavioral              189
19                 Health Care Services form,
20                 Bates stamp Nos. PLFS64-PLFS66
21   Exhibit 28    Investigative report, Bates            203
22                 stamp Nos. PLFS157-173
23
24
25
                                                        Page 2
```

```
 1            VIDEOTAPED DEPOSITION OF JOHN D. BAUER
 2
 3         BE IT REMEMBERED, that pursuant to Notice, and on
 4    the 28th day of October 2020, commencing at the hour of
 5    10:06 a.m., in the Law Offices of Gwilliam, Ivary,
 6    Chiosso, Cavalli & Brewer, 1999 Harrison Street
 7    Suite 1600, Oakland, California, before me, Catherine M.
 8    Meyer, a Certified Shorthand Reporter, personally
 9    appeared JOHN D. BAUER, produced as a witness in said
10    action, and being by me first duly sworn, was thereupon
11    examined as a witness in said cause.
12
13                         ---o0o---
14    APPEARANCES:
15    For the Plaintiffs:
16                 J. GARY GWILLIAM, ESQ.
                   Gwilliam, Ivary, Chiosso, Cavalli & Brewer
17                 1999 Harrison Street, Suite 1600
                   Oakland, California 94612
18                 (510) 832-5411
                   ggwilliam@giccb.com
19
20    For the Defendants:
                   NOAH G. BLECHMAN, ESQ.
21                 McNamara Law Firm
                   3480 Buskirk Avenue, Suite 250
22                 Pleasant Hill, California 94523
                   (925) 939-5330
23                 noah.blechman@mcnamaralaw.com
24    Also Present:
25                 Lynn Mari, videographer.
```

Page 3

| | | |
|---|---|---|
| 1 | THE VIDEOGRAPHER:  Good morning.  We're on | |
| 2 | the record.  This is the video recorded deposition | |
| 3 | of John Bauer in the matter of John Bauer, et al., | |
| 4 | vs. City of Pleasanton, et al., case number | |
| 5 | C19-04593LB filed in the United States District | 10:05 |
| 6 | Court, Northern District of California taken on | |
| 7 | behalf of defendants.  This deposition is taking | |
| 8 | place at 1999 Harrison Street, Suite 1600, Oakland, | |
| 9 | California 94612 on October 28th, 2020, at | |
| 10 | 10:06 a.m. | 10:06 |
| 11 | My name is Lynn Mari, CLVS.  I'm the | |
| 12 | videographer with Veritext Legal Solutions.  Video | |
| 13 | and audio recording will be taking place unless all | |
| 14 | counsel have agreed to go off the record. | |
| 15 | Would all present please introduce | 10:06 |
| 16 | themselves beginning with the witness. | |
| 17 | THE WITNESS:  My name is John Bauer. | |
| 18 | MR. GWILLIAM:  I'm Gary Gwilliam | |
| 19 | representing Mr. Bauer and his co-plaintiff Rose | |
| 20 | Bauer. | 10:06 |
| 21 | MR. BLECHMAN:  And Noah Blechman.  I | |
| 22 | represent the defendants in this case. | |
| 23 | THE VIDEOGRAPHER:  The certified court | |
| 24 | reporter is Catherine Meyer.  Would you please | |
| 25 | swear in the witness. | 10:06 |

Page 4

```
 1                    JOHN D. BAUER,
 2                   sworn as a witness,
 3                  testified as follows:
 4    EXAMINATION BY MR. BLECHMAN:
 5        Q.  Good morning, Mr. Bauer.  Could you please       10:06
 6    state and spell your full name for the record.
 7        A.  My name is John Donald Bauer, J-O-H-N,
 8    D-O-N-A-L-D, Bauer, B-A-U-E-R.
 9        Q.  And what's your date of birth?
10        A.  March 17th, 1959.                                10:07
11        Q.  Okay.  Mr. Bauer, again, Noah Blechman.  I
12    represent the defendants in this case, and we met
13    briefly off the record this morning.  This is a
14    deposition.  Have you ever had your deposition
15    taken before?                                            10:07
16        A.  Yes, I have.
17        Q.  How many times?
18        A.  Once.
19        Q.  And when was that approximately?
20        A.  2004.                                            10:07
21        Q.  And what did that relate to?
22        A.  It related to a commission dispute with my
23    employer, former employer at that time.
24        Q.  You said commission dispute?
25        A.  Yes.                                             10:07
```

Page 5

```
1    vehicles.
2        Q.  Okay.  Now, my notes indicate at some
3    point after that -- shortly after that accident
4    issue with the Audi you came to the police
5    department and spoke to Officer Mirazzo (phonetic)?    11:08
6        A.  What's his first name?
7        Q.  Mike Mirazzo.
8        A.  I spoke to an officer whose first name I
9    can confirm is Mike.  I don't recollect or I don't
10   even know if he introduced his last name.  But yes,    11:09
11   I spoke to an Officer Mike.
12       Q.  And that was -- you actually went back
13   into the police department, sat in a room and
14   talked to him for a period of time, right?
15       A.  Yes.                                            11:09
16       Q.  What was the purpose of that conversation?
17       A.  The purpose of that conversation was to
18   evaluate anything that the police could do to get
19   help for Jacob.
20       Q.  And why did -- in your mind why did Jacob       11:09
21   need help?
22       A.  Jacob was seeing things that weren't
23   there.  He was delusional.  He was paranoid.  Yeah,
24   that's it.  He needed help.
25       Q.  Prior to -- so my notes indicate that I         11:10
```

1  believe that time you went to the police department
2  and sat down with this Officer Mike was on
3  June 29th of 2018.  Do you have any reason to doubt
4  that that's the accurate date?
5      A.  I -- I cannot remember the specific date.        11:10
6  You know, I would have to go back and -- yeah, I
7  would have to go back.  And, I mean, if you have
8  June 29th, I would have no reason to doubt that,
9  but I just don't remember it being that close to
10 the car accident.                                         11:11
11     Q.  I believe in those conversations with this
12 officer you stated to him that the Pleasanton
13 police came to your door last night around 2:30
14 regarding the accident in San Francisco.  So
15 presumably that would have been the daytime of, you       11:11
16 know, the day of when the police came to your house
17 to see if Jacob was around and investigate.  Is
18 that refreshing your memory at all about the timing
19 of these things?
20     A.  No, because, you know, my main goal of            11:11
21 going in there was to see whatever -- any help that
22 the Pleasanton Police Department or any law
23 enforcement could give to Jacob.
24     Q.  He had -- had Jacob been having problems
25 for a period of time leading up to this                   11:12

```
 1      conversation with that officer?
 2          A.  Could you please define problems?
 3              MR. GWILLIAM:  I'll object as "problems"
 4      as being vague.
 5              MR. BLECHMAN:  Agreed.                           11:12
 6      BY MR. BLECHMAN:
 7          Q.  I'm talking about in terms of him seeing
 8      things, acting delusional, paranoid, you know,
 9      having any sort of mental health issues.
10          A.  The answer is yes.                               11:12
11          Q.  And when did that -- when did you start to
12      notice that he was having those problems?
13          A.  I would say we noticed that they were
14      problems in -- I would say just after he was let go
15      from Workday.                                            11:13
16          Q.  Okay.  And from records that I got in this
17      case verified by your wife, there looks to be a
18      date of -- he worked at Workday from approximately
19      2013 to 2016.  So are we talking about
20      approximately 2016 that you're noticing these           11:13
21      things?
22          A.  Yes, based on the dates you just gave me,
23      yes.
24          Q.  Okay.  And -- okay.  What kind of problems
25      did you notice in 2016 when he stopped working for      11:13
```

Page 52

```
1    term means in the context of that statute?
2        A.  No.
3        Q.  Another -- I listened to your interviews
4    with -- well, when you came to the police
5    department, you sat down with Officer Mike Mirazzo,        13:40
6    there was body camera footage of that so we do have
7    some of the audio of that.  Are you aware of that?
8        A.  Yes, I'm aware that you -- that there is.
9    I wasn't aware of it at the time.  But since this
10   lawsuit I am aware of it.                                   13:40
11       Q.  Have you seen any of that?
12       A.  No, I have not.
13       Q.  Have you reviewed any body camera footage
14   of any contacts that you had with the Pleasanton
15   Police Department prior to the incident?                    13:41
16       A.  No.
17       Q.  Okay.  Well, I reviewed that this morning.
18   And at some point in there you were talking
19   about -- and again, I believe the date, because it
20   says it on the body camera footage, was June 29th           13:41
21   of 2018 -- you told Officer Mirazzo that Jacob was,
22   quote, totally disconnected from reality, end
23   quote.  Is that how you felt Jacob was at that
24   time?
25       A.  Yes.                                                13:41
```

Page 115

1  REPORTER'S CERTIFICATE

2

3

4        I, CATHERINE M. MEYER, a Shorthand Reporter,
5   State of California, do hereby certify:
6        That JOHN BAUER, in the foregoing deposition
7   named, was present and by me sworn as a witness in the
8   above-entitled action at the time and place therein
9   specified;
10       That said deposition was taken before me at said
11  time and place, and was taken down in shorthand by me, a
12  Certified Shorthand Reporter of the State of California,
13  and was thereafter transcribed into typewriting, and
14  that the foregoing transcript constitutes a full, true
15  and correct report of said deposition and of the
16  proceedings that took place;
17        That before completion of the proceedings,
18  review of the transcript [ X ] was [ ^ ] was not
19  requested.
20        IN WITNESS WHEREOF, I have hereunder subscribed
21  my hand this 2nd day of November 2020.

22

23        *[signature: Cathrn M. Meyer]*

24        CATHERINE M. MEYER, CSR NO. 11596
25        State of California

Page 225