EXHIBIT B

```
 1                 UNITED STATES DISTRICT COURT
 2                NORTHERN DISTRICT OF CALIFORNIA
 3                          ---o0o---
 4    JOHN BAUER, an individual
      and as Successor-in-Interest of
 5    Jacob Bauer, deceased; ROSE BAUER,
      an individual and as
 6    Successor-in-Interest of
      Jacob Bauer, deceased;
 7
           Plaintiffs,
 8
      vs.                                        No. C19-04593LB
 9
      CITY OF PLEASANTON; PLEASANTON
10    POLICE DEPARTMENT; DAVE SPILLER;
      and DOES 1 to 90, inclusive;
11
           Defendants.
12    _____/
13
14            via Remote Counsel virtual meeting
15            VIDEOTAPED DEPOSITION OF ROSE BAUER
16
17
18       Taken before Catherine M. Meyer, RPR, CSR
19                    CSR No. 11596
20                  January 22, 2021
21
22
23
24
25

                                                         Page 1
```

```
 1                        I N D E X

 2                                                      PAGE

 3   EXAMINATION BY MR. BLECHMAN                          5

 4

 5

 6

 7

 8

 9                      E X H I B I T S

10                       (None marked.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              VIDEOTAPED DEPOSITION OF ROSE BAUER
 2
 3          BE IT REMEMBERED, that pursuant to Notice, and on
 4     the 22nd day of January 2021, commencing at the hour of
 5     12:15 p.m., EST, via Remote Counsel virtual meeting,
 6     before me, Catherine M. Meyer, a Certified Shorthand
 7     Reporter, appeared ROSE BAUER, produced as a witness in
 8     said action, and being by me first duly sworn, was
 9     thereupon examined as a witness in said cause.
10
11                           ---o0o---
12     APPEARANCES:
13     For the Plaintiffs:
14                  JAYME WALKER, ESQ.
                    Gwilliam, Ivary, Chiosso, Cavalli & Brewer
15                  1999 Harrison Street, Suite 1600
                    Oakland, California 94612
16                  (510) 832-5411
                    jwalker@giccb.com
17
       For the Defendants:
18
                    NOAH G. BLECHMAN, ESQ.
19                  McNamara Law Firm
                    3480 Buskirk Avenue, Suite 250
20                  Pleasant Hill, California 94523
                    (925) 939-5330
21                  noah.blechman@mcnamaralaw.com
22     Also Present:
23                  John Burgess, videographer.
24
25
```

Page 3

| | | |
|---|---|---|
| 1 | THE VIDEOGRAPHER:  Okay.  Good morning. | |
| 2 | We are on the record.  The time is 12:15 p.m. | |
| 3 | eastern time.  Today is January 22nd, 2021.  My | |
| 4 | name is John Burgess.  I'm a video technician with | |
| 5 | Veritext Legal Solutions located in Los Angeles, | 12:15 |
| 6 | California.  We are recording these proceedings | |
| 7 | over videoconference technology due to COVID-19. | |
| 8 | This is the video deposition of Rose Bauer in the | |
| 9 | action entitled John Bauer, et al., vs. City of | |
| 10 | Pleasanton, et al.  This deposition is being taken | 12:16 |
| 11 | on behalf of defendant.  The case number is | |
| 12 | C19-04593LB.  Now, may I please have introductions | |
| 13 | for the record beginning with the noticing | |
| 14 | attorney. | |
| 15 | MR. BLECHMAN:  Noah Blechman on behalf of | 12:16 |
| 16 | the defendants. | |
| 17 | MS. WALKER:  Jayme Walker for the | |
| 18 | plaintiffs. | |
| 19 | THE VIDEOGRAPHER:  Thank you. | |
| 20 | Ms. Reporter, will you please administer | 12:16 |
| 21 | the oath. | |
| 22 | ROSE BAUER, | |
| 23 | sworn as a witness, | |
| 24 | testified as follows: | |
| 25 | ///                                            /// | |

Page 4

```
 1   ever thought of something like that.  I thought
 2   Jacob was bipolar.  So I was just --
 3       Q.  Go ahead.
 4       A.  -- stunned.
 5       Q.  Had any medical provider or psychiatric      13:05
 6   provider ever diagnosed him at any time with
 7   bipolar?
 8       A.  Not to my knowledge.
 9       Q.  What led you to believe that your son
10   could be bipolar?                                     13:06
11       A.  He always had a hard time with people,
12   always had a little bit of depression, was always
13   suspicious and would get really uncomfortable in --
14   in social positions.  And there was a movie when he
15   was maybe, I don't know, 19, 20 years old.  It was    13:06
16   called A Beautiful Mind.  And we watched that movie
17   together.  And at the end of the movie, he said
18   that's how my mind works.  And at the time I didn't
19   think anything of it, but, you know, it's -- it's
20   something that stuck with me.                         13:07
21       Q.  Getting back to Dr. Gonda's letter, and I
22   could show you a copy if you want, but it was your
23   testimony a few minutes ago that the real crux of
24   it had to do with what he believed to be Jacob
25   abusing some amphetamine-related substance,           13:07
```

Veritext Legal Solutions
866 299-5127

```
 1   impaired but functioning.
 2        Q.  He said that you were at the interview
 3   with the psychologist who said Jacob needs help and
 4   there was some sort of bipolar slash psychosis type
 5   of illness that he had.  Is that accurate at all?     13:38
 6        A.  No.  I -- John and I thought it was
 7   bipolar.  On our second meeting that I met with
 8   Dr. Gonda, he told me schizophrenia.
 9        Q.  Okay.  Your husband mentioned to this
10   officer in June of 2018 that Jacob had just lost      13:38
11   his job.  Is that accurate?
12        A.  Yes.
13        Q.  And was this -- do you remember his
14   company that he lost his job in relation to that
15   time?                                                 13:38
16        A.  I'm sorry.  Can you repeat the question?
17        Q.  Sure.  Let me see.  Was that when he was
18   working for Dropbox?
19        A.  He -- the company -- he actually worked
20   for a company called Astreya which was hired by       13:39
21   Dropbox.  So he was at the Dropbox facility.
22        Q.  And -- and he had lost his job working for
23   Astreya or Dropbox; is that correct?
24        A.  Correct.
25        Q.  And what was your understanding as to why    13:39
```

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | Q.  Okay.  He mentions also that -- to this | |
| 2 | officer, and I know these are not your words, but | |
| 3 | you guys were married and Jacob was your son.  He | |
| 4 | says that "We've come to the conclusion that if he | |
| 5 | doesn't get help or treatment," quote, "he may need | 13:43 |
| 6 | to be permanently institutionalized for his own | |
| 7 | protection as well as others."  Did you form that | |
| 8 | same conclusion around that time frame that Jacob | |
| 9 | was a potential danger to himself or to others | |
| 10 | because of what he was dealing with? | 13:43 |
| 11 | A.  No, not really.  I -- well, I can only | |
| 12 | speculate that John was thinking is Jacob thought | |
| 13 | he was being followed by police officers, and John | |
| 14 | had a fear of him being killed by the Pleasanton | |
| 15 | police and he wanted to keep Jacob safe. | 13:44 |
| 16 | Q.  It's true that Jacob was paranoid of the | |
| 17 | police; is that correct? | |
| 18 | A.  Yes. | |
| 19 | Q.  John tells this officer that -- something | |
| 20 | to the effect of if you guys were to be involved, | 13:44 |
| 21 | you would have to take him out forcefully.  There's | |
| 22 | no doubt about that.  He will not go easily.  And | |
| 23 | then he goes on to say "If you guys go in uniform, | |
| 24 | Jacob is going to come unglued."  I mean, do you | |
| 25 | agree with those comments that if the police were | 13:45 |

```
 1     involved in having to make contact with Jacob,
 2     whether it's for a 5150 evaluation or some other
 3     issue, that Jacob could come unglued?
 4          A.   I believe John's statements were because
 5     he knew the Pleasanton police history and how they      13:45
 6     deal with people, people with mental illness, and
 7     how they just -- and John was afraid for Jacob and
 8     that he wouldn't be able to communicate.
 9          Q.   Well, Jacob did have contact with some
10     Pleasanton Police Department officers a few days        13:46
11     prior to the incident, correct?
12          A.   Yes.
13          Q.   That was when he punched a hole in the
14     wall at your house and --
15          A.   It was a hollow door that he punched.         13:46
16          Q.   Okay.  He punched a hollow door and then
17     left the house and you guys called the police,
18     correct?
19          A.   John called the police.  I wasn't sure
20     what was going on at the time.  John was egging him     13:46
21     on in an argument and he said some, you know,
22     things that Jacob got very hurt by, very upset by,
23     and he punched the door and walked into his room
24     and John called the police thinking he could get
25     him 5150'd.                                             13:47
```

```
1    BY MR. BLECHMAN:
2         Q.   Is that your understanding?
3         A.   I don't know what it was.
4         Q.   They were looking -- go ahead.
5         A.   They were looking for Jacob.  He wasn't        15:16
6    there.
7         Q.   And this was sometime around 2:00 in the
8    morning approximately?
9         A.   Could have been.  It was in the middle of
10   the night.  I don't know exactly what time.              15:17
11        Q.   Okay.  Do you yourself fault the
12   Pleasanton Police Department for -- for not doing
13   enough to try to get Jacob help?
14        A.   What I fault them for is not doing enough
15   to try and get him help, but what I fault them for       15:17
16   is what they did when they killed him.  That's what
17   I fault them for.  Once again, they're overzealous.
18   You know, the Pleasanton police, you know, they --
19   they have a history.
20        Q.   What is your understanding about the           15:18
21   history that you're referencing?
22        A.   John Deming, Jr.; Shannon Estill, you
23   know, the way they treat homeless people in
24   Pleasanton, Chief Spiller.  You know, it's our job
25   to arrest people not to serve and protect, that's        15:18
```

Page 97

```
 1    their attitude.
 2         Q.   Deming and the Estill matters you're
 3    talking about, those were both shootings, correct?
 4         A.   Yes.
 5         Q.   And clearly your son Jacob was not shot by    15:18
 6    the police, correct?
 7         A.   Correct.   All three deaths were
 8    unnecessary.
 9         Q.   The information that you know from the
10    Deming incident, is that something you know through    15:19
11    counsel or is that something you know through some
12    other source?
13         A.   Other source.
14         Q.   Were you aware of that incident when it
15    occurred?                                              15:19
16         A.   Afterwards, yes.   It was talked about in
17    Pleasanton and in the newspapers.
18         Q.   And it's your belief that Mr. Deming
19    should not have been shot, correct?
20         A.   It is my belief that the police did not      15:19
21    use their training or good judgment or time and
22    distance and things got out of hand again.
23         Q.   Did you see any of the body worn camera or
24    surveillance video of the Deming incident?
25         A.   I did not.                                   15:20
```

Page 98

1        REPORTER'S CERTIFICATE

2

3

4        I, CATHERINE M. MEYER, a Shorthand Reporter,

5   State of California, do hereby certify:

6        That ROSE BAUER, in the foregoing deposition

7   named, was present via Remote Counsel virtual meeting

8   and by me sworn as a witness in the above-entitled

9   action at the time and place therein specified;

10       That said deposition was taken before me at said

11  time and place, and was taken down in shorthand by me, a

12  Certified Shorthand Reporter of the State of California,

13  and was thereafter transcribed into typewriting, and

14  that the foregoing transcript constitutes a full, true

15  and correct report of said deposition and of the

16  proceedings that took place;

17       That before completion of the proceedings,

18  review of the transcript [ ] was [ X ] was not

19  requested.

20       IN WITNESS WHEREOF, I have hereunder subscribed

21  my hand this 11th day of February 2021.

22

23

24

            CATHERINE M. MEYER, CSR NO. 11596

25          State of California

Page 135