EXHIBIT I

```
 1              UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3                 San Francisco Division
 4
 5   JOHN BAUER, an individual and
 6   as Successor in Interest of
 7   Jacob Bauer, deceased; ROSE
     BAUER, an individual and as
 8   Successor in Interest of Jacob
 9   Bauer, deceased,
10                     Plaintiffs,
         vs.                        No. 3:19-cv-04593-LB
11   CITY OF PLEASANTON; BRADLEE
12   MIDDLETON; JONATHAN CHIN;
13   RICHARD TROVAO; STEVEN BENNETT;
14   ALEX KOUMISS; JASON KNIGHT;
15   MARTY BILLDT; DAVID SPILLER;
16   and DOES 1 to 50, inclusive,
17                     Defendants.
     _____/
18              DEPOSITION OF RICHARD TROVAO
19                  Oakland, California
20               Thursday, October 8, 2020
21   Reported by:
22   Natalie Y. Botelho, CSR No. 9897
23   Job No. 4262017
     Confidential portions:
24   (Page 22, Line 13 - Page 24, Line 20)
25   (Pages 100, Line 18 - Page 103, Line 4)
```

                                          Page 1

```
 1    APPEARANCES:

 2

 3    For Plaintiffs:

 4            GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER

 5            BY:  J. GARY GWILLIAM, ESQ.

 6            BY:  JAYME L. WALKER, ESQ.

 7            1999 Harrison Street, Suite 1600

 8            Oakland, CA  94612

 9            (510)832-5411

10            ggwilliam@giccb.com

11            jwalker@giccb.com

12

13    For Defendants:

14            McNAMARA, NEY, BEATTY, SLATTERY, BORGES &

15            AMBACHER, LLP

16            BY:  NOAH BLECHMAN, ESQ.

17            3480 Buskirk Avenue, Suite 250

18            Pleasant Hill, CA  94523

19            (925)939-5330

20            noah.blechman@mcnamaralaw.com

21

22    ALSO PRESENT:

23            BRITTANY SMITH, law clerk

24            LINDA LIM, paralegal

25            TED HOPPE, Videographer
```

Page 3

```
 1                          INDEX
 2
 3    WITNESS                                      PAGE
 4    Richard Trovao
 5    EXAMINATION
 6    By Mr. Gwilliam                                 7
 7
 8                       ---oOo---
 9
10                  E X H I B I T S
11    NUMBER              DESCRIPTION             PAGE
12
      Exhibit 11-A   A blow-up version of one page    115
13                   of Exhibit 11 entitled "Smart
                     Use Considerations, Hand out
14                   CEW Study Aid"
15    Exhibit 20     A document entitled "Interview     6
16                   with Ofc. Richard Trovao"
17    Exhibit 21     Clip of video PPD 368           122
18    Exhibit 22     Clip of video PPD 378           122
      Exhibit 23     (designated "Confidential")     100
19                   A summary of the second
20                   interview of Officer Trovao
      Exhibit 24     (designated "Confidential")     103
21                   A report of Taser Protect
                     Life, Bates PPD001398 through
22                   PPD001416
23
24                       ---oOo---
25
```

Page 4

1          REFERENCE TO PREVIOUSLY MARKED EXHIBITS

2     NUMBER                    DESCRIPTION                PAGE

3

4     Exhibit 11     A presentation document         114

5                    entitled "Taser CEW Annual

6                    Conducted Energy Weapon (CEW)

7                    User Update," Version 21 -

8                    Effective January 14, 2019

9     Exhibit 12     Pleasanton Police Department,    38

10                   Pleasanton PD Policy Manual,

11                   Use of Force, Bates PPD000440

12                   through PPD000464

13    Exhibit 16     Video of Sergeant Billdt         57

14    Exhibit 19     A clip of video PPD 273          66

15

16

17                        ---oOo---

18

19

20

21

22

23

24

25

                                              Page  5

```
1        Oakland, California, Thursday, October 8, 2020

2                        12:57 p.m.

3

4                        PROCEEDINGS

5            (Whereupon, prior to the commencement of       12:34:15

6            the deposition, Exhibit 20 was marked for      12:34:15

7            identification.)                               12:34:15

8            THE VIDEOGRAPHER:  Very good.  Video is        12:57:41

9    rolling, so let's begin.                               12:57:42

10           Good afternoon.  We're going on the            12:57:44

11   record.  The time now is 12:57 on October 8th, 2020.   12:57:46

12   This is media unit 1 in the video-recorded             12:57:52

13   deposition of Richard Trovao in the matter of Bauer    12:57:55

14   versus City of Pleasanton, et al., filed in the        12:58:01

15   United States District Court, Northern District of     12:58:04

16   California, San Francisco Division, Case               12:58:07

17   No. 3:19-CV-04593-LB.  This video deposition is        12:58:10

18   being held at 1999 Harrison Street in Oakland,         12:58:18

19   California.                                            12:58:21

20           My name is Ted Hoppe, from Veritext.  I'm      12:58:23

21   the videographer.  The court reporter today is         12:58:26

22   Natalie Botelho, also from Veritext.                   12:58:28

23           Counsel, could you please voice identify       12:58:32

24   yourselves and state whom you represent.               12:58:33

25           MR. GWILLIAM:  Yes.  I'm Gary Gwilliam,        12:58:35
```

Page 6

| | | |
|---|---|---|
| 1 | representing the plaintiffs.  With me is Brittany | 12:58:37 |
| 2 | Smith.  And my partner, Jayme Walker, and my | 12:58:39 |
| 3 | paralegal, Linda Lim, will probably be joining us | 12:58:42 |
| 4 | shortly. | 12:58:45 |
| 5 | MR. BLECHMAN:  Noah Blechman, on behalf of | 12:58:45 |
| 6 | the defendants. | 12:58:48 |
| 7 | THE VIDEOGRAPHER:  Natalie, could you | 12:58:49 |
| 8 | please swear the witness in. | 12:58:49 |
| 9 | | 12:58:51 |
| 10 | RICHARD TROVAO, | 12:58:51 |
| 11 | having been administered an oath, was examined and | 12:58:51 |
| 12 | testified as follows: | 12:58:51 |
| 13 | | 12:58:51 |
| 14 | EXAMINATION BY MR. GWILLIAM | 12:58:58 |
| 15 | MR. GWILLIAM:  Q.  Officer Trovao, would | 12:59:01 |
| 16 | you state your full name and business address for | 12:59:01 |
| 17 | the record? | 12:59:04 |
| 18 | A.      Sure.  Richard Manuel Trovao.  Business | 12:59:04 |
| 19 | address is 4833 Bernal Avenue, Pleasanton, | 12:59:08 |
| 20 | California 94566. | 12:59:11 |
| 21 | Q.      Officer Trovao, have you had your | 12:59:13 |
| 22 | deposition taken before? | 12:59:15 |
| 23 | A.      No. | 12:59:16 |
| 24 | Q.      You've had an opportunity to sit through | 12:59:17 |
| 25 | some of these depositions.  This morning you sat | 12:59:20 |

Page 7

| | | |
|---|---|---|
| 1 | basically straps that go to his wrists to the | 13:37:44 |
| 2 | gurney. | 13:37:47 |
| 3 | Q.       Do you know whether he was breathing at | 13:37:49 |
| 4 | that time? | 13:37:52 |
| 5 | A.       I don't know. | 13:37:54 |
| 6 | MR. BLECHMAN:  Calls for speculation, | 13:37:54 |
| 7 | calls for expert testimony.  Go ahead. | 13:37:55 |
| 8 | THE WITNESS:  I don't know. | 13:37:58 |
| 9 | MR. BLECHMAN:  Yeah, you can answer. | 13:37:59 |
| 10 | Perfect. | 13:38:01 |
| 11 | MR. GWILLIAM:  Q.  Did you ever think it | 13:38:02 |
| 12 | would be a good idea well before you made a decision | 13:38:03 |
| 13 | to even put him into a wrap that somebody should | 13:38:07 |
| 14 | deescalate the situation and maybe sit down and try | 13:38:11 |
| 15 | and talk to him to see what was going on? | 13:38:13 |
| 16 | MR. BLECHMAN:  Incomplete hypothetical, | 13:38:15 |
| 17 | vague as to time, vague as to "deescalate the | 13:38:18 |
| 18 | situation."  You can respond. | 13:38:21 |
| 19 | THE WITNESS:  At the time, once we put | 13:38:25 |
| 20 | handcuffs on him, he was still kicking with his | 13:38:26 |
| 21 | feet.  And the restraint system we have to minimize | 13:38:29 |
| 22 | that is the wrap.  And so we had to put the wrap on | 13:38:33 |
| 23 | him in order to minimize that. | 13:38:37 |
| 24 | MR. GWILLIAM:  Q.  You put four sets of | 13:38:41 |
| 25 | handcuffs on him, correct? | 13:38:42 |

Page 43

```
 1   little.                                              14:18:11

 2           (Whereupon the video marked as Exhibit 19    14:18:12

 3           was played.)                                 14:18:12

 4           MR. GWILLIAM:  Stop.                         14:18:24

 5   Q.      So did you tase him again, then, at this     14:18:24

 6   point, just there at 2:35?                           14:18:27

 7   A.      I'm sorry.  For me?  No.                      14:18:30

 8   Q.      Did you tase him again?                       14:18:32

 9   A.      No.                                          14:18:34

10           MR. GWILLIAM:  Just take it back just a      14:18:34

11   little bit.  So take it from there.  Just move it    14:18:35

12   forward, 2:30.                                       14:18:50

13           (Whereupon the video marked as Exhibit 19    14:18:51

14           was played.)                                 14:18:51

15           MR. GWILLIAM:  Q.  Okay.  We run that up     14:19:41

16   until I think it's about three minutes and 12        14:19:43

17   seconds or something like that.  Is that video       14:19:45

18   consistent with your recollection of what happened,  14:19:47

19   as far as you can see from the video?                14:19:49

20   A.      Yes.                                         14:19:52

21           MR. GWILLIAM:  Okay.  We've got another      14:19:53

22   video.  Let's -- the next one has not been marked    14:19:55

23   yet, so I guess it will be 21.                       14:19:57

24           (Whereupon the video marked as Exhibit 21    14:20:14

25           was played.)                                 14:20:14
```

Page 71

1    MR. GWILLIAM:  Stop right there.                14:20:15

2    Q.        Now, that was you using your baton on him,   14:20:16

3    right?                                          14:20:18

4    A.        Yes.                                   14:20:19

5    Q.        Why did you pull out your baton and strike   14:20:19

6    him like that?  And incidentally, we're at point 08   14:20:21

7    of this video, Exhibit 21.                      14:20:26

8    A.        So we were trying to remove his left arm   14:20:29

9    from underneath Mr. Bauer.  And I tried initially to   14:20:31

10   try to pull his arm.  That didn't work, so I tried   14:20:35

11   the distraction blows with -- by jabbing, by using   14:20:39

12   my baton in the closed position, hoping that that   14:20:42

13   would release his grip, or whatever he was doing to   14:20:46

14   hold his arm underneath him.  And as you could see,   14:20:49

15   it didn't have any effect either.               14:20:52

16   Q.        Where exactly on your body (sic) did you   14:20:54

17   hit him?  In the head?                          14:20:56

18   A.        No.  It was on the side.  Right here,   14:20:58

19   somewhere on the side (indicating).             14:20:59

20        MR. BLECHMAN:  When you describe for the   14:21:02

21   video, you got to describe for the record.      14:21:04

22        THE WITNESS:  Oh, I'm sorry.  Left side   14:21:08

23   area, under -- under his arm.                   14:21:09

24        MR. GWILLIAM:  Q.  And you thought by   14:21:12

25   hitting --                                      14:21:13

                                      Page 72

```
 1    Let me rephrase that.  Do you know for a fact that     14:23:21

 2    he wasn't tased twice at this point in the video,      14:23:23

 3    which is 13 seconds?                                    14:23:26

 4            MR. BLECHMAN:  Argumentative as phrased,        14:23:29

 5    but go ahead.                                           14:23:30

 6            THE WITNESS:  Do I know for a fact that we      14:23:31

 7    both did not tase him at the same exact time?  No, I    14:23:33

 8    do not.                                                 14:23:38

 9            MR. GWILLIAM:  Let's go on.  This is 13         14:23:39

10    seconds.                                                14:23:41

11            (Whereupon the video marked as Exhibit 21       14:23:43

12            was played.)                                    14:23:43

13            MR. GWILLIAM:  Q.  Isn't that sound the         14:23:54

14    sound of a taser?                                       14:23:55

15    A.      It's the sound of our body-worn camera.         14:23:56

16    Q.      Thank you.                                      14:23:59

17            MR. BLECHMAN:  What time was that on            14:23:59

18    there?                                                  14:24:01

19            MR. GWILLIAM:  :27.                             14:24:01

20            (Whereupon the video marked as Exhibit 21       14:24:18

21            was played.)                                    14:24:18

22            MR. GWILLIAM:  Let's -- we got one more.        14:24:18

23    This will be 22, for the record, I think.               14:24:19

24            MR. BLECHMAN:  That last one was                14:24:24

25    Bennett's?                                              14:24:25
```

Page 75

| | | |
|---|---|---|
| 1 | MS. WALKER:  Yes, from PPD 368, and this | 14:24:28 |
| 2 | next one is a clip from PPD 378, which is -- | 14:24:30 |
| 3 | MR. GWILLIAM:  This is Billdt's body -- | 14:24:41 |
| 4 | MS. WALKER:  Sorry.  PPD 378. | 14:24:42 |
| 5 | MR. BLECHMAN:  Thank you. | 14:24:46 |
| 6 | (Whereupon the video marked as Exhibit 22 | 14:24:57 |
| 7 | was played.) | 14:24:57 |
| 8 | MR. GWILLIAM:  Q.  That shows you putting | 14:24:57 |
| 9 | your feet on him and trying to push him over, as you | 14:24:58 |
| 10 | said. | 14:25:01 |
| 11 | A.    Put my foot, yes, sir. | 14:25:02 |
| 12 | Q.    All right.  Thank you.  I think that takes | 14:25:03 |
| 13 | care of our videos. | 14:25:05 |
| 14 | Okay.  What I want to do is -- I have | 14:25:13 |
| 15 | previously marked as Exhibit 20, the transcript of | 14:25:14 |
| 16 | your initial interview.  So she's got a copy of | 14:25:19 |
| 17 | that.  If you can look at it, she'll give it to you, | 14:25:22 |
| 18 | and so -- as I said, this was previously marked as | 14:25:25 |
| 19 | 20, so I may want to go through this with you for a | 14:25:28 |
| 20 | minute.  All right? | 14:25:31 |
| 21 | A.    Sure. | 14:25:32 |
| 22 | Q.    Do you have Exhibit 20 there? | 14:25:34 |
| 23 | All right.  So one of the things, Officer | 14:25:46 |
| 24 | Trovao, is when I looked at this, I couldn't tell | 14:25:50 |
| 25 | from this exactly what time you were interviewed | 14:25:53 |

Page 76



# CONFIDENTIAL

```
 3              (Here marks the end of this portion of the      15:03:56

 4              deposition designated "Confidential.")          15:03:56

 5                                                              15:03:56

 6                        ---oOo---                             15:03:56

 7                                                              15:03:56

 8         MR. BLECHMAN:  This is also confidential,           15:03:59

 9    so I guess we're staying in the confidential.            15:03:59

10         MR. GWILLIAM:  Well, let's talk about               15:04:01

11    that.  This should -- I don't think this should be       15:04:02

12    confidential.  I don't see this is part of any           15:04:05

13    disciplinary issues.  It's just a matter of the          15:04:08

14    taser.                                                   15:04:11

15         MR. BLECHMAN:  Well, this document --               15:04:11

16    here's what we can do:  We can just maintain this        15:04:12

17    document as confidential because it came from the        15:04:14

18    administrative investigation which was confidential,     15:04:20

19    but I think the testimony you can ask him about.  We     15:04:24

20    don't have to deem that confidential if you have a       15:04:27

21    problem with it.                                         15:04:29

22         MR. GWILLIAM:  Yeah, I didn't understand            15:04:29

23    why it would be marked confidential anyway.  I mean,     15:04:30

24    if it came in the normal course of it, this would       15:04:33

25    not be, to my mind, a confidential document, but        15:04:37
```

| | | |
|---|---|---|
| 1 | THE WITNESS:  In 2019.  Well, I may have. | 15:19:01 |
| 2 | MR. BLECHMAN:  Yeah. | 15:19:09 |
| 3 | MR. GWILLIAM:  Q.  The first one on the | 15:19:09 |
| 4 | first page back in -- which is the second page of | 15:19:10 |
| 5 | the document, it says, "Smart Use Considerations," | 15:19:13 |
| 6 | and there's a box with pictures of it.  It's very | 15:19:17 |
| 7 | hard to read.  I tried to blow it up.  But that | 15:19:21 |
| 8 | appears to have some guidelines as to the use of the | 15:19:27 |
| 9 | taser under different circumstances. | 15:19:32 |
| 10 | It's very hard to read, but if you look at | 15:19:39 |
| 11 | the box here -- let me do this:  Let me make an | 15:19:41 |
| 12 | 11-A, because I blew it up a little bit in an | 15:19:51 |
| 13 | attempt to try and read that one page.  So I'm going | 15:19:54 |
| 14 | to hand you the blow-up of what is currently the | 15:19:57 |
| 15 | second page of Exhibit 11, but it's blown up so we | 15:20:00 |
| 16 | can look a little better at it, because it's still | 15:20:04 |
| 17 | hard to read.  Just this is the best copy we have. | 15:20:07 |
| 18 | So we'll make this as 11-A because it is part of the | 15:20:09 |
| 19 | document.  So if you look at this one -- | 15:20:14 |
| 20 | A.    I think we need to pause for like five | 15:20:17 |
| 21 | seconds just so I can get to my copy. | 15:20:18 |
| 22 | MR. BLECHMAN:  At least somebody's looking | 15:20:20 |
| 23 | out for the court reporter. | 15:20:20 |
| 24 | (Whereupon Exhibit 11-A was marked for | 15:20:31 |
| 25 | identification.) | 15:20:31 |

Page 115

| | | |
|---|---|---|
| 1 | hypothetical as phrased, calls for speculation.  You | 15:24:42 |
| 2 | can respond. | 15:24:45 |
| 3 | THE WITNESS:  Well, I think it's also | 15:24:46 |
| 4 | important to include -- that we have to include | 15:24:47 |
| 5 | "when objectively reasonable and as practicable.  Do | 15:24:50 |
| 6 | not repeat drive stuns if compliance is not | 15:24:53 |
| 7 | achieved."  Yes, I definitely -- I agree with that | 15:24:57 |
| 8 | statement. | 15:24:59 |
| 9 | MR. GWILLIAM:  Q.  Okay.  And then the | 15:24:59 |
| 10 | third bullet -- little box on there says, "Do not | 15:25:00 |
| 11 | use drive stuns if pain is unlikely to gain | 15:25:04 |
| 12 | compliance due to mind-body disconnect," paren, | 15:25:08 |
| 13 | "(psychotic episode)," closed paren, or increased | 15:25:12 |
| 14 | pain tolerance," close -- "(drugs/alcohol)," end | 15:25:15 |
| 15 | paren.  Do you think that that's an appropriate | 15:25:19 |
| 16 | restriction on the use of the taser? | 15:25:21 |
| 17 | A.     Yes. | 15:25:23 |
| 18 | MR. BLECHMAN:  Same objection. | 15:25:24 |
| 19 | THE WITNESS:  Yes. | 15:25:24 |
| 20 | MR. GWILLIAM:  Q.  And then going to the | 15:25:26 |
| 21 | next page, says, "Higher Risk Polulations."  And one | 15:25:28 |
| 22 | of them -- the second box is "Mentally ill."  Do you | 15:25:41 |
| 23 | agree that that's certainly a high-risk use of a | 15:25:46 |
| 24 | taser, would be on a mentally ill person? | 15:25:50 |
| 25 | A.     Yes, it is a high risk, yes. | 15:25:54 |

Page 119

1   Q.        See at the bottom, it says in bold black,        15:25:55

2   "CEW use on these individuals could increase the        15:25:56

3   risk of death or serious injury."  You would agree        15:25:59

4   with that?        15:26:03

5   A.        Yes.        15:26:03

6   Q.        And then the last page of what I think is        15:26:04

7   the training document says that "Avoid        15:26:07

8   Repeated/Extended CEW Durations."  The first bullet        15:26:09

9   point says, "Minimize the number and duration of CEW        15:26:15

10  exposures."  Do you agree with that?        15:26:19

11  A.        Yes.        15:26:20

12  Q.        Next says, "CEW exposure is a physically        15:26:21

13  and psychological stressful event."  Do you agree        15:26:24

14  with that?        15:26:26

15  A.        Yes.        15:26:28

16  Q.        Next bullet point says, "Use the        15:26:29

17  shortest" -- "use the shortest duration of CEW        15:26:31

18  exposure objectively reasonable to accomplish lawful        15:26:34

19  objectives."  Do you agree with that?        15:26:38

20  A.        Yes.        15:26:40

21  Q.        Next says, "Avoid repeated or continuous        15:26:40

22  exposures beyond 15 seconds absent reasonably        15:26:43

23  perceived immediate threat and increased        15:26:45

24  justification."  Do you agree with that?        15:26:49

25  A.        Yes.        15:26:50

Page 120

```
 1    the time now is 3:30.                           15:30:22

 2            MR. BLECHMAN:  We'll take a copy.       15:32:11

 3    Electronic is fine for us.                      15:32:12

 4            (Whereupon the deposition concluded at  15:32:14

 5            3:32 p.m.)                               15:32:14

 6            (Whereupon, subsequent to the conclusion 15:32:14

 7            of the deposition, Exhibit 21 and        15:32:14

 8            Exhibit 22 were marked for               15:32:14

 9            identification.)                         15:32:14

10                                                     15:32:14

11                    ---oOo---                        15:32:14

12

13

14

15

16

17

18

19

20

21

22

23

24

25
                                                    Page 122
```

```
 1                    CERTIFICATE OF REPORTER

 2

 3           I, Natalie Y. Botelho, a Certified

 4   Shorthand Reporter, hereby certify that the witness

 5   in the foregoing deposition was by me duly sworn to

 6   tell the truth, the whole truth, and nothing but the

 7   truth in the within-entitled.

 8           The said deposition was taken down in

 9   shorthand by me, a disinterested person, at the time

10   and place therein stated, and that the testimony of

11   said witness was thereafter reduced to typewriting,

12   by computer, under my direction and supervision;

13           That before completion of the deposition,

14   review of the transcript [ ] was|[X] was not

15   requested.  If requested, any changes made by the

16   deponent (and provided to the reporter) during the

17   period allowed are appended hereto.

18           I further certify that I am not of counsel

19   or attorney for either or any of the parties to the

20   said deposition, nor in any way interested in the

21   event of this cause, and that I am not related to

22   any of the parties thereto.

23           DATED: October 19, 2020

24

25           Natalie Y. Botelho, CSR No. 9897
```

Page 123