1    NOAH G. BLECHMAN (State Bar No. 197167)
     noah.blechman@mcnamaralaw.com
2    McNamara, Ney, Beatty, Slattery,
     Borges & Ambacher LLP
3    3480 Buskirk Avenue, Suite 250
     Pleasant Hill, CA 94523
4    Telephone: (925) 939-5330
     Facsimile:  (925) 939-0203

5

6    Attorneys for Defendants
     CITY OF PLEASANTON; BRADLEE MIDDLETON;
7    JONATHAN CHIN; RICHARD TROVAO; JASON KNIGHT;
     MARTY BILLDT; and DAVE SPILLER

8

              UNITED STATES DISTRICT COURT

9

           NORTHERN DISTRICT OF CALIFORNIA

10

11

| | |
|---|---|
| 12   JOHN BAUER, an individual and as Successor in Interest of Jacob Bauer, deceased; ROSE BAUER, an individual and as Successor in Interest of Jacob Bauer, deceased, | Case No. C19-04593 LB |
| | **REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/PARTIAL SUMMARY JUDGMENT** |
| Plaintiffs, | Date:       April 22, 2021 |
| vs. | Time:       9:30 a.m. |
| CITY OF PLEASANTON; CITY OF PLEASANTON; BRADLEE MIDDLETON; JONATHAN CHIN; RICHARD TROVAO; STEVEN BENNETT; ALEX KOUMISS; JASON KNIGHT; MARTY BILLDT; and DAVE SPILLER; and DOES 1 to 90 INCLUSIVE, | Dept:       Floor 15, Ctrm. B (S.F.) |
| | Judge:     Hon. Laurel Beeler |
| | Trial Date:   July 19, 2021 |
| Defendants. | |

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

## **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................ 1

II. REPLY ARGUMENTS ...................................................................................... 2

    A.    Plaintiff's Cannot Demonstarte that the City Violated the ADA ........................... 2

    B.    Plaintiffs Fail to Counter Reasonable Suspicion to Handcuff JB ......................... 4

        1.    JB Potentially Posed a Credible Threat to Officer Safety ........................... 5

        2.    Officers Middleton and Chin are Entitled to Qualified Immunity ............... 6

    C.    No Fourth Amendment Violation for Excessive Force Has Been Shown and, Regardless, All Officers Are Entitled to Qualified Immunity ....................... 6

    D.    Plaintiffs Cannot Demonstrate a Viable Supervisory Liability Claim against Sergeants Billdt and Knight ................................................................... 10

    E.    Plaintiffs Cannot Show That Defendant Officers Acted With a Purpose to Harm ............................................................................................................... 11

    F.    Plaintiffs Cannot Show That Defendant Officers Failed to Timely Summon Medical Care ................................................................................................... 11

    G.    The City and Chief Are Entitled to Summary Judgment on All *Monell* Claims ............................................................................................................. 13

        1.    Plaintiffs Fail to Show the City's Policy Manual was Deficient .............. 13

        2.    Plaintiffs Cannot Show Constitutional Violations were a Highly Predictable Consequence of Alleged "Deficient" Training .................... 14

        3.    Plaintiffs Opposition Fails to Appreciate the Nuances of *Monell* Ratification Liability, A Standard They Cannot Meet Here ..................... 15

    H.    Plaintiffs State Law Claims Are Not Supported ................................................ 15

III. OBJECTIONS TO PLAINTIFFS' PROFFERED EVIDENCE ............................. 16

IV. CONCLUSION ................................................................................................. 16

**TABLE OF AUTHORITIES**

**Cases**

*Adams v. Williams*, 407 U.S. 143, 146 (1972) ................................................................ 5

*Alegrett v. City & County of San Francisco*, 2014 U.S. LEXIS 65835 at 28-29 (N.D. Cal. 2014)13

*Alexander v. Cty. of L.A.*, 64 F.3d 1315, 1322 (9th Cir. 1995) ...................................... 6

*Bird v. W. Valley City*, 832 F.3d 1188, 1194 n.1 (10th Cir. 2016) ................................ 1

*Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir. 1996)...................................................... 4

*Connick v. Thompson*, 563 U.S. 51, 61 (2011) ............................................................. 14

*County of Los Angeles v. Mendez,* 137 S. Ct. 1539 (2017)........................................... 11

*Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001)................................... 3, 4

*Gilette v. Delmore,* 979 F.2d 1342, 1348 (9th Cir. 1992) ............................................. 15

*Graham v. Connor*, 490 U.S. 386, 396 (1989)............................................................. 6, 9

*Green v. Taylor,* No. C-12-5933 CRB (PR), 2014 WL 6693865, at *4 (N.D. Cal. 2014) ........... 11

*Green v. Tri-Cty. Metro. Transp. Dist. Of Oregon,* 909 F. Supp. 2d 1211, 1220 (D. Or. 2012)..... 3

*Hermosillo v. Cty. of San Bernardino*, 2016 U.S. Dist. LEXIS 192706, at *38-39 (C.D. Cal. Dec. 22, 2016) ................................................................................................. 15

*Johnson v. Bay Area Rapid Transit Dist.,* 724 F.3d 1159, 1168-69 (9th Cir. 2013) ................... 11

*Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018)........................................................... 10

*Lawman v. City & Cty. of San Francisco*, 159 F. Supp. 3d 1130, 1147 (N.D. Cal. 2016) ............. 2

*Lewis v. Marciano,* No. EDCV 17-0181 SVW (SS), 2017 U.S. Dist. LEXIS 105476, at *5-6 (C.D. Cal. July 7, 2017) ........................................................................................ 3

*Long v. County of Los Angeles*, 442 F3d 1178, 1188 (2006)........................................ 14

*Menuel v. City of Atlanta*, 25 F.3d 990, 995 (11th Cir. 1994) ........................................ 7

*Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978) ............... 13, 15

*Mullenix v. Luna*, 577 U.S. 7, 13 (2015)...................................................................... 10

*Neuroth v. Mendocino Cty.*, 2018 U.S. Dist LEXIS 149492 at 57 (N.D. Cal. 2018) .................. 14

*O'Doan v. Sanford*, No. 19-15623, 2021 U.S. App. LEXIS 8077, *5 (9th Cir. Mar. 19, 2021)...... 9

*Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) ............................................... 11

*Rice v. Morehouse*, No. 18-35459, 2021 U.S. App. LEXIS 6626, *3 (9th Cir. Mar. 8, 2021).... 8, 9

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

*Simmons v. Navajo County*, 609 F.3d 1011, 1022 (9th Cir. 2010) .................................................. 4

*Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1099 (9th Cir. 2006) .................. 11, 12

*United States v. Bautista*, 684 F.2d 1286, 1289 (9th Cir. 1982) .................................................. 4, 5

*Wilkinson v. Torres*, 610 F.3d 546, 553 (9th Cir. 2010) .................................................. 8

*Zion v. County of Orange*, 874 F.3d 1072, 1077 (9th Cir. 2017)........................................ 11

**Statutes**

28 C.F.R. § 35.130(b)(7) .................................................. 2

42 U.S.C. § 1983 .................................................. 9, 14

42 U.S.C. § 12131 .................................................. 2

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

# I. <u>INTRODUCTION</u>

Plaintiffs' Opposition (ECF 79) ("Opposition")[1] and their exhibits gives short shrift to the open, obvious and extensive resistance of JB to being handcuffed, during a lawful detention, as is clear on the videos submitted by Defendants.  <u>Plaintiffs concede that officers could lawfully detain JB</u>, but question the right to handcuff JB.  Defendants had the lawful right to handcuff JB in this scenario.  Importantly, Plaintiffs concede, due to the incontrovertible video and audio evidence, that once officers attempted to handcuff JB, JB resisted those efforts.  Plaintiffs admit that when officers attempted to (lawfully) handcuff JB, "**Jacob was resistant**" (ECF 79, pg. 8 of 37, line 26), "**Jacob passively resisted**," (*Id.*, pg. 12 of 37, lines 23-24), "**Jacob resisted the unlawful force**," (*Id.*, pg. 14 of 37, lines 12-13).  This admitted resistance by JB led directly to this protracted struggle and continued even past the time he was handcuffed.

Plaintiffs misrepresent that JB was under arrest when the two officers went to handcuff JB as this is clearly incorrect as JB was only being **detained** for an investigation of this call for service.  While Plaintiffs argue no de-escalation techniques were ever attempted, this is entirely disingenuous as numerous involved officers made countless verbal commands for JB to stop resisting and to give up his hands, evidence that Plaintiffs blatantly disregard (and fail to mention at all in their Opposition).  Plaintiffs make other extensive misrepresentations of the record, cite to evidence far out of context and include objectionable and inadmissible evidence, including simply tossing in all their expert reports, in their desperate attempt to try to defeat this motion and the immunities involved.  Defendants herein submit this Reply Brief to address these errors, misrepresentations, and to focus this Court on the undisputed facts and video evidence which support an entry of summary judgment or partial summary judgment in favor of Defendants.

It should also be highlighted that <u>Plaintiffs did not object to any submitted evidence of Defendants</u>, so all of Defendants evidence is ripe for consideration by the Court.  *Bird v. W. Valley City*, 832 F.3d 1188, 1194 n.1 (10th Cir. 2016).  However, Defendants provide objections to some of Plaintiffs' evidentiary submissions, per the chart at the end of this Reply.  In short,

---

[1] Plaintiffs' Opposition is thirty pages long.  In order to fully respond to Plaintiffs' thirty  page Opp. and voluminous record, Defendants' Reply exceeds the fifteen page limit, per Local Rule 7-3(c), by 1.5 pages, despite extensive editing efforts to comply with page limitations.  Good cause exists for that brief overflow on this record.

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

Defendants' moving arguments are still persuasive, as bolstered by the clear video evidence, entitling Defendants to summary judgment and/or partial summary judgment, including qualified immunity for the involved officers.

## II. REPLY ARGUMENTS

### A.    Plaintiffs Cannot Demonstrate that the City Violated the ADA

Defendants mistakenly failed to discuss Plaintiffs' ADA claim in detail in the moving papers, though we have moved for summary judgment herein for all claims.  It is clear, however, that Plaintiffs cannot satisfy this claim herein.  If the Court would like supplemental briefing on this issue, Defendants would be amenable, though it is clear on this record that such claim fails.

After a motion to dismiss, the Plaintiffs' claim against the City of Pleasanton survived wherein they claim the City violated the ADA by using excessive force against an individual with known mental disabilities (JB).  Title II of the ADA, 42 U.S.C. § 12131 et seq., prohibits discrimination on the basis of a disability in the programs, services or activities of a public entity. Federal regulations require a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).  In the context of arrests, courts recognize two types of Title II claims: (1) "wrongful arrest, where police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity;" and (2) despite the police's proper investigation and arrest of a person with a disability for a crime unrelated to the disability, they "fail to reasonably accommodate the person's disability . . . causing the person to suffer greater injury or indignity in that process than other arrestees." *Lawman v. City & Cty. of San Francisco*, 159 F. Supp. 3d 1130, 1147 (N.D. Cal. 2016).

To state a claim under § 12132, a plaintiff must allege that: "(1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability." *Lewis v. Marciano*, 2017 U.S. Dist. LEXIS 105476, at *5-6 (C.D. Cal. July 7, 2017).  Plaintiffs claim that the City failed to train and supervise its employees in recognizing the symptoms of JB's disability and offering appropriate accommodations to JB.  It is well established that, "[t]he Ninth Circuit has not set out a standard for failure-to-train- claims under the ADA."  *Green v. Tri-Cty. Metro. Transp. Dist. Of Oregon*, 909 F. Supp. 2d 1211, 1220 (D. Or. 2012).

Even assuming that a failure to train claim is cognizable under the ADA, Plaintiffs have not provided any evidence to substantiate this allegation.  PPD officers are trained on all of the appropriate legal standards needed to safely and effectively do their jobs within constitutional limits, as covered in the policies.  ECF 73, Ex. Q and Ex. R.  Plaintiffs have failed to point to training deficiencies that would indicate a widespread pattern of a failure to train.  Defendants, on the other hand, have produced key evidence to demonstrate that the involved officers are experienced officers and their actions, as seen in the video evidence, complied with traditional law enforcement training.

 "To recover monetary damages under Title II of the ADA, a plaintiff must prove intentional discrimination on the part of the defendant." *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001).  To prove intentional discrimination, the plaintiff must show that the defendant acted with deliberate indifference. *Id.* at 1139.  "When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test." *Id.* "[D]eliberate indifference does not occur where a duty to act may simply have been overlooked, or a complaint may reasonably have been deemed to result from events taking their normal course." *Id.*  "Rather, in order to meet the second element of the deliberate indifference test, a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Id.*

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

1   Here, even if the Plaintiffs' claim that officers used excessive force in controlling JB is

2   deemed to have merit, there is nothing to suggest that officers acted or failed to act as a result of

3   JB's claimed "disability."  Plaintiffs have not met the threshold to even demonstrate any known

4   "disability."  In fact, Officers Middleton and Chin only had about three minutes to interact with

5   JB prior to the start of the struggle due to JB's resistance.  Plaintiffs have not provided any

6   evidence that shows officers adjusted their treatment of JB based on their perception of his

7   "disability."  Further, even if officers knew or had reason to know that JB was suffering from a

8   mental health crisis, this does not rise to the "deliberate indifference" standard that controls under

9   ADA claims.  *Duvall,* 260 F.3d at 1138.  Clearly officers were just trying to detain JB to further

10  their investigation of this call for service.

11  Also, Plaintiffs cannot try to make this ADA claim by arguing that JB was denied medical

12  care.  The "ADA prohibits discrimination because of disability, not inadequate treatment for

13  disability."  *Simmons v. Navajo County*, 609 F.3d 1011, 1022 (9th Cir. 2010) (emphasis added).

14  "Insufficient medical care does not state a claim under the ADA.  *Id.*; see also *Bryant v. Madigan,*

15  84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply failing to

16  attend to the medical needs of its disabled prisoners…The ADA does not create a remedy for

17  medical malpractice). Here, while Plaintiffs assert that JB was discriminated against because he

18  was not given "appropriate accommodations," any allegation of inadequate medical

19  accommodations is incorrectly brought under this ADA claim and must fail.  At no point was JB

20  denied medical care and such claim cannot be brought per an ADA claim.  Overall, Plaintiffs'

21  ADA claims should be dismissed.

22  **B.    Plaintiffs Fail to Counter Reasonable Suspicion to Handcuff JB**

23  Plaintiffs concede that Officers Middleton and Chin possessed reasonable suspicion to

24  detain JB for investigatory purposes. ECF 79, pg. 27 of 37, lines 2-3.  Plaintiffs, however, argue

25  officers did not have the right to handcuff JB.   Plaintiffs rely on *Bautista* to support their claims,

26  but have only included a portion of the findings. Plaintiffs' conclusory assertions that JB "did not

27  present any danger to anyone" not only contradicts and misstates the record, but does nothing to

28  counter Defendants' submissions on this point.  With regard to the use of handcuffs, the court in

*Bautista* noted that, "police conducting on-the-scene investigations involving potentially dangerous suspects may take precautionary measures if they are reasonably necessary. The purpose of the *Terry* frisk is "to allow the officer to pursue his investigation without fear of violence." *United States v. Bautista*, 684 F.2d 1286, 1289 (9th Cir. 1982) (citing *Adams v. Williams*, 407 U.S. 143, 146 (1972)).

### 1.   JB Potentially Posed a Credible Threat to Officer Safety

Despite Plaintiffs' dim assertion that "no one's safety was in question," the record clearly indicates otherwise. When officers initially contacted Raley's employees, one indicated a fear that JB may hurt someone in light of his unpredictable and erratic drug-induced state. Moreover, when officers asked JB whether or not he "had anything illegal on him," JB suddenly became unresponsive, indicating to officers that JB may be formulating a plan to flee or fight. *Terry* frisks exist to allow an officer to pursue their investigation without fear of violence. JB was also a very large male, much larger than the two officers and was acting erratically. As such, following JB's sudden unresponsiveness to the question posed regarding "anything illegal" and bizarre statements and behavior, it was entirely reasonable for officers to take precautionary measures and handcuff JB until he could be properly searched and cleared for weapons to continue their investigation for this call. Notably, JB was handcuffed for officer safety, not solely for JB's failure to answer the question about whether he had anything illegal on him (as Plaintiffs incorrectly assert and argue) and was not handcuffed as he was under arrest, he was detained.

Further, Plaintiffs incorrectly rely on the CAD entry (ECF 73, Ex. A) "neg for weapons" as proof that JB was unarmed. However, this entry simply indicates that the reporting party did not see weapons at the time of the report and it does not mean that JB was definitively unarmed. It would be a naïve and dangerous practice to assume, without confirming, that someone is unarmed based on a solely on a reporting party's account of not seeing a weapon. Additionally, Plaintiffs incorrectly assert that safety was not an in issue when the altercation began. However, the call for service was initiated due to JB's destructive and dangerous behavior in the Raley's store. The Raley's manager stated that JB was "aggressively, breaking items" and was refusing to leave. Officers were told of JB's destructive behavior and were informed that those who

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

witnessed JB's behavior in Raley's were scared for their safety and for the safety of those in the area.  Given all these facts known to the officers, it was reasonable for them to feel as though safety was an issue.  Officers' knowledge of JB's recent behavior, his stature, and the fact that JB had not been searched and cleared of weapons all support the conclusion that safety was a concern of Officers Middleton and Chin, giving then reason to handcuff JB to continue their job.

### 2.   Officers Middleton and Chin are Entitled to Qualified Immunity

As put forth in Defendants' Motion, even if the officers were mistaken as to the basis to handcuff JB during this lawful detention, Middleton and Chin are entitled to qualified immunity as long as a reasonable officer could have believed the conduct was lawful.  *Alexander v. Cty. of L.A.*, 64 F.3d 1315, 1322 (9th Cir. 1995).  Plaintiffs' Opposition fails to overcome the fact that officers had the right to handcuff JB and/or the officers are protected by qualified immunity.  Plaintiffs fail to provide a case on point and/or a robust consensus of cases demonstrating that these officers violated clearly established law when they attempted to handcuff JB for this investigation.  The video and officer submitted evidence made it clear that it was reasonable to attempt to handcuff JB to render the situation safe so officers could investigate further.

### C.   No Fourth Amendment Violation for Excessive Force Has Been Shown and, Regardless, All Officers Are Entitled to Qualified Immunity

As it is undisputed that Defendants had the lawful right to detain JB, the defendants also had the lawful right to use some degree of physical force to effect the lawful detention to further this investigation.  *Graham v. Connor*, 490 U.S. 386, 396 (1989) (The authority to arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.").  As stated above, the officers had the lawful right to handcuff JB to investigate further.

Notably, as Plaintiffs' concede, when officers attempted to (lawfully) handcuff JB, "**Jacob was resistant**" (ECF 79, pg. 8 of 37, line 26), "**Jacob passively resisted**," (*Id.*, pg. 12 of 37, lines 23-24), "**Jacob resisted the unlawful force**," (*Id.*, pg. 14 of 37, lines 12-13).  As Middleton/Chin were lawfully able to handcuff JB, when he became "resistant," officers Middleton and Chin had the lawful right to use some force to get JB under control and in handcuffs.  The two officers struggled with the much larger JB on their feet for over 30 seconds,

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

then Chin took JB to the ground on the grass to get him under control. On the ground, JB continued to move and resist efforts get him into handcuffs, leading to the protracted struggle. Chin was able to get one handcuff on JB, but due to JB's strength and motivation to resist, the officers were not able to get him fully handcuffed. It was only then that Middleton deployed his Taser at JB since JB continued to resist and act dangerously towards officers. After a drive stun was ineffective by Middleton, Chin and Middleton only then used grabbing moves to try to get the other handcuff on JB. No other strikes or blows by these officers were used at that point. The videos clearly shows these officers using limited force and then reassessing whether or not the force was effective enough to overcome JB and get him into handcuffs. No gratuitous or retaliatory force can be seen at any time in the videos, neither before or after JB is in handcuffs.

Furthermore, the force used during this struggle is not to be viewed or analyzed through the lens of body cameras or from the perspective of JB, but rather it is viewed from the perspective of these involved PPD officers who were simply trying to handcuff the large, methamphetamine-intoxicated and highly resistive JB. *Id*. at 396-397 ("the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."). Moreover, the Court's reasonableness evaluation should provide leeway when these Defendants were acting in circumstances that were clearly tense, uncertain and rapidly evolving, leading to circumstances requiring split second decisions about the various force options to be used. *Id*. Even if some people would believe vehemently that force was not appropriate at times, not "every push or shove, even if it may later seem unnecessary" when viewed in Your Honor's chambers, violates the Fourth Amendment. *Id*. Rather, viewed from the perspective of these officers, the agitated and violently resistive JB, who was "neither physically subdued nor compliantly yielding," remained "capable of generating surprise, aggression, and death." *Menuel v. City of Atlanta*, 25 F.3d 990, 995 (11th Cir. 1994). It is clear that the limited force by the officers to try to get JB into handcuffs was appropriate and/or they are entitled to qualified immunity for their reasonable and limited force.

Plaintiffs try to downplay JB's conduct by claiming that he posed no safety threats to anyone (despite that Raley's employees expressed concerns that JB would hurt someone and JB

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

physically and extensively resisted handcuffs and it was unknown if he had any weapons). Further, in addition to preventing himself from being handcuffed, the undisputed evidence shows that JB was rolling on the ground, scratching officers and eventually biting Chin.  From the perspective of reasonable officers, a suspect who is violently resisting arrest or exhibiting violently resistive behavior poses a significant safety threat to officers, especially in conjunction with JB' abrupt failure to answer questions about illegal item and the fact that he was unsearched. The officers only escalated their force in line with JB's continued resistance and the ever increasing danger of continuing a prolonged struggle with a large, drug intoxicated man who was assaultive towards officers.  The Fourth Amendment does not require officers to be "omniscient" and absolute certainty of harm need not precede an officer's act of self-protection or the protection of their fellow officers.  *Wilkinson v. Torres*, 610 F.3d 546, 553 (9th Cir. 2010).

Plaintiffs rely on *Rice v. Morehouse* to support their contention that officers used excessive force.  This case is neither factually on point nor particularly persuasive in this matter. In *Rice*, the Ninth Circuit reversed the district court's order granting partial summary judgment on the basis of qualified immunity in favor of the defendant officers who used force during a traffic stop for the plaintiff who did not comply with providing his license and registration information and asked for a supervisor, then was tripped to the ground and extensive force used on him to get him in handcuffs.  *Rice v. Morehouse*, No. 18-35459, 2021 U.S. App. LEXIS 6626, *3 (9th Cir. Mar. 8, 2021).  In *Rice*, unlike in this case, the investigating officer's actions did not support a finding that she feared for her safety, as she not only turned her back on the suspect driver, but she downgraded her call for service from a "Code 3" life-or-death alert to a "Code 4" indicating she was no longer in danger, undermining arguments that she feared the driver may have a weapon.  *Id*. at *16, *19.  Further, once additional officers arrived on scene, they observed the driver of the vehicle calmly cooperating with the investigating officer, clearly indicating that the officers were not facing an emergency situation.  *Id*. at *17-18.

Here, on the other hand, this was not a traffic stop, but a misdemeanor investigation in the early stages.  Additionally, once JB started to physically resist handcuffing (as admitted by Plaintiffs), the Code 3 was called by Chin for other officers to assist, a call that was never

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

downgraded until JB was handcuffed.   Further, as additional officers arrived on scene, they did not observe a calm and cooperative individual as did the officers in *Rice*, but instead saw a large unhandcuffed man defying commands, actively resisting and struggling with officers on the grass. In relying on *Rice* to support the argument that the officers had a minimal interest in the use of force against JB, per *Graham*, Plaintiffs ignore an important qualifier, "**absent an emergency**, the state's interest here are insubstantial." *Rice,* 2021 U.S. App. LEXIS 6626 at *18.   The emergency situation created by JB's resistance and defiance, necessitating the use of force, did not end until JB was finally handcuffed and sedated, not before additional units arrived as in *Rice*. Thus, Plaintiffs' reliance on *Rice* is entirely misplaced and this case does not defeat this motion.

Despite the decision coming out one week before the Opposition, Plaintiffs fail to mention the Ninth Circuit's recently decided opinion in *O'Doan v. Sanford*, affirming the lower court's decision that plaintiff's § 1983 claims failed because the officers were entitled to qualified immunity for their use of force and arrest of plaintiff. *O'Doan v. Sanford*, No. 19-15623, 2021 U.S. App. LEXIS 8077, *5 (9th Cir. Mar. 19, 2021). In *O'Doan*, in attempting to apprehend plaintiff, officers struggled physically with plaintiff and employed a "reverse reap throw" to bring plaintiff to the ground. The Ninth Circuit concluded that officers did not violate the Fourth Amendment when using the "reverse reap throw" after officers were called in to a "Code 3" situation and plaintiff failed to follow lawful commands and made threatening gestures. *Id*. at *19-20.  Plaintiff's ADA claim also failed. *Id*. at *22 (Fn. 1).

The *O'Doan* case is much closer to the situation facing these PPD officers in dealing with JB's active resistance to handcuffing, leading to a prolonged struggle. Here, as the Court in *O'Doan* concluded, the "Code 3" situation, created by JB's resistance and continued defiance of simple commands, "risked severe consequences" necessitating the use of reasonable force to get him into handcuffs. The takedown in *O'Doan* was only "a modest deployment of force," *id*. at *20,  like Chin's take down of JB on the grass.  Like the officer involved in O'Doan, the force used to get JB into custody was either objectively reasonable, or the involved officers are entitled to qualified immunity.

As aptly stated by the Ninth Circuit in *O'Doan*, Your Honor's task here in the qualified

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

immunity context is "not to serve as a police oversight board or to second-guess officers' real-time decisions from the standpoint of perfect hindsight, but to ask whether officers violated clearly established law." *Id.* at *18 (emphasis added).  The Supreme Court has reminded lower courts that "[u]se of excessive force is an area of law in which the result depends very much of the facts of each case and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015)) (internal quotations omitted). Further, each individual officer is entitled to a qualified immunity determination as different officers were involved at different times and employed different levels of force and tactics, as laid out in detail in the main Motion.  The other officers arriving per the Code 3 call (all except Middleton and Chin), who see an active struggle occurring, are entitled to breathing room for any force used under these dynamic and tense conditions, should any use of force be deemed to be arguably inappropriate in hindsight. All in all, the reserved force as seen on the video, in response to the resistance, was lawful and/or qualified immunity applies here.

### D. Plaintiffs Cannot Demonstrate a Viable Supervisory Liability Claim against Sergeants Billdt and Knight

Here, Plaintiffs allege that Sergeants Knight and Billdt "failed in their duties at every turn."  ECF 79, pg. 32 of 37, lines 6-7.  Despite Plaintiffs' contentious arguments, the clear evidence shows that the Defendant Officers did not violate any of JB's constitutional rights, and as such, Sergeants Billdt and Knight cannot be held liable for their actions or that of their subordinates engaged in lawful conduct and/or conduct protected by qualified immunity.  As the video evidence indicates, Billdt and Knight were at the scene and monitoring the struggle, making sure their officers were safe, making sure JB was safely secured, and ensuring that medical personnel were timely called into the scene to evaluate JB.  Plaintiffs' litany of select quotes from various officers, out of context, does not defeat this argument or demonstrate supervisory liability.  Regardless, these supervisors are entitled to qualified immunity as their actions have not been shown by Plaintiffs to violate clearly established law involving supervisors.

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

**E.**     **Plaintiffs Cannot Show That Defendant Officers Acted With a Purpose to Harm**

Plaintiffs concede that the rigorous "purpose to harm" standard applies in this case. ECF 79, pgs. 32-33 of 37 ("Here, the purpose to harm standard applies." *Id*., pg. 33:8). However, Plaintiffs have provided absolutely no evidence to demonstrate that any officer acted "with a purpose to harm" JB that was "unrelated to legitimate law enforcement objectives." *Johnson v. Bay Area Rapid Transit Dist.,* 724 F.3d 1159, 1168-69 (9th Cir. 2013) (citing *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008)). Despite the lack of any evidence of any such a purpose, in support of their argument, Plaintiffs point to a case in which a plaintiff's actions created a need for officers to use force to control him, but the officers continued to punch and hit the plaintiff *after the plaintiff was already restrained in handcuffs*. *Green v. Taylor,* No. C-12-5933 CRB (PR), 2014 WL 6693865, at *4 (N.D. Cal. 2014) (emphasis added). The *Green* case is distinguishable as there was considerable force used on plaintiff after he was handcuffed, unlike with JB where all the force was used to get the struggling JB into handcuffs. Further, Plaintiffs' provocation type arguments are moot as the Supreme Court has overturned the Ninth Circuit's provocation rule in the *County of Los Angeles v. Mendez,* 137 S. Ct. 1539 (2017). There is no evidence that any of the involved officers had any ulterior motives for using force against JB such as to bully or get even with him or the force was used against a clearly harmless or subdued person, as is required. *Zion v. County of Orange*, 874 F.3d 1072, 1077 (9th Cir. 2017). All the video and other evidence shows that involved officers were just trying to control and handcuff JB to further this investigation and protect officers and the public from the resistive JB. Finally, even if there is an arguable Fourteenth Amendment claim, these officers are entitled to qualified immunity on this record.

**F.**     **Plaintiffs Cannot Show That Defendant Officers Failed to Timely Summon Medical Care**

Notably, officers are not held to the same standards of medical care as medical professionals. The Fourth Amendment requires law enforcement officers to "provide objectively reasonable post-arrest care to an apprehended suspect." *Tatum v. City & County of San Francis-*

*co*, 441 F.3d 1090, 1099 (9th Cir. 2006).  The Ninth Circuit has required that officers "seek necessary medical attention by promptly summoning help or taking the injured arrestee to the hospital." *Tatum*, 441 F.3d at 1099.  Here, officers had ambulance personnel stage nearby the arrest scene even prior to the time JB was in handcuffs.  ECF 73, Ex. B; Ex. I, 73:2-15.  Once JB was under control and it was safe to do so, medical personnel were called into the scene and then took over the medical monitoring and care of JB per their training and experience as medical professionals.  Officers complied with the Ninth Circuit requirement per *Tatum* and its progeny.

Plaintiffs try to claim in this case that officers should have recognize that JB entered into a state of excited delirium when the altercation began and officers waited until JB was secured in a WRAP device to summon medical attention.  This statement is inaccurate.  Medical personnel were staged nearby and called right in the area once it was safe.  Additionally, there was no way to know whether or not JB was suffering from any signs or symptoms of excited delirium from a short observation of him prior to attempting to handcuff him and, even so, medical personnel were called in immediately after the struggle ended and the scene was secure.

Further, Plaintiffs make sweeping conclusions that are not supported in the record.  For instance, Plaintiffs claim that "no one monitored Jacob's vital signs" seemingly attempting to place the responsibilities of trained medical personnel onto the involved officers.  Yet, the Ninth Circuit has required that officers "seek necessary medical attention by promptly summoning help" which is what they did here.  *Tatum*, 441 F.3d at 1099.  After the arrest, JB was still breathing, talking, yelling, cursing, and answering questions of officers.  Per the medical personnel, even when JB was being placed into the soft restraints, the trained medical professionals did not note any medical distress of JB.  ECF 73, Ex. K, 32:15-22, 38:2-44:24; Ex. L, 22:3-37:20; Ex. M, 27:2-28:9, 41:2-48:20.  Thus, the officers at the scene fulfilled their constitutional duties by quickly summoning medical attention and then relying upon those medical professionals to monitor JB.

Plaintiffs also argue "no one did anything" once JB lost consciousness.  This statement is in contradiction to the undisputed video and testimonial evidence in this case.  Around the time JB appeared to be passed out, JB was being evaluated by LPFD and paramedics who confirmed

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

that JB was alive, breathing and did not appear to be in any medical distress.  The video evidence shows the medical personnel touching, viewing and monitoring JB, including giving him a sedative.  LPFD and paramedics only discovered for the first time that JB was in medical distress as they were loading him into the ambulance, much later in this fact pattern.

Plaintiffs also falsely assert that paramedics were denied access to JB until long after the incident began.  All the evidence shows that LPFD and Paramedics Plus were called on scene and given full access to evaluate and render aid to JB immediately after he was handcuffed and the scene was secured.  This is corroborated by the video evidence.  JB was given a sedative, so clearly they had access to JB and there is no evidence that any officer prevented JB from any evaluation or care at the scene.  Plaintiffs also erroneously claim that JB died at the scene.  Again, the key evidence refutes this statement.  The autopsy report clearly states, "[JB] expired in the emergency department."  ECF 73, Ex. N-1.  Additionally, CPR efforts began in the ambulance at the scene and continued until the time of death was called at the hospital.

Regardless of the above, these officers are entitled to qualified immunity with regard to these medical care claims as they summoned medical treatment and JB was clearly alive, breathing and talking following his arrest.  Plaintiffs' lone citation to a Sixth Circuit case from 2005 does not demonstrate clearly established law to defeat qualified immunity.

### G.  The City and Chief Are Entitled to Summary Judgment on All *Monell* Claims

#### 1.  Plaintiffs Fail to Show the City's Policy Manual was Deficient

Plaintiffs make misleading and conclusory statements that because the City does not use the terms such as hypoxia or asphyxia (which are medical terms), their policy manual fails to address conduct that officers regularly expect to engage in.  However, to create a triable issue of fact, Plaintiffs must do more than a simple word search of the City's policy manual.  *Alegrett v. City & County of San Francisco*, 2014 U.S. LEXIS 65835 at *28-29 (N.D. Cal. 2014).  In *Alegrett*, plaintiff argued that the city should be liable under *Monell* because they lacked written policies regarding the use of force with respect to mentally ill individuals.  *Id*.  In *Alegrett*, the city did have a general use of force policy that required reasonable force and it also had a policy

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

providing officers with training on recognizing signs and symptoms of mental illness. *Id.* Based on these general policies, the court found no deliberate indifference on behalf of the city and granted summary judgment. *Id.* This Court should conclude the same here.

The PPD had extensive policies on the use of force and other issues involved in this case. ECF 73, Ex. Q, PPD Policies 300, 306, 308, and 309. In addition, the officers had extensive training on use of force and dealing with people in crisis. Plaintiff's argument about treating people who may be suffering excited delirium as an emergency medical condition is moot since officers immediately summoned medical treatment for JB once he was in custody, as is per their policies. Plaintiffs have not shown any constitutional deficiency with regard to any PPD policy, nor if any such deficiency, if it exists, caused any constitutional violation. As such, the City and Chief Spiller are entitled to summary judgment.

2.   <u>Plaintiffs Cannot Show Constitutional Violations were a Highly Predictable Consequence of Alleged "Deficient" Training</u>

"In limited circumstances, a city's decision not to train certain officers about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Although a deliberate indifference in a failure to train claim generally requires a plaintiff to show a pattern of similar constitutional violations, such a showing may not be required where a "violation of federal rights is a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Neuroth v. Mendocino Cty.*, 2018 U.S. Dist LEXIS 149492 at 57 (N.D. Cal. 2018) (quoting *Long v. County of Los Angeles*, 442 F3d. 1178, 1188 (2006)). "Deliberate indifference" requires objective proof that a municipal actor disregarded a known or obvious consequence of his action.

Here, Plaintiffs rely on two unrelated shooting deaths to support their proposition that the City failed to train its officers on appropriate use of force. These shooting death incidents are completely and utterly different than the situation facing these officers when dealing with the large, intoxicated and resistive JB. All involved officers were extensively trained on force and crisis intervention per the record. No officers in this case were the shooting officers in the cases

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

1   referenced by Plaintiffs.  Plaintiffs have not demonstrated any other struggle related death

2   incidents with the PPD, like the incident with JB, to show that this was a training deficiency for a

3   reoccurring situation.  Plaintiffs are grasping at straws and this claim also is unsupported.

3.   Plaintiffs Opposition Fails to Appreciate the Nuances of *Monell* Ratification Liability, A Standard They Cannot Meet Here

6   *Monell* does not impose liability simply because no officers were disciplined, nor any

7   policy violations found.  Courts "have stopped short of holding that a plaintiff can prove *Monell*

8   liability simply on the basis of a defendant department's post-incident ratification through failure

9   to discipline or take other action concerning the officer directly involved." *Hermosillo v. Cty. of*

10  *San Bernardino*, 2016 U.S. Dist. LEXIS 192706, at *38-39 (C.D. Cal. Dec. 22, 2016).  Further,

11  Plaintiffs must show that Chief Spiller made "a deliberate choice from among various alternatives

12  to follow a particular course of action." *Gillette v. Delmore,* 979 F.2d 1342, 1348 (9th Cir. 1992).

13  A policymaker's knowledge of an unconstitutional act does not, by itself, constitute ratification.

14  Instead, ratification requires the authorized policymaker to make a "conscious, affirmative

15  choice." *Gillette*, 979 F.2d at 1347.  Importantly, Chief Spiller had retired prior to the final report

16  and findings of Sgt. Gora for the internal review of this incident and the subsequent Chief was the

17  one who signed off on the review.  Further, Plaintiffs ignore this critical temporal relationship and

18  argue that the City/Chief Spiller ratified the alleged unconstitutional actions by failing to

19  discipline the involved officers and approving the use of force, post-incident.  This is wholly

20  insufficient for ratification liability under *Monell* as there is no evidence that Chief Spiller knew

21  this incident was occurring and made a conscious, affirmative decision for how it should be

22  handled.  Even if an arguable violation can be shown, Chief Spiller is entitled to qualified

23  immunity on this record.  Thus, the City and Chief Spiller are entitled to summary judgment.

24  **H.     Plaintiffs State Law Claims Are Not Supported**

25  Plaintiffs give short mention (a seven line paragraph) to their arguments that their state

26  claims survive this summary judgment.  We argued that the state claims do not survive and

27  Plaintiffs' hollow paragraph does not satisfy their burden of proving such claims, including

28  evidence of intent for the Bane Act claim and evidence of unreasonable force by all involved

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

officers.  Thus, Defendants are entitled to summary judgment as to Plaintiffs' state law claims.

### III. OBJECTIONS TO PLAINTIFFS' PROFFERED EVIDENCE

Defendant objects and requests that this Court to strike the following evidence.

| Evidence | Objection by Defendants |
|---|---|
| Ex. C, Jack Ryan Report; Ex. F, William H. Harmening Report; Ex. J, Dr. Michael D. Freeman Report; Ex. K, Dr. Laura D. Knight Report; Ex. L, Dr. Daniel Wohlgelernter Report. | Defendants object to Plaintiffs' use of the entire Rule 26 expert reports, Plaintiffs cite only to small portions of the reports in their Opposition. Per FRE 401-403, the portions of the Rule 26 Report submitted to the court which the Plaintiffs' do not rely upon in their Opposition are irrelevant, prejudicial and waste judicial economy under FRE 401-403. Additionally, many of these experts attempt to opine on what happened with regard to this incident, though they have no personal knowledge and were not present during this protracted struggle. |
| Ex. F, Harmening Report at pg. 20-21 (Opp. 6:9-10). | Defendants object to Plaintiffs' statement "Tased for thirty-one-seconds" as it lacks the necessary foundation to establish that it is reliable.  This evidence should be excluded as irrelevant per FRE 401-403, as lacking foundation and/or authenticity per FRE 901 et seq., and as hearsay per FRE 801.  This is not supported by the evidence. |
| Ex. C, Ryan Report at ¶¶ 386-410; Ex. F, Harmening Report at pg. 27-31 (Opp. 10:12-26). | Defendants object to Plaintiffs' experts, Harmening and Ryan's unfounded and completely speculative opinions "regarding the failures of Sgts. Knight and Billdt." These opinions are irrelevant and rely on hindsight to second-guess officers' lawful use of force, and misrepresent what these supervisors were doing at the scene during this struggle.  These opinions are not based on personal knowledge and as such should be excluded as speculative per FRE 602, irrelevant and prejudicial per FRE 401-403 and an improper expert opinion per FRE 702.  Defendants also object that these two experts are cumulative as both of them are purported police procedures experts. |
| Ex. F, Harmening Report at pg. 35 (Opp. 11:24-27). | Defendants object to Plaintiffs' expert Harmening's improper and unfounded conclusion that "Bauer had obviously entered a state of excited delirium."   Harmening is not qualified to make such determinations, as such this opinion should be excluded as speculative per FRE 602, irrelevant and prejudicial per FRE 401-403 and an improper expert opinion per FRE 702.  Harmening is not a medical expert, nor is there any foundation for this speculative opinion. |
| Ex. K, Knight Report at ¶¶ 47, 50 (Opp. 13:16-23, 14:20-21). | Defendants object to Plaintiffs' expert, Knight's unfounded and speculative opinions regarding the application of the WRAP, the cause of JB's death, and statements around when JB "ceased to speak". These opinions are not based on personal knowledge and as such should be excluded as speculative per FRE 602, irrelevant and prejudicial per FRE 401-403 and an improper expert opinion per FRE 702. |
| Ex. J, Freeman Report at pg. 7, 20 (Opp. 14:1-8, 22-24). | Defendants object to Plaintiffs' expert, Freeman's unfounded and speculative opinions regarding the "very small amount" of methamphetamine in JB's system and whether and when JB "began to turn blue." These opinions are not based on personal knowledge and as such should be excluded as speculative per FRE 602, irrelevant and |

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

| | prejudicial per FRE 401-403 and an improper expert opinion per FRE 702. |
|---|---|
| Ex. L, Wohlgelernter Report at pg. 4 (Opp. 14:9-14). | Defendants object to Plaintiffs' expert, Wohlgelernter's unfounded and speculative opinions regarding the application of "restraints" and the cause of JB's death. These opinions are not based on personal knowledge and as such should be excluded as speculative per FRE 602, irrelevant and prejudicial per FRE 401-403 and an improper expert opinion per FRE 702. |

## IV. CONCLUSION

In sum, Defendants are entitled to judgment as a matter of law as to all claims and/or partial summary judgment on this record.

The undersigned attests that concurrence in the filing of this document has been obtained from the Signatory below, which shall serve in lieu of their signature on the document.

Dated: April 8, 2021

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP

By:  /s/ Blechman, Noah G.
Noah G. Blechman
Attorneys for Defendants
CITY OF PLEASANTON, et al.

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330